**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

FILED

MAR 16 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**CHARLES T. BRUFF,**
Plaintiff,

v.

**LINCOLN NATIONAL LIFE INSURANCE COMPANY and USAA,**
Defendants.

SA26CA1720

Civil Action No.: _____

## PRO SE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL OR REFERRAL TO PRO BONO PROGRAM

## I. INTRODUCTION

Plaintiff Charles T. Bruff respectfully moves this Court to appoint counsel or refer this matter to the Western District of Texas Federal Pro Bono Program. This motion is grounded in three independent but reinforcing bases: (1) the spirit and purpose of 28 U.S.C. § 1915, applied equitably to a plaintiff who, while not technically indigent, lacks any realistic access to legal representation due to the intersection of disability, medical expense, and case complexity; (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which requires this Court as a federal entity to ensure that Plaintiff's disabilities do not prevent meaningful access to the judicial process; and (3) the likelihood that Plaintiff will prevail on at least one of his claims, which under ERISA § 502(g) and Fifth Circuit precedent makes this case economically viable for appointed or pro bono counsel.

This is not a routine benefits dispute. It is an ERISA case of substantial complexity involving eight claims against two defendants, a deliberately withheld administrative record, multiple documented violations of ERISA's procedural requirements, and a structural conflict of interest between the insurer's financial incentive to obtain a Social Security offset and its simultaneous withholding of the very documents Plaintiff needs to apply for Social Security. The defendants' conduct appears designed, whether intentionally or structurally, to exploit the precise barriers that prevent disabled pro se plaintiffs from obtaining representation. This

Court has both the authority and the equitable basis to respond.

## II. LEGAL FRAMEWORK

### A. The Spirit of 28 U.S.C. § 1915 Applies to Plaintiff's Circumstances

28 U.S.C. § 1915(e)(1) provides that a court 'may request an attorney to represent any person unable to afford counsel.' Although Plaintiff receives long-term disability (LTD) benefits and does not meet the technical indigency threshold of § 1915, the statute's purpose is to prevent the justice system from being inaccessible to those who cannot realistically secure legal representation. Plaintiff's entire income consists of LTD disability payments. Plaintiff's documented annual medical expenses exceed $100,000, which are currently covered only through LTD plan participation. The loss of LTD benefits — which is the risk Plaintiff faces if he cannot effectively litigate this case — would be financially catastrophic.

The practical barriers Plaintiff faces are identical to those the statute was designed to address. This case involves federal statutory interpretation under ERISA, multiple defendants, a deliberately withheld administrative record, and claims that require expert-level knowledge of insurance regulation, disability law, and constitutional doctrine. No plaintiff — regardless of intelligence or dedication — can be expected to litigate such a case effectively without counsel. The technical distinction between formal indigency and practical inability to obtain representation does not change the access-to-justice problem the statute was enacted to solve. Courts have broad equitable authority to address that problem where the statute's technical threshold is not met but its purpose plainly applies. See Mallard v. U.S. Dist. Court, 490 U.S. 296, 301 (1989) (recognizing court's inherent authority to facilitate legal representation for parties unable to obtain it).

### B. Section 504 of the Rehabilitation Act Independently Requires This Court to Act

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination on the basis of disability by any program or activity receiving federal financial assistance, including federal courts. The Supreme Court has recognized that meaningful access to judicial proceedings is a protected interest under federal disability law. See Tennessee v. Lane, 541 U.S. 509 (2004).

Plaintiff has been determined disabled by Lincoln Financial, the Social Security Administration, the State of Texas Medicaid program, the State of Arkansas Medicaid program, and the State of Louisiana Medicaid program. Plaintiff's documented disabilities include Cerebral Palsy, Autism Spectrum Disorder, and Post-Traumatic Stress Disorder. These

conditions create specific and documented barriers to self-representation that go beyond mere unfamiliarity with legal procedure:

First, Plaintiff's Autism Spectrum Disorder specifically impairs his ability to present himself to attorneys in a way that leads to representation. The social communication demands of attorney consultations — cold outreach, persuasive oral presentation of a complex case, rapid back-and-forth explanation under time pressure — are precisely the contexts in which ASD creates the greatest functional impairment. Plaintiff is not simply unable to find an attorney willing to take his case. He is neurologically impaired in his ability to present his case in the manner the legal market expects.

Second, PTSD arising from the same disability-related termination that underlies this lawsuit creates hypervigilance and anxiety responses that are directly triggered by the adversarial litigation process. The combination of PTSD and the volume and complexity of this case creates documented psychological barriers to effective pro se litigation.

Third, Cerebral Palsy creates physical limitations on sustained document production, court appearance, and the physical demands of managing a complex multi-defendant ERISA case with an extensive documentary record.

The combination of these disabilities makes self-representation not merely difficult but functionally inaccessible in a manner that Section 504 prohibits. This Court's referral to a pro bono program or appointment of counsel is the minimum accommodation necessary to ensure Plaintiff's meaningful access to these proceedings.

### C. ERISA § 502(g) Fee Shifting Makes This Case Economically Viable for Appointed Counsel

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), provides that 'the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.' The Fifth Circuit has established that a plaintiff need only achieve 'some degree of success on the merits' on any single claim to be entitled to fee-shifting consideration. Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980). This means that appointed or pro bono counsel who succeeds on any one of Plaintiff's eight claims may be awarded reasonable attorney's fees from Defendants.

### D. The Fifth Circuit's Ulmer Factors and ERISA Fee Shifting Jointly Support Appointment

The Fifth Circuit established in Ulmer v. Chancellor, 691 F.2d 209 (5th Cir. 1982), that district courts evaluating requests for appointed counsel should weigh four factors: (1) the merits of the plaintiff's claims; (2) the complexity of the factual and legal issues presented; (3) the plaintiff's ability to investigate and present the case; and (4) whether the evidence will consist largely of conflicting testimony requiring credibility determinations. Critically, Ulmer does not require a finding of indigency. Complexity of the legal issues alone can be sufficient to warrant appointment where the other factors are also present.

This Court's evaluation of the Ulmer merits factor directly intersects with ERISA's fee shifting provision in a way that resolves any practical concern about compensating appointed counsel. Under ERISA § 502(g)(1) and the Fifth Circuit's holding in Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir. 1980), Plaintiff need only achieve some degree of success on any single one of his eight claims to be eligible for an award of reasonable attorney's fees from Defendants. If this Court evaluates the merits under Ulmer and finds a high likelihood of success on even one claim — and Plaintiff submits that several claims present compelling likelihood of success on their face — that finding simultaneously satisfies Ulmer's merits factor and establishes that appointed counsel has a clear and foreseeable path to fee recovery. Appointed counsel in this case is not absorbing an unrecoverable cost. They are undertaking representation in an ERISA matter where fee shifting upon any partial success is both available and, given the documented record of Defendants' procedural violations, highly probable.

Plaintiff's claim under ERISA § 502(c) presents perhaps the clearest illustration of why the Ulmer merits factor weighs strongly in favor of appointment here. Unlike claims that turn on disputed facts or competing legal interpretations, liability under ERISA § 502(c)(1) is established by documentary evidence alone. The statute imposes a penalty of up to $110 per day upon any plan administrator who fails to furnish required information within 30 days of a written request from a participant. Plaintiff's correspondence record — attached to the complaint as exhibits — documents each written request with specificity, including the date of each request, the documents sought, and the identity of the Defendant to whom the request was directed. The same record documents Defendants' failures to respond within the statutory period. Because the operative facts are established by Defendants' own written communications, the merits of this claim do not depend on credibility determinations, expert testimony, or legal interpretation of ambiguous plan terms. They depend on the documentary record, which is complete. The probability of prevailing on at least this single claim — which is all ERISA § 502(g) and Iron Workers require to trigger fee shifting — is therefore not a matter of prediction but of documentary proof.

Plaintiff's case satisfies every remaining Ulmer factor as well. The legal issues are extraordinary in their complexity — eight ERISA claims, two defendants, a constitutional challenge to discretionary clauses, a mental health parity disparity argument supported by a federal agency report, and multiple intersecting statutory frameworks including ERISA, the Rehabilitation Act, and the Texas Insurance Code. Plaintiff's ability to investigate and present the case is specifically impaired by his documented disabilities and by Defendants' deliberate withholding of the administrative record that would ordinarily allow meaningful case preparation. And the evidence will necessarily involve conflicting accounts of internal decision-making processes, medical determinations, and institutional conduct that will require credibility assessments a pro se plaintiff cannot effectively address at trial.

The Fifth Circuit designed the Ulmer framework precisely for cases like this one. A single merits finding by this Court does the work of both frameworks simultaneously — it supports appointment as a matter of equity under Ulmer and establishes the economic basis that makes that appointment viable under ERISA § 502(g). This Court need not choose between appointing counsel as a matter of principle and appointing counsel as a matter of practicality. The structure of ERISA's fee shifting provision ensures that both considerations point in the same direction.

### 1. Likelihood of Success on the Merits

Plaintiff brings eight claims. The document penalty claim under ERISA § 502(c) alone presents an exceptionally strong likelihood of success. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), entitles participants to plan documents upon written request within 30 days. Plaintiff made repeated written requests over many months for his claims file, internal guidelines, and plan documents. Defendants refused or failed to respond. These refusals are documented in writing by Defendants' own employees. A plan administrator who fails to furnish required information within 30 days of a written request 'may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110 per day.' 29 U.S.C. § 1132(c)(1). Given the number of requests, the number of days elapsed, and the number of defendants, Plaintiff's potential recovery on this claim alone could be substantial.

On the ERISA § 503 adverse benefit determination claim, Lincoln Financial's LTD Technical Specialist acknowledged in writing that Lincoln operates without published guidelines comparable to Social Security's standards, and that it evaluates each claim individually with no standardized intervals. ERISA § 503 and 29 C.F.R. § 2560.503-1 require that adverse benefit determinations be communicated with specific reasons and specific plan provision citations.

Multiple adverse determinations were communicated to Plaintiff without any plan provision cited and without any written notice. Likelihood of success on this claim is also substantial.

Furthermore, this case raises a constitutional challenge to the interaction of ERISA preemption with private discretionary clauses — a question the Department of Labor's own ERISA Advisory Council identified in its December 2023 report as a systemic problem affecting hundreds of thousands of claimants. The public importance of this question independently supports attorney referral.

## 2. Irreparable Harm

Without counsel, Plaintiff faces the prospect of losing LTD benefits that fund his entire medical care — currently exceeding $100,000 annually. Plaintiff's health insurance, life insurance, and cash disability benefits all depend on continued LTD participation. Additionally, Defendants have imposed a deadline for Plaintiff's Social Security application while simultaneously withholding the claims file Plaintiff needs to complete it accurately. The harm from a deficient or untimely Social Security application cannot be undone. These are not speculative future injuries — they are ongoing and compounding.

## 3. Balance of Equities

Defendants are sophisticated institutional litigants represented by counsel. Lincoln National Life Insurance Company is one of the largest disability insurers in the United States. USAA is a Fortune 500 financial services organization. The imbalance of resources between these defendants and a disabled pro se plaintiff on LTD benefits could not be more stark. The equities strongly favor ensuring that Plaintiff has at minimum access to pro bono representation.

## 4. Public Interest

The Department of Labor's ERISA Advisory Council concluded in its December 2023 report, Long-Term Disability Benefits and Mental Health Disparity, that LTD insurers continue problematic claims handling practices in part because the complexity of ERISA litigation deters claimants from pursuing them. The Council specifically documented that disabled claimants face structural barriers to accessing the legal system that enable ongoing insurer misconduct at scale. Plaintiff's case is a direct illustration of that documented problem. The public interest in ensuring that ERISA's protections are enforceable by the disabled claimants they were designed to protect strongly supports appointment or referral here.

## III. THE DEFENDANTS' CONDUCT HAS MANUFACTURED THE CONDITIONS MAKING REPRESENTATION IMPOSSIBLE

It bears noting that Plaintiff's inability to obtain attorney representation is not independent of Defendants' conduct. It is in significant part caused by it. Attorneys evaluating ERISA cases typically require access to the administrative record to assess the merits of a claim. Lincoln Financial has refused to produce Plaintiff's claims file despite repeated written requests and a clear statutory entitlement under ERISA § 104(b)(4). Without the claims file, attorneys cannot evaluate the case. Without an attorney evaluation, attorneys will not take the case. Without an attorney, Plaintiff cannot compel production of the claims file.

This circular dynamic — in which the defendant's own statutory violation creates the practical barrier to representation — is not a coincidence. The DOL Advisory Council's 2023 report documented that LTD insurers' opacity about their internal processes and records is a systemic feature of the industry, not an isolated failure. When that opacity operates against a plaintiff with ASD who faces specific neurological barriers to cold-presenting a complex case to attorneys, the result is that the insurer faces no practical accountability regardless of how egregiously it has violated the law.

This Court has the equitable authority to break that cycle. Referral to the Western District of Texas Federal Pro Bono Program, or appointment of counsel under the Court's inherent authority, would restore the access to justice that Defendants' conduct and Plaintiff's disability have together eliminated.

## IV. THE COURT'S ULMER FINDINGS WOULD SERVE AN INDEPENDENT EQUITABLE FUNCTION

The Ulmer framework asks this Court to evaluate the merits of Plaintiff's claims as part of the appointment analysis. Plaintiff respectfully submits that any findings this Court makes regarding the apparent merit of those claims — even findings made solely for purposes of this motion — would serve an independent and practical function beyond the appointment decision itself.

Attorneys evaluating ERISA cases require some preliminary assessment of case viability before agreeing to representation, whether appointed or pro bono. The barrier Plaintiff faces is not merely finding an attorney willing to work without immediate compensation. It is that the deliberate withholding of the administrative record by Defendants has made preliminary case evaluation structurally impossible for any attorney Plaintiff approaches. Without the claims

file, no attorney can assess the full merits. Without a merits assessment, no attorney will commit to representation. The circular dynamic described in Section III operates at the attorney evaluation stage as much as at the litigation stage.

A judicial finding under Ulmer that Plaintiff's claims present a substantial likelihood of success — particularly on the § 502(c) document penalty claim, where liability is established by documentary evidence alone — would break that cycle in a targeted and appropriate way. Such a finding would not prejudge the merits or bind this Court on any substantive question. It would simply provide the preliminary signal that makes appointed or pro bono representation economically rational under ERISA § 502(g)'s fee-shifting provision.

This is precisely the function courts have recognized in analogous contexts. Where the structure of a remedial scheme creates a practical barrier to accessing the relief it promises, equity does not require a party to exhaust that barrier before the Court may act. The appointment of counsel — and the findings that support it — is itself an equitable act. The Court has the authority to make those findings in a form that is useful, not merely formal.

Plaintiff therefore respectfully requests that any order granting this motion include findings, under the Ulmer merits factor, regarding the apparent strength of Plaintiff's claims — particularly the § 502(c) claim — and that those findings reflect the Court's preliminary assessment that the documented record establishes a substantial likelihood of success sufficient to make this case economically viable for appointed or pro bono counsel under ERISA § 502(g).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

(1) Appoint counsel to represent Plaintiff in this matter pursuant to the Court's inherent equitable authority and in fulfillment of this Court's obligations under Section 504 of the Rehabilitation Act; or in the alternative,

(2) Refer this matter to the Western District of Texas Federal Pro Bono Program or such other attorney referral program as the Court deems appropriate; and

(3) In evaluating this motion, assess Plaintiff's likelihood of success on the merits using the Ulmer framework, and include in any order granting this motion findings regarding the apparent merit of Plaintiff's claims — particularly the § 502(c) document

penalty claim — sufficient to reflect this Court's preliminary assessment that the documented record establishes a substantial likelihood of success on at least one claim, so as to make this case economically viable for appointed or pro bono counsel under ERISA § 502(g).

Plaintiff respectfully submits that this case is precisely the kind of matter that appointed or pro bono counsel can litigate effectively, that ERISA § 502(g) fee-shifting makes economically viable, and that the public interest in ERISA enforcement demands be heard on its merits rather than lost to procedural attrition.

Respectfully submitted,

Charles T. Bruff
Pro Se Plaintiff
98 McLennan Oak
San Antonio, TX 78240
Phone: 318-452-8978
Email: cbruff13@outlook.com

Date: 03/16/26