IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

FILED

MAR 16 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**CHARLES T. BRUFF,**

    Plaintiff,

v.

**LINCOLN NATIONAL LIFE INSURANCE**

**COMPANY and USAA,**

    Defendants.

SA26CA1720  XR

Civil Action No.: _____

## PLAINTIFF'S NOTICE OF USE OF ARTIFICIAL INTELLIGENCE IN PREPARATION OF PRO SE FILINGS

Plaintiff Charles T. Bruff hereby provides this notice to the Court regarding the use of

artificial intelligence tools in the preparation of his pro se filings in the above-captioned

matter. Plaintiff makes this disclosure voluntarily, in the interest of full transparency with

the Court, and because the nature and limits of that assistance are directly relevant to

Plaintiff's pending motion for appointment of counsel or referral to the pro bono

program.

# I. NATURE OF AI ASSISTANCE

In preparing the complaint and related motions in this matter, Plaintiff used Claude, an AI assistant developed by Anthropic, PBC. Plaintiff used this tool because he could not have organized, drafted, or structured these filings without it. Plaintiff's disabilities — including Autism Spectrum Disorder, Cerebral Palsy, and Post-Traumatic Stress Disorder — significantly impair his ability to translate his understanding of the facts and his legal situation into organized written documents under the conditions of stress and uncertainty that this litigation has created.

The factual content of all filings is entirely Plaintiff's own. The underlying knowledge of events, the documentary record, the correspondence with Defendants, and the understanding of how Plaintiff has been harmed are all Plaintiff's. What the AI tool provided was the ability to organize that factual knowledge, identify potentially relevant legal frameworks, and express it in a form that meets the basic standards of federal court pleading. Without this assistance, Plaintiff would have been unable to access the Court at all.

Plaintiff has reviewed all filings for accuracy. The facts stated are true to the best of Plaintiff's knowledge. Plaintiff has not used AI to fabricate citations, invent facts, or misrepresent the record. All case citations have been identified through AI assistance and Plaintiff has made reasonable efforts to verify their accuracy, but Plaintiff acknowledges that he does not have the legal training to independently evaluate every citation the way a licensed attorney would.

# II. WHAT AI ASSISTANCE DOES NOT PROVIDE

The Court should not interpret Plaintiff's ability to produce organized written filings with AI assistance as evidence that Plaintiff is capable of representing himself effectively through all stages of this litigation. There is a significant and unbridgeable gap between what an AI tool can help a disabled pro se plaintiff produce in writing and what effective legal representation actually requires. Specifically:

Oral argument. Plaintiff cannot argue motions before this Court the way a licensed attorney can. AI assistance does not prepare a person to stand before a federal judge, respond to questions in real time, and advocate effectively under the cognitive and sensory demands of a courtroom. For a person with ASD, PTSD, and Cerebral Palsy, oral proceedings in an adversarial federal litigation context present barriers that no writing tool can overcome.

Depositions. Plaintiff cannot conduct or defend depositions. The ability to question witnesses under oath, respond to objections in real time, identify evasive answers, and protect the record requires legal training and the precise kind of rapid, high-stakes social communication that Plaintiff's ASD most severely impairs. AI cannot be present in a deposition room.

Discovery management. This case involves multiple defendants, a large documentary record, and a deliberately withheld administrative record that must be compelled through formal discovery. Managing written discovery, responding to discovery disputes, and litigating motions to compel requires sustained legal judgment over months of proceedings that AI assistance cannot substitute for.

Legal strategy and judgment. AI tools can identify legal frameworks and draft arguments, but they cannot exercise the judgment of a licensed attorney who understands the specific practices of this Court, the tendencies of the assigned judge, the litigation strategy of opposing counsel, and the tactical decisions that determine case outcomes. Plaintiff has no way to independently evaluate whether the legal arguments in his filings are optimally framed, whether he has missed a stronger theory, or whether a strategic concession would improve his position.

Ethical obligations and professional responsibility. A licensed attorney owes duties to the Court that constrain how arguments are framed, what representations can be made, and how the litigation is conducted. Plaintiff is doing his best to be truthful and accurate, but he does not have the professional training to navigate the ethical dimensions of federal litigation the way an attorney does.

## III. WHY THIS DISCLOSURE SUPPORTS APPOINTMENT OR REFERRAL

Plaintiff's use of AI assistance illustrates rather than resolves the access-to-justice problem this case presents. The fact that a disabled pro se plaintiff with no legal training was able, with AI assistance, to identify eight potentially meritorious ERISA claims, locate relevant Fifth Circuit precedent, and produce organized federal court filings is not evidence that Plaintiff does not need an attorney. It is evidence of two things.

First, it confirms that the underlying legal claims have sufficient merit and factual foundation to survive initial organization and drafting — merit that a licensed attorney

reviewing these filings could evaluate and build upon. The AI tool did not create legal theories from nothing; it helped Plaintiff articulate and organize a factual record and a set of legal violations that exist independently in the underlying documents.

Second, it illustrates exactly how far AI assistance goes and where it stops. Plaintiff was able to produce written filings. He will not be able to argue them, conduct discovery, examine witnesses, or make the dozens of real-time legal judgments that litigating this case to resolution will require. The gap between what AI helped Plaintiff produce today and what this case will require over the next one to three years is the precise gap that appointed or pro bono counsel would fill.

The emergence of AI tools that help disabled and low-income pro se plaintiffs organize their claims is a development worth acknowledging honestly. These tools expand access to the courthouse door. They do not replace the lawyer who is needed once the door is open.

## IV. CERTIFICATION

Plaintiff certifies under penalty of perjury that:

(1) All factual statements in Plaintiff's filings are true and accurate to the best of Plaintiff's knowledge;

(2) AI assistance was used to help organize, research, and draft these filings, but was not used to fabricate facts, invent citations, or misrepresent the record;

(3) Plaintiff has reviewed all filings and takes responsibility for their contents; and

(4) Plaintiff makes this disclosure voluntarily, without any requirement to do so, because transparency with this Court is consistent with Plaintiff's obligations as a litigant and with his personal commitment to honesty.

Respectfully submitted,

Charles T. Bruff

Pro Se Plaintiff

98 McLennan Oak

San Antonio, TX 78240

Phone: 318-452-8976

Email: cbruff13@outlook.com

Date: 03/16/26