# Exhibit J

## Lincoln Financial's Acknowledgment That It Publishes No Review Schedule and Can Provide No Explanation of Its Review Methodology

This exhibit documents four instances in which Lincoln Financial acknowledged that it operates without a published review schedule, that its review process is entirely case-by-case with no fixed criteria, and that it is unable to provide Plaintiff with any further explanation of its methodology or any written policy supporting its claims-handling decisions. The sources span January 9, 2026 through March 23, 2026.

Full transcript: The complete transcript of the January 9, 2026 phone call is reproduced in Exhibit H, Attachment H-1.

### Document 1 — Recorded Phone Call — January 9, 2026

**Date:** January 9, 2026

**Participants:** Charles Bruff (Plaintiff); Kristianne Corporan (Lincoln Financial, LTD Technical Specialist)

**Source:** Transcript of recorded call; full transcript in Exhibit H, Attachment H-1

**Claim No.:** 17729133

The following are verbatim excerpts from the January 9, 2026 phone call comprising the portions relevant to Lincoln's review methodology and its refusal to provide further information.

**On review frequency and methodology:**

**Charles:** Is there anything else you can give me that explains how you set the review frequency and what the differences are between your approach and Social Security's?

**Kristianne:** That's correct. We do it case by case. It depends on what conditions we're looking at and the time frames for follow-ups. There's no set time. It depends on the review and what it indicates — whether we need to follow up in two, three, or four months.

**Charles:** That doesn't make sense.

**Kristianne:** I'm sorry it doesn't make sense to you. Sometimes that's just how it is.

**On access to reviews and claim file:**

**Charles:** How do I get copies of all of my previous reviews?

**Kristianne:** If we had a medical review done on an approved claim, that's not shared with a claimant.

**Charles:** So I would only get a copy of my file if you made an adverse determination?

**Kristianne:** Correct.

**Charles:** So you're not going to provide me the results of the reviews you've done so far unless you decide against me? I can't include those in my disability claim, even though they were favorable decisions.

**Kristianne:** That is correct.

**On the availability of further information:**

**Charles:** Well, there is. You just won't give it to me.

**Kristianne:** No, there isn't. It's not that I won't. We don't do it. You won't get any more information.

**Charles:** So if you denied me, you would give me all of my previous reviews. So they exist.

**Kristianne:** If you were denied, you could get a copy of your claim file, which would include any reviews.

**Charles:** But because you haven't denied me, you won't give me that information.

**Kristianne:** That's right. We don't share reviews on approved claims.

---

## Document 2 — Email from Kristianne Corporan — January 9, 2026, 11:30 AM

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Date:** | Friday, January 9, 2026, 11:30 AM |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | Charles Bruff — 17729133 Vocational Rehab and Rehabilitation Benefit |
| **Claim No.:** | 17729133 |

While I understand your need for predictability, private LTD policies do not publish detailed review schedules like SSDI.

There is no other explanations or information I can provide to you.

> Note: This email also states that "Social Security and private insurers operate under different regulations" and that Lincoln "follows the terms of your policy" rather than any externally published standard. Read together with the closing statement above, this confirms Lincoln cannot articulate a systematic internal framework governing its review process.

---

## Document 3 — Plaintiff's Written Request for Internal Policy and Lincoln's Non-Response — January 11, 2026, 10:31 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Sunday, January 11, 2026, 10:31 PM |
| **To:** | Corporan, Kristianne; Thornton, Sasha; Wilkerson, Shericka (Lincoln Financial) |
| **Subject:** | Charles Bruff — follow up on conversation/claims file |
| **Source:** | January_13_Email.pdf (Gmail export); YAML_5 (January 11, 2026 entry); full chain in Exhibit H, Attachment H-3 |

The following is an excerpt from Plaintiff's January 11, 2026 email to Lincoln Financial, under the section titled "What I still need," item 2:

On Friday, I had my intake call with brown and brown. I need to start gathering information and My case manager told me that Lincoln will provide some medical information, but they won't provide my claims file to me or Brown. For the reasons I've already outlined I need to start some sort of process to actually get my claims file so that my Social Security application doesn't drag on. Is there an appeal process? Can you give me something in writing that says you won't provide me a copy of my claims file? If you can't provide it to me, can you provide it to Social Security directly? We have the same goal. I'm sure we can figure this out together.

Lincoln Financial's response: No written policy was produced in response to this request. Kristianne Corporan's January 13, 2026, 4:33 PM response stated only that withholding the claims file was "standard practice" — with no documentary basis provided.

Taken together, Documents 1, 2, and 3 establish a pattern: across multiple requests and multiple subject matters (review frequency, claims file withholding, SSA disclosure), Lincoln Financial was unable or unwilling to produce any written internal standard governing its claims-handling practices. Document 4 extends this pattern through March 2026.

## Document 4 — Corporan Written Response to 33-Item Document Request — March 23, 2026, 5:24 PM

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Date:** | Monday, March 23, 2026, 5:24 PM |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |

The following reproduces the relevant portions of Corporan's March 23, 2026 response to Plaintiff's 33-item written document request submitted March 21, 2026. For items 21–25 and 31–33 — covering review criteria, vocational rehabilitation standards, proof of disability standards, and cooperation standards — Lincoln's written response was "there are no guidelines or additional information to provide."

### Category 2 (Items 21–22 — Review Criteria)

Item 21 (criteria for what counts as Regular Attendance of a Physician): Corporan quoted the policy definition of "Regular Attendance" verbatim — "the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability" — and added: "We review updated medical records to determine ongoing eligibility for LTD benefits." No internal guidelines produced.

Item 22 (criteria for distinguishing employment factors from medical factors): "There are no guidelines or additional information to provide."

### Category 3 (Items 23–25 — Vocational Rehabilitation Standards)

Items 23–25 (written documentation of vocational rehab requirements; full Rehabilitation Incentive Benefit qualification process; written approval or denial criteria): "23–25 There are no guidelines or additional information to provide."

### Category 7 (Items 31–33 — Standards for Administering Claims)

Items 31–33 (satisfactory proof of disability standards; appropriate available treatment criteria; failure to cooperate under the Discontinuation provision): "31–33 We determine what is considered proof depending on the claim circumstances." No written criteria produced for items 32 or 33.

Corporan's March 23, 2026 response is the fourth instance in which Lincoln confirmed in writing that it possesses no producible internal standards governing its claims-handling process. Consistent with Documents 1–3, Lincoln's answer to every request for an internal standard is either a verbatim quotation of policy language Plaintiff already has or a statement that no guidelines exist. Taken together, Documents 1, 2, 3, and 4 establish a pattern spanning January through March 2026: across review frequency, claims file withholding, review criteria, vocational rehabilitation standards, and proof-of-disability standards, Lincoln Financial has been unable or unwilling to produce any written internal standard governing its claims-handling practices.