# Exhibit L

## Plaintiff's Repeated Written Requests for Definition of the Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation and Lincoln Financial's Refusal to Provide Specific Answers

This exhibit documents Plaintiff's repeated written requests for Lincoln Financial to define the Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation applied to his LTD claim at approval — specifically requesting identification of which prong was applied, which conditions triggered it, and what causation analysis Lincoln performed. The exhibit spans January 4, 2026 through March 23, 2026. Document 4 records Lincoln's only written statement regarding the Non-Verifiable Symptoms prong, made informally and without a formal determination or ERISA § 503 notice, and its significance is addressed in the closing note.

> Cross-reference: Exhibit J documents Lincoln's acknowledgment that it has no published review schedule and can provide no further explanation of its review methodology. Exhibit L is the parallel exhibit for the limitation definition — a different subject matter but the same pattern of Lincoln being unable to articulate the basis for a consequential claims decision.

### Document 1 — Plaintiff's First Written Request for Limitation Definition — January 4, 2026, 7:52 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Sunday, January 4, 2026, 7:52 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |
| **Source:** | YAML_2B_2, Object_2b_2_Lincoln_Correspondence_Nov_2025_to_Jan_2026 |

Also,

I think I forgot to ask this question but I have Botox tomorrow and it reminded me.

My neurologist and both of my doctors from Menninger have asked me and so I'm gonna ask a question.

When you approved me for disability, I was put on a two-year limitation. Do you have a list of all of the conditions that Limitation applies to? Different Lincoln people have told me different things.

I'm hoping I can tell my neurologist when I have my appointment tomorrow because she was one of the doctors that asked me when she saw the letter.

> Note: This request was sent the evening before Plaintiff's January 5, 2026 Botox appointment. It reflects that Plaintiff's own treating physicians — his neurologist and his Menninger doctors — had independently asked Plaintiff to clarify which conditions triggered the limitation. Lincoln did not provide a substantive response to this question.

## Document 2 — Lincoln Financial's Blanket Refusal — February 6, 2026, 2:31 PM

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Date:** | Friday, February 6, 2026, 2:31 PM |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | RE: Charles Bruff — Claim Questions |
| **Source:** | YAML_2B_3, Object_2b_3_Lincoln_and_USAA_Correspondence_Feb_Mar_2026 |

Terrence,

We have already provided answers to your questions and there is no other information that will be provided to you.

> Note: This blanket refusal was sent at 2:31 PM on February 6, 2026 — before Plaintiff's 4:05 PM email specifically identifying the limitation definition question as still unanswered (Document 3 below). Lincoln's position was that all questions had been answered before Plaintiff had the opportunity to enumerate which ones had not.

## Document 3 — Plaintiff's Second Written Request for Limitation Definition — February 6, 2026, 4:05 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Friday, February 6, 2026, 4:05 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com); Wilkerson, Shericka (Shericka.Wilkerson@lfg.com) |
| **Subject:** | Charles Bruff — Limitation Definition and Policy Clarification |
| **Source:** | YAML_2B_3, Object_2b_3_Lincoln_and_USAA_Correspondence_Feb_Mar_2026 |

The following is the relevant excerpt from Plaintiff's February 6, 2026, 4:05 PM email. This email itemized multiple outstanding questions; only item 4, which bears on the limitation definition, is reproduced here. The full email is available upon request.

And just for evidence you know for if I do have to file a federal lawsuit.

**Item 4:** You have not answered my questions in regards to how you define psychiatric mental illness and subjective symptoms exclusion with enough specifics.

Note: This email was sent 94 minutes after Lincoln's blanket refusal (Document 2). Plaintiff specifically identified item 4 — the limitation definition — as a question that had not been answered. No substantive response to this specific question was received.

The limitation applied at Plaintiff's LTD approval (Exhibit B) is captioned "Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation." The "and/or" construction means the 24-month cap is activated by any one prong independently. Lincoln never identified which prong was applied, which specific conditions triggered it, or what causation analysis was performed.

## Document 4 — Plaintiff's Written Request for Non-Verifiable Symptoms Criteria — March 21, 2026, 9:36 PM

| | |
|---|---|
| **From:** | Terrence Bruff (tbruff15@gmail.com) |
| **Date:** | Saturday, March 21, 2026, 9:36 PM |
| **To:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |

This is item 29 of Plaintiff's 33-item written document request submitted March 21, 2026. Plaintiff requested Lincoln's written criteria for what conditions or symptoms fall under the Non-Verifiable Symptoms definition beyond the examples listed in the policy. The policy defines Non-Verifiable Symptoms as "subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine" and gives a non-exhaustive list including pain, fatigue, dizziness, numbness, and stiffness. Plaintiff asked Lincoln to identify the full operative standard it actually applies.

## Document 5 — Corporan Written Response to Item 29 — March 23, 2026, 5:24 PM

| | |
|---|---|
| **From:** | Corporan, Kristianne (Kristianne.Corporan@lfg.com) |
| **Date:** | Monday, March 23, 2026, 5:24 PM |
| **To:** | Terrence Bruff (tbruff15@gmail.com) |
| **Subject:** | RE: Charles Bruff — LTD claim # 17729133 |
| **Claim No.:** | 17729133 |

Corporan's verbatim response to item 29:

> *"Non-verifiable symptoms are not applicable for your claim."*

Note: Corporan's statement that Non-Verifiable Symptoms are "not applicable" to Plaintiff's claim is NOT treated as a formal determination or binding admission. Lincoln never produced a written definition of "Non-Verifiable Symptoms" at any point in this correspondence. Corporan cannot credibly assert that a term does not apply without first having defined it. The statement was made informally via email, without letterhead, without citation to any policy provision or internal standard, and without any accompanying ERISA § 503 notice of determination or appeal rights. It carries no procedural weight and could be disavowed by any future Lincoln representative as a mistake or non-binding communication.

The significance of Document 5 is not that it resolves the limitation question, but that it illustrates the same pattern documented throughout this exhibit: Lincoln applies and declines to apply contractual limitations without producing definitions, criteria, or formal determinations, leaving Plaintiff with no meaningful basis to verify, challenge, or rely on Lincoln's representations. Lincoln's blanket refusal to define the Non-Verifiable Symptoms term across Documents 1–3 preceded Plaintiff's specific itemization in Document 4 — meaning Lincoln's position

that the prong does not apply comes only after repeated written requests exposed that no definition had ever been produced.