# Exhibit TIMELINE

## Master Chronological Timeline — Bruff v. USAA Health and Welfare Benefits Plan et al.

This timeline provides the Court with a chronological overview of the principal events underlying Plaintiff's claims. Document requests are consolidated as a single entry referencing Exhibit DOC-REQ, which contains the complete chronological record of all written requests from April 2025 through April 2026, organized across seven categories. Citations in italics identify the exhibit where each event is documented in full.

| PHASE 1 — Short-Term Disability (March–September 2025) | |
| --- | --- |
| **Date** | **Event** |
| Mar. 21–22, 2025 | Plaintiff goes out on disability. Date of disability established as March 22, 2025. <br> *(Exhibit A)* |
| Apr. 1, 2025 | USAA reports Termination Date to Fidelity. Plaintiff reclassified from active employee to former, non-retired employee for insurance purposes. |
| Apr. 15, 2025 | Lincoln Financial approves STD benefits. <br> *(Exhibit A)* |
| Apr.–Sep. 2025 | USAA refuses to provide active-employee-rate health insurance during STD. Plaintiff pays COBRA at excess rate ($764/month × 6 months = $4,584.00). <br> *(Exhibit S, Item 4)* |
| Apr.–Sep. 2025 | USAA withholds 8% employer 401(k) match on STD earnings. In 2021 STD, match was paid ($221.18). <br> *(Exhibit RETIRE)* |
| Apr. 23, 2025 | Plaintiff submits written request to USAA HR regarding health insurance, COBRA, and plan benefits while on STD. Implicit request for applicable plan documents. No formal response. <br> *(Exhibit DOC-REQ, Category 3)* |
| Apr. 26, 2025 | Plaintiff submits written request to USAA HR for STD Summary Plan Description. Lincoln confirmed it could not provide the document. No SPD produced by USAA HR. Claim Appeal Fiduciary Services subsequently appeared and produced a limited set of documents on USAA's authorization. <br> *(Exhibit DOC-REQ, Category 3)* |
| Aug. 11–26, 2025 | Plaintiff requests educational assistance reimbursement from Guild Education (USAA's vendor). Guild denies eligibility, citing termination. USAA Educational Assistance SPD states employees on leave of absence including STD/LTD are eligible. <br> *(Exhibit C)* |
| Aug. 19, 2025 | Lincoln extends STD through September 17, 2025. Provides notice of LTD transition. |

| PHASE 2 — LTD Approval and Benefit Classification (September 2025) | |
| --- | --- |
| **Date** | **Event** |
| Sep. 12, 2025 | Lincoln approves LTD effective September 18, 2025. Gross monthly benefit: $6,186.43. 24-month Mental Illness/Non-Verifiable Symptoms Limitation applied. <br> *(Exhibit B)* |

| | |
|---|---|
| Sep. 16, 2025 | USAA Casualty Insurance (CIC) responds to Texas Department of Insurance. Written admission: Plaintiff reclassified to CIC because he is a 'former, non-retired employee'; employees who transition to LTD are insured through CIC. *(Exhibit TDI1)* |
| Sep. 17, 2025 | Lincoln issues Work Capacity Reversal Letter stating Plaintiff is not a good SSDI candidate and may have capacity to return to work. *(Exhibit SS1)* |
| Sep. 17, 2025 | Shawn Miller (Lincoln) admits in writing: 'there is no set frequency for disability reviews as every claim is different.' *(Exhibit M)* |
| Sep. 25, 2025 | Plaintiff's final 2025 USAA pay slip: $75,511.32 YTD Incentive Eligible Earnings. Plaintiff has mathematically satisfied the APIP financial eligibility criteria for 2025. *(Exhibit APIP2)* |
| Mar. 2026 | Fidelity NetBenefits account shows Status: 'Long Term Disab' as of March 12, 2026 — USAA's own retirement plan administrator classifies Plaintiff as disabled, not terminated. Employer match $0.00 for LTD period (expected). *(Exhibit RETIRE, Document 3)* |

## PHASE 3 — Document Requests and Withholding (April 2025–April 2026)

| Date | Event |
|---|---|
| Jun. 18, 2025 | Claim Appeal Fiduciary Services (USAA's vendor) produces only three documents: STD SPD, LTD SPD, and Comprehensive Welfare Benefits Plan SPD. APIP, Educational Assistance, 401(k), and Pension SPDs withheld. LTD Certificate of Coverage omitted despite LTD SPD stating it governs. *(Exhibit USAA2)* |
| Sep. 15–16, 2025 | Plaintiff requests LTD Certificate of Coverage. Claim Appeal Fiduciary Services responds: 'we provided the documents that USAA asked us to provide.' *(Exhibit USAA2, Message 3)* |
| Jan. 9, 2026 | Lincoln representative states on recorded call: claims files are not provided to claimants on approved claims; review frequency is set 'case by case, there's no set time.' *(Exhibits H, J, M)* |
| Jan. 9, 2026 | Kristianne Corporan (Lincoln) states in writing: 'private LTD policies do not publish detailed review schedules like SSDI. There is no other explanation or information I can provide to you.' *(Exhibit J)* |
| Apr. 2025–Apr. 2026 | Written document requests submitted across seven categories: Educational Assistance, LTD Claims File, Plan Documents, Vocational Rehabilitation Documentation, Limitation Definition and Review Frequency, SSDI-Related, and Privacy and Information Handling. Full chronology in Exhibit DOC-REQ. The 30-day period under ERISA § 502(c)(1) runs separately from the date of each written request. Requests refused outright evidence willful non-compliance. *(Exhibit DOC-REQ)* |
| Feb. 12, 2026 | Lincoln issues written confirmation of refusal to release claims file on approved claims, citing 'standard practice.' No written policy supporting the refusal has ever been produced. *(Exhibit H)* |

| Mar. 20–27, 2026 | Plaintiff submits 33-item written document request (March 21) and Week 2 weekly request (March 25, 1:02 AM) — the latter sent simultaneously to Lincoln and USAA HR. Corporan responds March 23 with category-by-category refusals: 'there are no guidelines or additional information to provide' across Categories 2–7. March 25–27: Corporan asserts Lincoln makes disability determinations 'independently of Social Security.' Plaintiff challenges the assertion citing Lincoln's own 'good candidate' letter. No written guidelines or clinical basis produced for any determination. *(Exhibits DOC-REQ, J, M, SS1)* |
|---|---|
| Mar. 25–26, 2026 | USAA HR (ServiceNow HRC0564126) reiterates that Employee Handbook and 2025 APIP document are classified Internal Use Only and cannot be transmitted electronically. Directs Plaintiff to arbitration or legal subpoena. Plaintiff replies that benefits disputes are expressly excluded from the arbitration agreement by its own terms, and that he is acting as an LTD plan member, not a former employee. 'Denial of active employee benefits during STD phase' inquiry noted as still under internal review. *(Exhibit APIP4, HRC0564126)* |
| Feb. 20–Mar. 2026 | USAA ServiceNow (Case HRC0549446): Gabrielle Tapia refuses to provide Employee Handbook, citing 'Internal Use Only.' Case closed without producing requested plan documents. *(Exhibit APIP4, Message 5)* |
| Mar. 31–Apr. 2, 2026 | Privacy incident: Lincoln sent Plaintiff's private medical information to an unassociated clinic (Revolution LPC) on March 24 without notifying Plaintiff. Corporan discloses this on March 31. Corporan leaves a voicemail with Revolution LPC to disregard the request but does not obtain written confirmation that Plaintiff's information was deleted. On April 1, Plaintiff formally requests revocation paperwork for Lincoln's blanket authorization to contact doctors directly, a reset of the 45-day deadline, and written confirmation of deletion. Corporan's April 2 response: one sentence confirming the May 7 deadline. Revocation paperwork not provided. Deletion not confirmed. None of Plaintiff's seven specific requests addressed. *(Exhibit DOC-REQ, Category 7; YAML_2B_2, March 24 – April 2, 2026)* |
| Apr. 4, 2026 | Plaintiff sends Week 3 weekly document request emails to both Corporan (Lincoln) and USAA HR. Renewed requests across all seven categories. New Category 8 (Privacy and Information Handling) requests submitted to Corporan: Lincoln's privacy policy; written guidance on misdirected disclosures; revocation paperwork and process; consequences of revocation; written policy on transmission of medical information; written confirmation of deletion steps taken. No responses received. *(Exhibit DOC-REQ, Categories 1–7 and Category 8)* |

## PHASE 4 — Vocational Rehabilitation Referral and Closure (December 2025–March 2026)

| Date | Event |
|---|---|
| Dec. 17, 2025 | Lincoln initiates vocational rehabilitation process. Plaintiff requests written program documentation. Lincoln's policy defines 'Rehabilitation Program' only in the Rehabilitation Incentive Benefit section; education is not listed as an approved activity. *(Exhibit E, Exhibit LTDPOL)* |
| Dec. 17–Jan. 9 | Plaintiff submits four written requests for vocational rehabilitation program documentation. Lincoln produces only three bullet points; no further information provided. *(Exhibit E)* |
| Jan. 27, 2026 | Lincoln issues formal vocational rehabilitation referral letter. *(Exhibit F)* |
| Jan. 28, 2026 | Lincoln closes vocational referral. Aleysia Chambers applies transferable skills threshold not found in the LTD policy. No ERISA § 503 written denial issued. Chambers enrolls Plaintiff in the Texas TRS-VRS state |

| | referral system and outlines four-step qualification process requiring a Lincoln denial letter — which she does not provide. Without that letter, Plaintiff cannot qualify for the state payer-of-last-resort program Chambers just enrolled him in. *(Exhibit F)* |
|---|---|
| Mar. 26, 2026 | Plaintiff attends state vocational rehabilitation appointment. State program requires full financial review of all private benefits available to the claimant — including documentation of any private program denials. Formal denial letters and written documentation of Lincoln's vocational rehabilitation program have not been produced despite repeated written requests, which may affect Plaintiff's ability to complete the financial audit. *(Exhibit DOC-REQ, Category 4; Exhibit F)* |

## PHASE 5 — APIP and Educational Assistance Denials (February–March 2026)

| Date | Event |
|---|---|
| Feb. 5–9, 2026 | Plaintiff submits BenefitConnect requests (Case ID 133123) for educational assistance reimbursement or, alternatively, a formal written denial letter to provide to state vocational rehabilitation as payer of last resort. No formal denial issued. *(Exhibit EDU1)* |
| Feb. 10, 2026 | Plaintiff emails USAA HR requesting formal APIP eligibility determination. *(Exhibit APIP3)* |
| Feb. 20, 2026 | USAA denies APIP claim via ServiceNow. Michelle Fagen states determination 'is not subject to appeal.' *(Exhibit APIP4, Message 1)* |
| Mar. 2–3, 2026 | Chris (USAA) verbally confirms no formal written denial letter will be issued for educational assistance for either semester. Plaintiff documents the refusal by email. *(Exhibit EDU1)* |
| Mar. 3, 2026 | Gabrielle Tapia (USAA) refuses to provide Employee Handbook, directs Plaintiff to arbitration or subpoena. *(Exhibit APIP4, Message 5)* |

## PHASE 6 — SSDI Process (September 2025–March 2026)

| Date | Event |
|---|---|
| Sep. 17, 2025 | Lincoln initially determined Plaintiff is not a good SSDI candidate and may have capacity to return to work. *(Exhibit SS1)* Lincoln reversed this position three months later with its December 23, 2025 demand letter. |
| Dec. 23, 2025 | Lincoln issues first SSDI demand letter; introduces Brown & Brown Absence Services Group as SSDI vendor. *(Exhibit G)* |
| Jan. 9–12, 2026 | Brown & Brown sends SSDI representation packet. SSA-1696 reflects Lincoln pays fee (third-party box checked). EFT authorization labels collection as 'debt to a third party.' Plaintiff signs but does not provide bank account information. *(Exhibit Brown1)* |

| Jan. 12, 2026 | Plaintiff executes written authorization for Brown & Brown to receive complete LTD claims file from Lincoln. Lincoln subsequently refuses to release file.<br><br>*(Exhibit I)* |
|---|---|
| Feb. 2, 2026 | Lincoln issues second SSDI demand letter. Sets March 6, 2026 application deadline; threatens benefit reduction for non-compliance.<br><br>*(Exhibit R)* |
| Mar. 8, 2026 | Plaintiff files for SSDI expedited reinstatement. Application submitted after Brown & Brown declined to assist with an initial application. Plaintiff was required to note in the application that Lincoln Financial refuses to release his claims file. Under 20 C.F.R. § 404.1512, Plaintiff is required to submit all evidence known to him without omission. Brown & Brown, as SSA-appointed representative under 20 C.F.R. § 404.1740, is independently obligated to provide complete and accurate information to SSA. Lincoln, as the principal directing Brown & Brown and as a party with a direct financial interest in the SSDI outcome (through its offset and reimbursement rights), is bound by those same obligations through the principal-agent relationship. Lincoln's refusal to release the claims file places the burden of that omission on Plaintiff.<br><br>*(Exhibits G, H, I, N, R)* |
| Mar. 25–27, 2026 | Corporan asserts Lincoln makes disability determinations 'independently of Social Security.' Plaintiff challenges the assertion, citing Lincoln's own written 'good candidate for SSDI' letter as a clinical determination. Corporan responds: 'We don't determine if someone meets the criteria for Social Security. Social Security makes that determination.' No written guidelines or clinical basis produced for any of Lincoln's three contradictory written positions on Plaintiff's SSDI eligibility.<br><br>*(Exhibit SS1, Documents 2–3)* |