## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

CHARLES T. BRUFF,
Plaintiff,
v.

USAA HEALTH AND WELFARE BENEFITS PLAN, USAA EDUCATIONAL
ASSISTANCE PLAN, UNITED STATES AUTOMOBILE ASSOCIATION,
AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,
Defendants.

Case No.: SA26CA1720

---

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER GOVERNING CLAIMS FILE ACCESS AND SEPARATION OF LINCOLN FINANCIAL'S CLAIMS ADMINISTRATION AND LITIGATION FUNCTIONS

---

## PRELIMINARY STATEMENT

Plaintiff Charles T. Bruff respectfully moves this Court for a protective order addressing a structural conflict that arises directly from Defendant Lincoln National Life Insurance Company's simultaneous roles as Plaintiff's active long-term disability plan administrator and as a named defendant in this action. Plaintiff previously filed this motion on March 22, 2026. The Court denied that filing as premature because Defendants had not yet appeared. Lincoln's litigation counsel entered an appearance on April 9, 2026. Plaintiff refiles promptly because the conflict this motion addresses does not become less urgent with time — it becomes irreversible.

Plaintiff does not request oral argument on this motion. Plaintiff has Autism Spectrum Disorder, and unstructured oral proceedings with adverse parties present genuine communication challenges that constitute a disability-related limitation. Plaintiff respectfully submits that this motion can and

should be decided on the briefs. Should the Court determine that additional information or clarification is needed, Plaintiff respectfully requests that such requests be made in writing, consistent with Plaintiff's disability accommodation needs, and Plaintiff will respond promptly.

Plaintiff has also narrowed the relief requested. The separation of functions Plaintiff seeks applies specifically to claims administration personnel directly or indirectly involved in administering Plaintiff's specific claim — not to Lincoln's claims administration function broadly. Lincoln remains free to communicate with any other claims or medical personnel not involved in administering this claim.

The structural conflict this motion addresses is not contingent on future events. It exists now. Plaintiff does not have access to his claims file. Lincoln does. That asymmetry is present today. Moreover, Lincoln's conduct throughout the administrative process demonstrates that this asymmetry is not merely theoretical. Lincoln has systematically refused to produce Plaintiff's claims file for months despite repeated written requests, has withheld the results of more than ten medical reviews it conducted on Plaintiff's own condition, and has refused to produce even a closed 2021 claims file on the stated basis that disclosure is withheld until denial. That documented pattern of strategic information withholding provides a reasonable basis for concern that Lincoln will treat its privileged administrative access as a litigation advantage unless the Court establishes clear boundaries now.

Defendant USAA has not yet appeared in this action. The relief requested in this motion is directed solely at Defendant Lincoln National Life Insurance Company, which appears simultaneously as Plaintiff's active long-term disability plan administrator and as a named defendant in this litigation. The structural conflict this motion addresses arises exclusively from Lincoln's dual role. It does

not implicate USAA's administration of any plan or require any action by USAA. Federal Rule of Civil Procedure 26(c)(1) authorizes this Court to issue a protective order on motion of any party for good cause shown. It does not require all defendants to have appeared before relief may issue against a defendant that has appeared. This motion is therefore ripe as to Lincoln regardless of USAA's appearance status, and Lincoln's appearance as a defendant is sufficient to support the relief requested.

The relief requested is narrow, grounded in established procedural authority and trust law principles that ERISA expressly incorporates, and costs Lincoln nothing if its administrative determinations have been made in good faith.

## NOTE REGARDING APPENDIX H STANDARD FORM PROTECTIVE ORDER

This Court's April 8, 2026 Order noted that the Western District of Texas uses standard form protective orders contained in Appendix H to the Local Rules. Plaintiff has reviewed Appendix H and respectfully submits that the standard form does not cover the relief requested in this motion.

The Appendix H standard confidentiality protective order addresses the treatment of confidential documents exchanged between parties during discovery — it governs how documents are designated, handled, and protected from public disclosure. It does not address the structural conflict arising from a defendant's simultaneous role as a plaintiff's active fiduciary and litigation adversary. It does not address the separation of claims administration and litigation functions within a defendant organization. It does not address discovery parity arising from a fiduciary's privileged administrative access to a claimant's file outside of the formal discovery process.

The relief Plaintiff requests is structurally different from confidentiality protection. It does not concern how documents are handled once produced. It concerns the process by which Lincoln's litigation defense team obtains access to claims materials in the first place, and the structural separation required to prevent Lincoln's ongoing fiduciary administration of Plaintiff's claim from being infected by litigation awareness. No standard Appendix H form addresses these concerns. Plaintiff therefore respectfully requests that the Court enter a non-standard protective order for the reasons set forth herein.

Plaintiff notes an additional consideration relevant to this Court's April 8, 2026 Order. One of the documented cognitive differences associated with Autism Spectrum Disorder is a deficit in theory of mind — the ability to intuit what another person intended by an ambiguous instruction without explicit clarification. The Court's Order indicated that Plaintiff must use the Appendix H form or file a motion explaining why a different protective order is needed. Plaintiff has identified two reasonable interpretations of that instruction: that the Court requires use of the Appendix H form as a structural template for any proposed order, with non-standard provisions added; or that the Court requires a written explanation of why the standard Appendix H form does not cover the relief requested. Plaintiff has chosen the second interpretation and provides that explanation above. If the Court intended the first interpretation, Plaintiff respectfully requests guidance and will promptly comply with whatever format the Court requires.

## BACKGROUND

1. Plaintiff filed this action on March 16, 2026, asserting claims under the Employee Retirement Income Security Act of 1974 against Defendants USAA and Lincoln National Life Insurance

Company arising from wrongful denial of benefits, breach of fiduciary duty, statutory document penalties, and violations of 42 U.S.C. § 407.

2. Defendant Lincoln National Life Insurance Company serves simultaneously as Plaintiff's long-term disability plan administrator and as a named defendant in this litigation. In its capacity as plan administrator, Lincoln has conducted disability reviews of Plaintiff's claim on a regular basis since September 2025, has accumulated a complete claims file containing medical records, internal review conclusions, vocational assessments, and communications with Plaintiff's treating providers, and continues to administer Plaintiff's ongoing LTD benefits.

3. As of the date of this refiling, Lincoln has initiated a medical review of Plaintiff's claim, having transmitted requests for updated medical records to Plaintiff's treating providers with a 45-day return deadline. This review was initiated on or about March 20, 2026, consistent with the review schedule Lincoln communicated to Plaintiff in writing on January 9, 2026. That review remains ongoing and active claims administration personnel are currently making determinations about Plaintiff's claim.

4. Plaintiff has not been provided a copy of his claims file. Lincoln denied Plaintiff's repeated written requests for the claims file on the stated basis that the file is withheld from claimants while their claims remain active and approved. That refusal is itself the subject of the First Claim in this action. As a result, Plaintiff enters this litigation without access to a body of documentation about himself that Lincoln, by virtue of its role as plan administrator, possesses and to which its litigation defense team may have access.

5. Lincoln's litigation counsel entered an appearance in this action on April 9, 2026.

6. On April 9, 2026, Plaintiff conducted the required CV-7G conferral with Lincoln's litigation counsel by written email, consistent with Plaintiff's disability accommodation requiring written communication. In her response, Lincoln's litigation counsel stated: "we are currently preparing both the current and the 2021 claim files for production to you." Plaintiff notes that the subject of that statement is "we" — meaning Lincoln's litigation counsel and her team. This statement confirms that Lincoln's litigation defense counsel has access to Plaintiff's claims file and is actively reviewing it in connection with this litigation.

The concern this motion raises is not resolved by the anticipated production. Lincoln's litigation counsel will continue to have real-time access to Plaintiff's claims file as it develops throughout this litigation — as new medical records are added, as ongoing disability reviews generate new conclusions, and as claims administration personnel make new determinations about Plaintiff's claim. Plaintiff will have access to those same materials only through formal discovery, on a delayed basis, after Lincoln's litigation team has already reviewed them. That structural asymmetry persists regardless of any single production event. It is the ongoing and compounding nature of that asymmetry — not any particular document — that this motion seeks to address. A copy of the April 9, 2026 conferral correspondence is attached hereto as Exhibit CONFER1.

## ARGUMENT

### I. The Court Has Authority to Enter the Requested Protective Order.

Federal Rule of Civil Procedure 26(c) authorizes this Court to issue a protective order for good cause to protect a party from annoyance, embarrassment, oppression, or undue burden or prejudice. The Court also possesses inherent authority to manage its own proceedings and to prevent abuse of the judicial process. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), separately authorizes

appropriate equitable relief to redress violations of ERISA and to enforce its provisions. The relief requested here falls within all three sources of authority.

## II. Discovery Parity Is Required as a Matter of Basic Procedural Fairness.

The claims file at issue is not an ordinary corporate document. It was created and is maintained by Lincoln exclusively in the course of its fiduciary obligation to administer Plaintiff's disability claim solely in Plaintiff's interest. Every medical record, every internal review conclusion, every vocational assessment, and every communication in that file exists because Lincoln assumed a fiduciary duty to Plaintiff as a plan beneficiary. The purpose of that file is the administration of Plaintiff's claim in Plaintiff's best interest — not the advancement of Lincoln's litigation defense. Redirecting that file toward litigation purposes against the very beneficiary whose interest it was created to serve directly contradicts the fiduciary obligation under which it was built. Under the trust law principles ERISA incorporates, a trustee cannot use documents created in the course of its fiduciary duty against the beneficiary it is obligated to serve without court authorization. That principle applies here independent of any question about discovery timing or document access procedures.

Plaintiff notes that Lincoln has characterized the administrative record as the heart of any ERISA dispute. Plaintiff does not disagree. The administrative record is also the heart of Plaintiff's ability to participate in the administration of his own ongoing claim — to verify the accuracy of Lincoln's internal assessments, to identify inconsistencies in Lincoln's positions, and to respond meaningfully to Lincoln's requests for information. Lincoln's refusal to produce that record to Plaintiff despite repeated written requests over several months did not merely create a litigation asymmetry. It actively prevented Plaintiff from using the very record Lincoln now calls central to engage meaningfully in the administration of his own claim. The First Claim in this action arises

directly from that refusal. The centrality of the administrative record to this litigation makes the asymmetry of access this motion addresses all the more significant.

The most immediate relief this motion seeks requires no novel legal theory. It rests on Rule 26(c) and the basic principle that parties to federal litigation proceed through the discovery process on equal footing.

At present, Lincoln's litigation defense team may have access to Plaintiff's complete claims file by virtue of Lincoln's role as plan administrator. That file contains every medical record Plaintiff's providers have submitted to Lincoln since March 2025, the results and conclusions of every internal medical review Lincoln has conducted, every vocational assessment, every internal communication about Plaintiff's claim, and every document Plaintiff has submitted to Lincoln during the claims process. Plaintiff has none of this. Plaintiff must obtain it through discovery.

This asymmetry is not a feature of ERISA litigation. It is a structural consequence of Lincoln's dual role that this Court has authority to address. In any other litigation, both parties begin with equivalent access to documentary evidence and obtain additional material through the formal discovery process. Lincoln's status as plan administrator does not convert privileged fiduciary file access into a litigation advantage. If Lincoln wishes to use the contents of Plaintiff's claims file in this litigation, it should obtain that material through formal discovery, subject to the same rules, timelines, and obligations that govern Plaintiff's access to Lincoln's documents.

Requiring both parties to proceed through discovery on equal footing does not prejudice Lincoln in any legitimate way. Lincoln's claims file will be fully available to it through the discovery process. The requested relief simply ensures that Plaintiff has the same access to that material that Lincoln does, through the same process, at the same time.

**III. ERISA Incorporates Trust Law Principles That Prohibit a Fiduciary from Competing Against Its Beneficiary Without Court Authorization.**

The discovery parity argument in Section II stands entirely on its own. The trust law principles addressed in this section provide the additional foundation for the separation of functions requested in Section IV.

ERISA's fiduciary framework is explicitly grounded in the common law of trusts. The Supreme Court confirmed in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-11 (1989), that ERISA's fiduciary responsibility provisions "codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts." The Court reaffirmed this foundation in Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), and again in Tibble v. Edison International, 575 U.S. 523 (2015), where it quoted the Restatement Third of Trusts directly in resolving an ERISA fiduciary duty question.

Among the foundational principles of trust law that ERISA incorporates is the duty of loyalty. The Restatement Second of Trusts § 170 provides that a trustee is under a duty not to profit at the expense of the beneficiary and not to enter into competition with the beneficiary without consent, unless authorized to do so by the terms of the trust or by a proper court. This principle reflects what Justice Cardozo described as the trustee's obligation to observe not merely the morals of the marketplace but the punctilio of an honor the most sensitive. Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928). Courts have long recognized that litigation itself can constitute a breach of the duty of loyalty when a trustee uses its fiduciary position to advance its own interests against those of the beneficiary it is obligated to serve.

Lincoln occupies two irreconcilable positions simultaneously. As plan administrator, Lincoln holds fiduciary obligations to Plaintiff as beneficiary — it must administer Plaintiff's disability

claim solely in Plaintiff's interest. As defendant in this action, Lincoln occupies an adversarial position directly opposed to Plaintiff's interests. These two roles cannot coexist without court management. Under the trust law principles ERISA incorporates, a fiduciary that finds itself in competition with its beneficiary must have either the beneficiary's consent or authorization from a proper court. Plaintiff has not consented. The filing of this action is not consent — it is the exercise of a federal statutory right to enforce ERISA, and construing that exercise as consent to an unmanaged conflict would effectively nullify the right to sue by penalizing its invocation. Court authorization or management of the conflict is therefore required.

### IV. Separation of Lincoln's Claims Administration and Litigation Functions Is Required to Prevent the Structural Conflict From Producing Ongoing Prejudice.

The trust law principles described in Section III require not only that Lincoln's litigation team be limited to the discovery process for access to Plaintiff's file, but that Lincoln's claims administration function and litigation defense function be kept separate with respect to the personnel directly or indirectly involved in administering Plaintiff's specific claim.

Lincoln is currently conducting disability reviews of Plaintiff's claim. Those reviews generate medical assessments, functional capacity evaluations, and eligibility conclusions about Plaintiff's condition. Plaintiff cannot see those conclusions. Lincoln's litigation defense team, by contrast, has no such limitation. Without a formal separation, the conclusions generated by Lincoln's claims administration team — conducted in the course of ongoing fiduciary administration — become available to Lincoln's litigation team as a continuously refreshed body of evidence about Plaintiff that Plaintiff himself cannot access or respond to outside of formal discovery.

The Supreme Court in Glenn identified the separation of claims administration functions from other financial and operational functions as an appropriate structural response to conflicts of

interest in ERISA plan administration, citing with approval the concept of "walling off claims administrators" to prevent conflicts from infecting benefit determinations. Glenn, 554 U.S. at 115-16. The Supreme Court's approval of "walling off" as the appropriate structural remedy for ERISA conflicts applies with equal force here. The conflict Glenn addressed — an insurer simultaneously paying and evaluating claims — is structurally identical to the conflict presented here: Lincoln simultaneously administering Plaintiff's claim as a fiduciary and defending against Plaintiff's challenge to that administration as a litigation adversary. The structural remedy Glenn approved is the relief Plaintiff requests.

The separation Plaintiff requests is narrow. It applies only to claims administration personnel directly or indirectly involved in administering Plaintiff's specific claim. Lincoln remains free to communicate with any other claims or medical personnel not involved in administering this claim. The separation does not restrict Lincoln's litigation counsel from communicating with Lincoln's legal department, its corporate officers, or any personnel whose role is not the direct administration of Plaintiff's claim.

The relief requested here is more urgently warranted than in the typical ERISA dispute. Most ERISA litigation arises from a final denial of benefits, at which point the administrative relationship between the claimant and the plan administrator has concluded. The conflict in those cases is historical. Here, Plaintiff's claim is approved and in active payment status. Lincoln is currently conducting ongoing medical reviews and making real-time eligibility determinations. The administrative relationship is live and continuing. The risk of contamination between Lincoln's claims administration and litigation functions is therefore not theoretical — it is present, ongoing, and compounds with each new administrative determination Lincoln makes while this litigation is pending.

The separation operates simply. Claims administration personnel directly or indirectly involved in administering Plaintiff's claim should not be informed that this litigation is pending, so that their determinations continue to be made on the same clinical and administrative basis they would be made absent this proceeding. Lincoln's litigation defense counsel should not communicate with those personnel for the purpose of influencing, directing, or shaping ongoing claims determinations in connection with this litigation. Documents generated through claims administration are already subject to ERISA's existing retention requirements and will be preserved independent of any litigation hold. The separation does not require Lincoln to alter its document retention practices in any way.

**V. The Requested Relief Costs Lincoln Nothing If Its Administrative Determinations Have Been Made in Good Faith.**

Lincoln directed Plaintiff to apply for expedited reinstatement of Social Security Disability Insurance benefits under 42 U.S.C. § 1310. Expedited reinstatement requires a finding that the claimant is unable to engage in substantial gainful activity due to the same or related impairment. That standard is more demanding than the own occupation standard that governs Plaintiff's LTD benefits through September 2027, under which Lincoln need only find that Plaintiff is unable to perform the material and substantial duties of his prior occupation as a senior software engineer.

If Lincoln genuinely believes Plaintiff meets the more demanding expedited reinstatement standard — as its own written direction to Plaintiff confirms — then Lincoln has no legitimate clinical basis for generating adversarial review conclusions under the less demanding own occupation standard that its litigation team could use against Plaintiff in this proceeding. A separation of claims administration and litigation functions costs Lincoln nothing if its administrative determinations have been made honestly and its litigation defense will rest on the

merits of its legal positions rather than on a continuously refreshed body of medical evidence unavailable to Plaintiff.

The same logic applies to the discovery parity request. If Lincoln intends to use its claims file in this litigation only in the way that any defendant uses legitimately obtained evidence — through discovery, subject to the same rules that govern Plaintiff — then requiring it to do so costs it nothing. The only thing the requested relief prevents is the use of Lincoln's privileged fiduciary access as an advantage unavailable to Plaintiff.

**RELIEF REQUESTED**

Plaintiff respectfully requests that the Court enter a protective order providing as follows:

1. Lincoln's litigation defense counsel shall not use, reference, or rely upon any document from Plaintiff's LTD or STD claims file in connection with this litigation unless that document has first been produced through formal discovery and made available to both parties on equal terms.

2. Lincoln shall implement a separation between the claims administration personnel directly or indirectly involved in administering Plaintiff's specific claim and its litigation defense team for the duration of this litigation such that:

    a. Claims administration personnel directly or indirectly involved in administering Plaintiff's claim shall not be informed that this litigation is pending or that any legal proceeding involving Plaintiff has been initiated, so that their administrative and clinical determinations continue to be made on the same basis they would be made absent this proceeding;

b. Lincoln's litigation defense counsel shall not communicate with claims administration personnel directly or indirectly involved in administering Plaintiff's claim for the purpose of influencing, directing, or shaping ongoing claims determinations in connection with this litigation, so as to preserve the administrative and clinical impartiality that Lincoln's fiduciary duty requires;

c. Lincoln's litigation defense counsel shall not receive, review, or rely upon conclusions, assessments, or determinations generated by claims administration personnel directly or indirectly involved in administering Plaintiff's claim after the date of this filing outside of the formal discovery process; and

d. No document generated through the claims administration process by personnel directly or indirectly involved in administering Plaintiff's claim after the date of this filing shall be used in this litigation unless produced through formal discovery.

3. Lincoln shall file a certification with this Court within 30 days of the date of this order confirming that the separation described above has been implemented and identifying by title, not by name, the personnel on each side of the separation.

Plaintiff is available for additional written briefing at the Court's request. Plaintiff notes that as a person with Autism Spectrum Disorder, live unstructured communication with adverse parties presents genuine challenges, and Plaintiff respectfully requests that any required communication with the Court occur in written form as a reasonable accommodation. Plaintiff's pending motion for appointment of counsel addresses this issue directly. Plaintiff will engage in whatever written process the Court directs.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7G, Plaintiff certifies that on April 9, 2026, Plaintiff conferred with counsel for Defendant Lincoln National Life Insurance Company, Iwana Rademaekers, by written email regarding the relief requested in this motion. Written conferral was conducted consistent with Plaintiff's disability accommodation for Autism Spectrum Disorder. Counsel for Lincoln responded on April 9, 2026, stating that Lincoln opposes this motion on three grounds: (1) the motion does not use the Court's prescribed Appendix H form; (2) the motion is premature because Lincoln has not yet responded to the Complaint and USAA has not appeared; and (3) the requested relief lacks legal basis. Lincoln's third objection — that the requested relief has no legal basis — was stated without identifying any specific deficiency in the applicable authority. Plaintiff addresses the legal basis for the requested relief in the Argument section of this motion. A copy of the conferral correspondence is attached as Exhibit CONFER1.

Dated: April 9, 2026

Respectfully submitted,

/s/ Charles T. Bruff
Charles T. Bruff
Plaintiff in Pro Se
4835 Medical Drive #29643
San Antonio TX 78229
318-452-8978
cbruff13@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, a true and correct copy of the foregoing motion was served upon counsel for Defendant Lincoln National Life Insurance Company through the

Court's CM/ECF electronic filing system, which will automatically generate electronic notice to all counsel of record.

/s/ Charles T. Bruff
Charles T. Bruff
Plaintiff in Pro Se