**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

CHARLES T. BRUFF,
Plaintiff,
v.

USAA HEALTH AND WELFARE BENEFITS PLAN, USAA EDUCATIONAL
ASSISTANCE PLAN, UNITED STATES AUTOMOBILE ASSOCIATION,
AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,
Defendants.

Case No.: SA26CA1720

**PLAINTIFF'S NOTICE OF DEVELOPMENT AFFECTING PENDING MOTIONS**

**PRELIMINARY STATEMENT**

Plaintiff Charles T. Bruff respectfully submits this notice to inform the Court of a significant development that occurred on the morning of April 10, 2026, which directly affects Plaintiff's pending Motion for Protective Order Governing Claims File Access and Separation of Lincoln Financial's Claims Administration and Litigation Functions and Plaintiff's pending Motion for Appointment of Counsel. The development raises immediate issues regarding Plaintiff's active clinical obligations, federal privacy law, ERISA fiduciary duty, and the merits of Claim One of the Complaint.

Plaintiff notes that the original version of the pending Motion for Protective Order was filed on March 22, 2026, prior to any defendant's appearance. Plaintiff filed early because Plaintiff recognized that structural contamination between Lincoln's claims administration and litigation functions would occur promptly upon counsel's appearance. That prediction proved accurate. Lincoln's litigation counsel entered her appearance on April 7, 2026 (ECF No. 13). By 7:09 AM on April 10, 2026 — three days later — Lincoln's claims manager had transmitted a federal litigation document through the claims administration channel and redirected all clinical

correspondence to litigation counsel. Plaintiff raises this chronology not to revisit prior rulings but to establish that the harm the protective order was designed to prevent is not speculative. It has already occurred.

Plaintiff notes a correction to the record. Plaintiff's Motion for Protective Order filed as ECF No. 16 on April 9, 2026 states that Lincoln's litigation counsel entered her appearance on April 9, 2026. That date is incorrect. The docket reflects that counsel's Notice of Appearance was filed and entered on April 7, 2026 as ECF No. 13. Plaintiff corrects that error here for the record. The correct appearance date is April 7, 2026.

Plaintiff further notes that the Motion for Protective Order filed on March 22, 2026, was part of the public docket at the time Lincoln's litigation counsel entered her appearance on April 7, 2026. Counsel was therefore aware, at the moment of her appearance, that Plaintiff was seeking court protection against precisely the structural contamination that occurred within three days of that appearance. Lincoln's claims administration personnel proceeded to collapse the separation between claims administration and litigation functions with that notice on the record.

## I. THE APRIL 10, 2026 DEVELOPMENT

On April 10, 2026, at 7:09 AM, Plaintiff's Lincoln claims manager, Kristianne Corporan, transmitted an email to Plaintiff stating: "Because of the ongoing litigation involving certain aspects of your claim, please direct further correspondence to Lincoln's counsel of record in your pending lawsuit." Ms. Corporan attached a copy of Defendant Lincoln's counsel's Notice of Appearance to that email.

This email was transmitted through Lincoln's claims administration channel — the same channel through which Plaintiff's clinical records, medical updates, and benefit correspondence have been

routed since March 2025. Ms. Corporan is Plaintiff's assigned claims manager responsible for administering Plaintiff's active long-term disability claim.

Lincoln's Notice of Appearance — a federal litigation document — was thus transmitted by claims administration personnel directly into the claims administration record on the morning after Lincoln's litigation counsel first appeared in this action.

## II. THE CLINICAL PATHWAY PROBLEM

Plaintiff has medical records due to Lincoln on or around May 4, 2026, pursuant to Lincoln's written request for updated medical documentation transmitted on or about March 20, 2026. Plaintiff's treating providers are authorized under HIPAA and existing signed authorizations to transmit clinical records to Lincoln National Life Insurance Company in its capacity as plan administrator for claims administration purposes. That authorization does not extend to litigation counsel.

By redirecting all correspondence to litigation counsel, Ms. Corporan's email has eliminated the clinical pathway through which medical records would ordinarily be transmitted. Plaintiff's treating providers cannot transmit protected health information to Lincoln's litigation counsel under HIPAA. Litigation counsel are not treating providers, insurers, or plan administrators. They are not authorized recipients of protected health information under the existing authorizations Plaintiff has signed. Plaintiff's doctors are not permitted to release medical records to them.

No alternative clinical pathway has been identified or offered. The May 4, 2026 deadline remains in effect. Plaintiff's active LTD benefits are subject to periodic medical review, and failure to produce required documentation within the specified period may be used as a basis for adverse action on Plaintiff's claim.

### III. THE FIDUCIARY AND DISCOVERY CONSEQUENCES

The redirection of clinical correspondence to litigation counsel does not merely create a procedural problem. It creates an irreconcilable structural conflict of the kind Plaintiff's pending protective order motion specifically addresses.

1. Even if Plaintiff were to obtain medical records personally and transmit them directly to litigation counsel, those records would simultaneously constitute clinical documents required by Lincoln's ongoing administration of Plaintiff's claim and documents in the possession of litigation counsel outside the formal discovery process. This is the precise asymmetry Plaintiff's protective order motion seeks to prevent.

2. Medical records transmitted outside formal discovery to litigation counsel become potentially subject to discovery treatment in ways that records transmitted through proper clinical channels for claims administration purposes may not. Plaintiff would be placed in the position of voluntarily introducing sensitive medical documentation into the litigation stream without the procedural protections that formal discovery provides.

3. By making litigation counsel the only available clinical pathway, Lincoln has transferred its statutory obligation under ERISA Section 503, 29 U.S.C. § 1133, to provide Plaintiff a full and fair review of his disability claim onto staff who are legally incapable of fulfilling it. ERISA's full and fair review requirement obligates the plan administrator to ensure that clinical determinations are made solely in the claimant's interest, with access to all relevant information and without conflict. The DOL claims procedure regulation, 29 C.F.R. § 2560.503-1(b)(7), independently requires that claims adjudicators and reviewers be independent and impartial, and prohibits plans from selecting or compensating individuals in ways that create incentives to support particular outcomes. For disability claims

specifically, 29 C.F.R. § 2560.503-1(h)(3)(iii) requires that clinical reviewers be independent of prior determinations and free from conflicts that would compromise their judgment. Litigation counsel satisfies none of these requirements. Litigation counsel has a direct financial and professional interest in outcomes that favor Lincoln. Litigation counsel cannot simultaneously discharge Lincoln's statutory obligation to provide Plaintiff a full and fair review and their adversarial obligation to defend Lincoln against Plaintiff's challenge to that administration. Those duties are irreconcilable. Lincoln cannot satisfy its ERISA fiduciary and statutory obligations through its litigation team.

4. The attachment of a federal litigation document — the Notice of Appearance — to a claims administration email confirms that Lincoln's claims administration and litigation functions are no longer separated. That contamination is now documented. It occurred the morning after Lincoln's litigation counsel appeared.

### IV. CLAIM ONE: COUNSEL'S REPRESENTATION AS CONCESSION ON THE MERITS

On April 9, 2026, Lincoln's litigation counsel stated in the CV-7G conferral correspondence: "we are currently preparing both the current and the 2021 claim files for production to you." That representation was made without any argument that Lincoln was legally entitled to withhold the files. No defense of Lincoln's withholding policy was offered. As of the date of this filing, Plaintiff has not received either file.

Claim One of Plaintiff's Complaint asserts that Lincoln violated ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), by refusing to produce Plaintiff's claims file upon written request while the claim remained active. Lincoln's withholding policy — stated repeatedly in writing by Ms. Corporan — was that the claims file would not be produced unless and until Plaintiff was denied

benefits. Lincoln's litigation counsel has now represented that both the current LTD claims file and the closed 2021 STD claims file will be produced, without any assertion that Lincoln's withholding policy was legally valid and without any explanation for the months of prior refusal.

The representation that production is forthcoming through litigation counsel rather than through the claims administration channel further confirms that any production will be an artifact of litigation, not a voluntary act of ERISA compliance. The files would not have been produced absent the filing of this action. ERISA Section 104(b)(4) required production within 30 days of written request. Plaintiff made repeated written requests over a period of months. Lincoln did not produce the files within the statutory period and offers no legal justification for the delay. Lincoln's counsel's silence on the merits of the withholding policy — in the face of a direct legal claim asserting its invalidity — is a concession by conduct.

Plaintiff respectfully submits that Lincoln's counsel's silence on the merits of the withholding policy — in the face of a direct legal claim asserting its invalidity — and the representation that production is forthcoming without any legal justification for the months of prior refusal, constitute a concession by conduct on the merits of Claim One.

### V. RELEVANCE TO MOTION FOR APPOINTMENT OF COUNSEL

Under Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir. 1980), courts consider whether a plaintiff has a meritorious claim in evaluating motions for appointment of counsel in ERISA cases. Lincoln's voluntary production of both claims files without legal justification for prior withholding establishes that Claim One has merit — as demonstrated by the defendant's own conduct within 24 hours of appearing in this action.

The events of April 10, 2026 further illustrate the complexity factor under Iron Workers. Within hours of Lincoln's counsel appearing, Plaintiff is required to simultaneously analyze HIPAA

authorization scope, ERISA fiduciary duty, clinical record management, discovery procedure, and the interaction between ongoing claims administration and active federal litigation. Plaintiff has Autism Spectrum Disorder. Written communication is Plaintiff's appropriate accommodation. The pace and complexity of these developments underscore the need for appointed counsel that Plaintiff's pending motion addresses.

## VI. REQUEST FOR GUIDANCE

Plaintiff respectfully submits that the issues identified above present overlapping structural questions that may benefit from the Court's guidance before Plaintiff's medical records deadline of on or around May 4, 2026. Those questions include:

1. The appropriate mechanism for Plaintiff to fulfill ongoing medical documentation obligations consistent with HIPAA and ERISA fiduciary requirements, given that the ordinary clinical pathway has been redirected to litigation counsel.

2. The interaction between the clinical pathway problem and Plaintiff's pending Motion for Protective Order, in light of the documented contamination of Lincoln's claims administration and litigation functions that occurred this morning.

3. The status of Plaintiff's pending Motion for Appointment of Counsel in light of the merits established by Lincoln's production and the complexity demonstrated by the April 10, 2026 developments.

Plaintiff does not presume to dictate the appropriate procedural mechanism but respectfully suggests that a status conference, conducted in written form consistent with Plaintiff's disability accommodation needs, may be an efficient means of addressing these matters before the May 4,

2026 deadline. Plaintiff defers to the Court's judgment as to whether such a conference is appropriate and will respond promptly to whatever guidance the Court provides.

A copy of Ms. Corporan's April 10, 2026 email is attached hereto as Exhibit CORPORAN1. A copy of the April 9, 2026 conferral correspondence reflecting Lincoln's counsel's production statement is attached as Exhibit CONFER1.

Dated: April 10, 2026

Respectfully submitted,

/s/ Charles T. Bruff
**Charles T. Bruff**
Plaintiff in Pro Se
4835 Medical Drive #29643
San Antonio, TX 78229
318-452-8978
cbruff13@outlook.com

### CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, a true and correct copy of the foregoing notice was served upon counsel for Defendant Lincoln National Life Insurance Company through the Court's CM/ECF electronic filing system, which will automatically generate electronic notice to all counsel of record.

/s/ Charles T. Bruff
Charles T. Bruff
Plaintiff in Pro Se