Charles T. Bruff

4835 Medical Drive #29643

San Antonio, Texas 78229

318-452-8978

cbruff13@outlook.com

Plaintiff in Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## SAN ANTONIO DIVISION

**CHARLES T. BRUFF,**
  Plaintiff,

v.

USAA HEALTH AND WELFARE BENEFITS PLAN,

USAA EDUCATIONAL ASSISTANCE PLAN,

UNITED STATES AUTOMOBILE ASSOCIATION,

AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,

  Defendants.


Case No. 5:26-CV-01720


**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

**GOVERNING CLAIMS FILE ACCESS AND SEPARATION OF LINCOLN**

**FINANCIAL'S CLAIMS ADMINISTRATION AND LITIGATION FUNCTIONS**

## PRELIMINARY STATEMENT

Lincoln did not respond to the motion Plaintiff filed. It responded to a different motion — one seeking to bar Lincoln's attorney from contacting her own client. That is not what ECF No. 16 requests.

ECF No. 16 is sixteen pages grounded in Federal Rule of Civil Procedure 26(c), ERISA's fiduciary framework, the trust law principles the Supreme Court has repeatedly confirmed ERISA incorporates, Glenn's approval of structural separation as the appropriate remedy for ERISA conflicts of interest, and the documented facts of Lincoln's simultaneous roles as Plaintiff's active fiduciary and litigation adversary. Lincoln's response cites none of those authorities. It does not address Glenn. It does not address Firestone. It does not address Tibble. It does not address the Restatement Second of Trusts. It does not address Meinhard v. Salmon. It does not address discovery parity. It does not address the duty of loyalty. It does not address Section V of the motion — the argument that a separation of functions costs Lincoln nothing if its administrative determinations have been made in good faith.

When a response ignores every legal authority cited in the motion it purports to oppose, it does not constitute an effective opposition. Lincoln's response reaches conclusions about the merits of Plaintiff's legal arguments without engaging those arguments. That is not opposition — it is assertion, and assertion without analysis is not entitled to weight.

## ARGUMENT

## I.  LINCOLN'S RESPONSE MISCHARACTERIZES THE RELIEF REQUESTED.

Lincoln's response characterizes the motion as seeking to "preclude Lincoln's claims department from contact with Lincoln's legal department and Lincoln's legal counsel" and calls this request "absurd on its face." ECF No. 19 at 2. That characterization is false, and Lincoln's own response contradicts it.

ECF No. 16, page 2, states expressly:

> "The separation of functions Plaintiff seeks applies specifically to claims administration personnel directly or indirectly involved in administering Plaintiff's specific claim — not to Lincoln's claims administration function broadly. Lincoln remains free to communicate with any other claims or medical personnel not involved in administering this claim."

The motion does not seek to bar Lincoln's attorney from contacting her client. It seeks a narrow structural separation between specific claims administration personnel — those directly or indirectly involved in administering Plaintiff's ongoing LTD claim — and Lincoln's litigation defense team. Lincoln's legal department, corporate officers, and any personnel not involved in the direct administration of Plaintiff's claim are entirely unaffected.

This Court is entitled to hold Lincoln's response to the standard of the motion actually filed, not the motion Lincoln wished Plaintiff had filed.

## II.  LINCOLN MADE A MATERIALLY INCOMPLETE CERTIFICATION TO THIS COURT THE DAY AFTER ACKNOWLEDGING THAT COMPLETENESS WAS UNRESOLVED.

Lincoln's response, filed April 15, 2026, represents to this Court that Lincoln's counsel "provided Plaintiff with a full copy of the claim file and the relevant policy on April 12, 2026." ECF No. 19 at 2 (emphasis added).

On April 14, 2026, at 8:48 P.M. — the night before ECF No. 19 was filed — Lincoln's counsel sent Plaintiff the following email:

"Everything is included, but I'll have to confirm on item 3. I'll get back to you soon."

Item 3 of Plaintiff's April 13, 2026 completeness inquiry asked whether the production included: "Any guidance criteria or standards Lincoln uses when evaluating claims involving Autism Spectrum Disorder, Cerebral Palsy, or Post-Traumatic Stress Disorder, regardless of whether those materials were applied to my specific claim."

Lincoln's counsel therefore had actual knowledge, the night before filing ECF No. 19, that completeness of the production remained unresolved as to the single most important category of documents at issue in this case — the internal guidelines governing how Lincoln evaluates claims involving Plaintiff's specific diagnosed conditions. She filed a representation of full production to this Court the following day without disclosing that the question of completeness on item 3 remained open.

Texas Rule of Professional Conduct 3.3 requires candor toward the tribunal. A representation that production was complete, made with actual knowledge that completeness on a material category was unconfirmed and pending, does not satisfy that obligation. Plaintiff does not ask this Court to resolve that question today. Plaintiff asks this Court to note that Lincoln's certification of completeness was filed under circumstances Lincoln's own counsel knew

rendered it premature, and to treat Lincoln's representations about the adequacy of its production accordingly.

## III. LINCOLN ADMITS THAT NO ADVERSE DETERMINATION HAS BEEN MADE — AN ADMISSION THAT IS FACTUALLY INCORRECT AND LEGALLY SIGNIFICANT.

Lincoln's response states: "there has been no adverse determination regarding Plaintiff's LTD benefit from the Plan under the Policy that would have triggered a requirement under 29 U.S.C. § 2560.503-1(h)(2)(iii) that the claim file must be provided to Plaintiff." ECF No. 19 at 2.

That statement is factually incorrect. Two adverse benefit determinations have been made. Lincoln made both of them.

Under 29 C.F.R. § 2560.503-1(m)(4)(i) — as amended by the DOL's December 2016 final rule applicable to all disability claims filed on or after January 1, 2018 — the term "adverse benefit determination" means:

"a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan."

Plaintiff's claim was filed in March 2025. The 2018 amended definition applies.

The first adverse benefit determination was made on September 18, 2025, when Lincoln approved Plaintiff's LTD claim subject to the Mental Illness, Substance Abuse and/or Non-Verifiable Symptoms Limitation — capping benefits at 24 months. That limitation is a reduction

in benefits within the express meaning of § 2560.503-1(m)(4)(i). Lincoln approved full LTD benefits and simultaneously applied a limitation that reduces the duration of those benefits from the policy maximum to 24 months. A reduction in the duration of benefits is a reduction in benefits. It does not become something other than an adverse benefit determination because it was issued at the moment of approval rather than at the moment of denial. The administrative clock started September 18, 2025. Lincoln's production obligation under § 2560.503-1(h)(2)(iii) attached at that moment.

The second adverse benefit determination was made on January 27, 2026, when Lincoln's Vocational Rehabilitation Counselor Aleysia Chambers referred Plaintiff to the Texas Workforce Commission's state vocational rehabilitation program — a payer-of-last-resort program — without issuing any written denial notice, without citing any plan provision, and without providing any appeal rights. A failure to provide a benefit to which a claimant is entitled is an adverse benefit determination under § 2560.503-1(m)(4)(i). Lincoln's referral to a state program it acknowledged was the payer of last resort, without first making a compliant private denial, is precisely such a failure.

Lincoln therefore made not zero adverse benefit determinations, but two — each independently triggering the production obligation it claims does not exist, each generating its own penalty clock under § 502(c), and each requiring a § 503-compliant written notice that was never issued.

Lincoln's representation to this Court that no adverse determination occurred is not a legal argument. It is a factual assertion that the regulation directly contradicts. The DOL amended § 2560.503-1 in December 2016, effective January 1, 2018, specifically because LTD insurers were systematically failing to comply with the claims procedure protections Congress

required — including the protections triggered by adverse benefit determinations involving reductions in benefits. Lincoln has been bound by the amended definition for nearly nine years. Plaintiff's claim falls squarely within its scope.

The implications of Lincoln's position extend beyond this case. Lincoln is one of the largest group LTD insurers in the country. If Lincoln's litigation position before this Court reflects its institutional understanding of what constitutes an adverse benefit determination under § 2560.503-1(m)(4)(i) — that a reduction in benefit duration applied at the moment of approval does not qualify — then that misunderstanding has been operating across Lincoln's entire LTD claim portfolio since at least January 1, 2018. Every claimant whose benefits were approved subject to a limitation that reduced their duration, and who was told no adverse determination had been made, was told something the regulation says is false. The DOL amended these regulations precisely because that pattern of institutional noncompliance was documented and widespread. Lincoln's position in this case suggests the pattern has not ended — it has merely moved from the claims department to the courtroom.

This Court is respectfully asked to apply the regulation as written.

## IV.  LINCOLN MISCONSTRUES THE WALLING OFF DOCTRINE.

Lincoln argues that "walling off" procedures are "meant to ensure that insurance companies have taken substantial measures to ensure claim accuracy and to remove bias from its claim processing, including the 'walling off' of underwriting from claim processing functions." ECF No. 19 at 4. Lincoln argues that this doctrine has nothing to do with separating claims administration from litigation functions.

That argument misreads Glenn. The Supreme Court in Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105, 115-16 (2008), approved structural separation as a remedy for ERISA conflicts of interest arising from an insurer's simultaneous roles. The conflict Glenn addressed — an insurer simultaneously paying and evaluating claims — is structurally identical to the conflict presented here: Lincoln simultaneously administering Plaintiff's claim as a fiduciary and defending against Plaintiff's challenge to that administration as a litigation adversary. The underlying principle Glenn endorsed is not limited to the underwriting-versus-claims context. It is the principle that when a fiduciary occupies conflicting roles, structural separation of the conflicting functions protects the beneficiary's interests. That principle applies with equal force here.

Lincoln offers no authority for the proposition that Glenn's structural remedy is categorically unavailable outside the underwriting context. It offers only an assertion. An assertion unsupported by authority, directed at a motion that cited controlling precedent, is not a legal argument.

## V. THE APRIL 10 CORRESPONDENCE CONFIRMS THE CONTAMINATION PLAINTIFF DESCRIBED.

Lincoln's response at Section C addresses ECF No. 17 — Plaintiff's Notice of Development regarding the April 10 email from Kristianne Corporan redirecting clinical correspondence to litigation counsel. Lincoln represents that its counsel "immediately emailed Plaintiff on April 10, 2026, at 2:41 P.M." to clarify that clinical records should continue to go to Lincoln. ECF No. 19 at 5.

Lincoln omits the sequence. Corporan's email redirecting clinical correspondence to litigation counsel was sent the morning of April 10, 2026. That redirect attached a copy of Lincoln's counsel's notice of appearance, making explicit to the claims administration team that this litigation was pending. The 2:41 P.M. clarification came hours later — after Plaintiff had already filed ECF No. 17 placing the contamination on the docket. The clarification was reactive, not proactive. It came only after Plaintiff brought the redirect to this Court's attention.

Lincoln's response further omits that Corporan sent a second email on April 10, 2026, at 2:57 P.M. — sixteen minutes after the clarification — stating that she would "still follow up for medical information directly." Lincoln cannot simultaneously argue that the redirect was a miscommunication that was immediately corrected while Corporan was contradicting that correction in writing sixteen minutes later.

The contamination ECF No. 17 described is not a mischaracterization. It is documented in the record.

## VI.  USAA'S APPEARANCE STATUS IS IRRELEVANT TO THE RELIEF REQUESTED.

During conferral, Lincoln argued that this motion was premature because USAA had not yet appeared. That argument has no basis in Rule 26(c), which authorizes a protective order on motion of any party for good cause shown. It does not require all defendants to have appeared before relief may issue against a defendant that has appeared. The relief requested in ECF No. 16 is directed solely at Lincoln. It does not implicate USAA, require any action by USAA, or depend in any way on USAA's participation in this litigation. USAA's appearance status is legally irrelevant to whether good cause exists for the relief requested against Lincoln.

## VII.  LINCOLN'S PARTIAL CONCESSION ON H-1 CONFIRMS THE NEED FOR BROADER RELIEF — AND CANNOT BE USED TO RESTRICT PLAINTIFF'S STATUTORY RIGHTS UNDER ERISA § 104(b)(4).

Lincoln states that it does not object to entry of the Court's standard Appendix H-1 confidentiality order. ECF No. 19 at 2, 5. Plaintiff does not oppose a standard confidentiality order governing documents exchanged during discovery. But that concession raises a threshold issue Lincoln has not addressed.

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), entitles plan participants to receive plan documents upon written request as a matter of statutory right — independent of any litigation, independent of any discovery process, and independent of any adverse benefit determination. That obligation is fiduciary, not litigious. It exists because Congress determined that participants are entitled to the instruments governing their benefits without having to sue to obtain them. The law assumes participants should not have to file a federal lawsuit to receive documents they are entitled to by statute.

A discovery confidentiality order governs documents exchanged between parties through the formal discovery process. It does not — and cannot — govern documents that Lincoln is independently obligated to produce under § 104(b)(4) before discovery begins, outside of the discovery process, in Lincoln's capacity as plan administrator. Plaintiff has a statutory right to those documents that predates this litigation, predates Lincoln's appearance, and predates any discovery framework this Court may establish.

Subjecting § 104(b)(4) documents to H-1 confidentiality restrictions would effectively convert a statutory right into a discovery obligation — requiring Plaintiff to treat documents he is

entitled to receive as a plan participant as if they were litigation productions subject to use restrictions. That result is inconsistent with the purpose of § 104(b)(4) and would reward Lincoln for the months of refusals that gave rise to the First Claim in this action.

The broader implications of Lincoln's posture warrant this Court's attention. Lincoln produced nothing in response to Plaintiff's repeated written requests under § 104(b)(4) over a period of months. Lincoln produced the claims file only after this lawsuit was filed, only after Lincoln's litigation counsel appeared, and only through litigation counsel — not through the fiduciary channel the statute requires. If seeking H-1 confidentiality protection over that production is Lincoln's standard litigation posture, the practical effect is a systematic conversion of statutory document rights into litigation rights. A claimant who cannot obtain documents under § 104(b)(4) without filing suit, and who then finds those documents subject to a court confidentiality order once suit is filed, has been effectively stripped of a right Congress made freely available without judicial process.

This mechanism is particularly significant with respect to the internal guidelines, criteria, and standards Lincoln uses to evaluate disability claims — the documents at the center of Plaintiff's completeness inquiry and the subject of item 3 that Lincoln's counsel could not confirm was included in the production. Congress determined that the instruments pursuant to which ERISA plans are established and maintained must be freely available to participants upon request. 29 U.S.C. § 1024(b)(4). Those documents are not litigation work product. They are not proprietary trade secrets entitled to judicial protection from the very participants whose benefits they govern. A plan administrator that refuses to produce its internal guidelines under § 104(b)(4), forces the participant to file suit to obtain them, and then seeks to place them under a court confidentiality order has used the judicial process as a shield to accomplish through

litigation what it could not accomplish through statute — keeping from its own beneficiaries the standards by which their claims are evaluated.

Plaintiff accepts H-1 as a floor governing discovery productions. Plaintiff does not consent to the application of any confidentiality order to documents Lincoln is obligated to produce under § 104(b)(4) in its fiduciary capacity as plan administrator. Those documents belong to Plaintiff as a matter of federal statutory right. No confidentiality order can restrict what Plaintiff does with documents he was entitled to receive before this case was filed.

## VIII.  LINCOLN'S POSITION, APPLIED CONSISTENTLY, WOULD MAKE ACTIVE ERISA PLAN BENEFITS FUNCTIONALLY INACCESSIBLE.

Lincoln's response argues that directing Plaintiff's communications through litigation counsel is normal and appropriate once a claimant files suit. ECF No. 19 at 4. The practical consequences of that position, applied to the facts of this case, reveal why it cannot be correct.

Plaintiff has cerebral palsy. He receives Botox injections in his legs to treat spasticity — an ongoing, medically necessary course of treatment administered under his CIGNA health insurance, which he receives as a benefit of his LTD participation in the USAA Health and Welfare Benefits Plan. Consider the following hypothetical, which differs from Plaintiff's circumstances only in that it involves a benefit denial rather than an approved claim: if CIGNA denied coverage for Plaintiff's Botox treatment, and Plaintiff exhausted his internal appeals and filed suit to enforce his right to that treatment, no one would suggest that CIGNA could then direct all of Plaintiff's ongoing communications about his health coverage — including prior authorizations for other medications, coordination of benefits with other providers, and submission of claims entirely unrelated to the Botox denial — through CIGNA's litigation

counsel for that suit. The coverage relationship is ongoing. The litigation concerns one adverse determination within it. The two functions are separate because they must be.

That is precisely the separation Plaintiff requests here, and precisely the separation Lincoln's response refuses to acknowledge. Plaintiff's LTD claim is approved and in active payment status. Lincoln is not merely a former administrator with a historical relationship to Plaintiff — it is Plaintiff's current plan administrator, conducting ongoing quarterly medical reviews, communicating with Plaintiff's treating providers, processing requests related to Plaintiff's active benefit status, and making real-time eligibility determinations. The lawsuit concerns specific acts and omissions within that ongoing administrative relationship. It does not convert the entire administrative relationship into litigation.

Lincoln's April 10 redirect — attaching notice of counsel's appearance to a claims administration email and directing clinical correspondence through the litigation function — is the practical expression of the position Lincoln defends in ECF No. 19. Corporan's 2:57 P.M. email the same day, stating she would "still follow up for medical information directly," reflects the operational incoherence that results when a plan administrator attempts to collapse its fiduciary function into its litigation function while an active claim is in payment status.

If this posture were adopted consistently across ERISA plan administrators, the consequences would extend far beyond this case. Any claimant who filed suit over a single adverse determination — a denied claim, a withheld document, a missed notice — would find the entirety of their ongoing benefit relationship routed through opposing litigation counsel. Prior authorizations, treatment approvals, benefit verifications, and administrative communications of every kind would become subject to the friction and formality of litigation. Benefits that Congress designed to be administered in the claimant's sole interest, by a fiduciary bound to that

standard, would instead be administered in the shadow of adversarial litigation by personnel whose primary obligation in that context is to their client's legal defense. The structural separation Plaintiff requests is not a novel remedy. It is the minimum necessary to prevent that result in this case.

## CONCLUSION

Lincoln responded to a motion Plaintiff did not file. It addressed none of the legal authorities Plaintiff cited. It made a representation of production completeness to this Court the day after acknowledging to Plaintiff that completeness on the most important category remained unresolved. It mischaracterized the narrow relief Plaintiff requested. It asserted — as a matter of fact — that no adverse benefit determination has occurred, a position that contradicts nearly nine years of binding federal regulation and the documented record of this case. And it offered a partial concession on a confidentiality order that, if applied without limitation, would convert Plaintiff's statutory document rights into discovery obligations and use the judicial process as a shield to accomplish what Lincoln could not accomplish through statute.

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the protective order requested in ECF No. 16, or in the alternative, enter the Appendix H-1 order as a partial measure governing discovery productions only — expressly excluding documents subject to Lincoln's independent production obligations under ERISA § 104(b)(4) — and schedule further briefing on the structural separation relief, which the contamination documented in ECF No. 17 makes increasingly urgent.

Respectfully submitted,

/s/ Charles T. Bruff

Charles T. Bruff

Plaintiff in Pro Se

4835 Medical Drive #29643

San Antonio, Texas 78229

318-452-8978

cbruff13@outlook.com

Dated: April 17, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above, a true and correct copy of the foregoing reply

was served upon counsel for Defendant Lincoln National Life Insurance Company through the

Court's CM/ECF electronic filing system, which will automatically generate electronic notice to

all counsel of record.

/s/ Charles T. Bruff

Charles T. Bruff