Charles Bruff

4835 Medical Dr. #29643

San Antonio, TX 78229

318-452-8978

Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

**CHARLES BRUFF,**

    Plaintiff,

v.

**USAA HEALTH AND WELFARE BENEFITS PLAN,**

**USAA EDUCATIONAL ASSISTANCE PLAN,**

**UNITED STATES AUTOMOBILE ASSOCIATION,**

**AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

    **Defendants.**

**Case No. 5:26-CV-01720**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION REQUIRING
DEFENDANT LINCOLN TO MAINTAIN THE STATUS QUO PENDING
RESOLUTION OF THIS ACTION**

**EXPEDITED RULING REQUESTED BEFORE MAY 4, 2026**

Plaintiff Charles Bruff, appearing pro se, respectfully moves this Court pursuant to Federal Rule
of Civil Procedure 65(a) and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for a preliminary
injunction requiring Defendant Lincoln National Life Insurance Company ("Lincoln") to maintain
the status quo — specifically, to continue paying Plaintiff's long-term disability ("LTD") benefits
at the current rate, without any reduction, suspension, or termination for any reason, without prior
leave of this Court — pending resolution of this action.

Plaintiff requests that the Court rule on this motion before May 4, 2026, the date by which Lincoln has demanded submission of medical records through a clinical pathway that Lincoln's own conduct on April 10, 2026, rendered unavailable.

## INTRODUCTION

This motion presents three independent and compounding grounds for preliminary relief, each of which alone would warrant maintaining the status quo, and which together demonstrate that Lincoln has systematically dismantled every mechanism through which Plaintiff could satisfy Lincoln's own demands.

First, on April 10, 2026, Lincoln's claims administrator redirected all clinical correspondence to litigation counsel, eliminating the only lawful pathway through which Plaintiff could submit medical records — while maintaining a May 4, 2026 deadline for those same records. Lincoln cannot set a deadline and then destroy the mechanism for meeting it.

Second, Lincoln produced Plaintiff's claims file on April 12, 2026, as part of its initial disclosures in this litigation. On April 14, 2026, Lincoln's own litigation counsel confirmed in writing that the production is incomplete on a material category. A claims file that Lincoln's own counsel cannot certify as complete cannot be submitted to the Social Security Administration — an obligation Lincoln itself imposed on Plaintiff when it directed him to apply for SSDI. The SSA has since notified Plaintiff directly that it cannot process his application without forms that cannot be accurately completed without a certified complete claims file.

Third, the purpose of a preliminary injunction is to preserve the status quo pending resolution of the merits. The status quo is that Plaintiff currently receives LTD benefits at a defined monthly rate. Any reduction of that rate changes the status quo and causes the irreparable harm established

below. This Court need not resolve at this stage which of Lincoln's potential grounds for reduction is or is not ultimately lawful. That is the merits question. The injunction holds the line while the Court answers it.

All four elements required for a preliminary injunction are satisfied. Plaintiff respectfully requests emergency relief before May 4, 2026.

## FACTUAL BACKGROUND

### I.   PLAINTIFF'S LTD CLAIM AND CURRENT BENEFIT STATUS

1.  Plaintiff was approved for LTD benefits by Lincoln effective September 18, 2025. (Exhibit B.) He currently receives monthly LTD benefits of approximately $6,186.43, along with continued health, life, and dental coverage as an LTD participant under the USAA Health and Welfare Benefits Plan.

2.  Plaintiff is also considered disabled by the Social Security Administration — a determination made under the most demanding disability standard in federal law, requiring a finding that the claimant is unable to engage in substantial gainful activity. Lincoln directed Plaintiff to apply for SSDI and arranged for SSDI representation through Brown & Brown Absence Services Group. Lincoln's direction to pursue SSDI was a concession on the clinical question: Lincoln sent Plaintiff to the Social Security Administration because its own internal determination supported federal disability eligibility.

3.  Plaintiff has cerebral palsy, autism spectrum disorder, and post-traumatic stress disorder. These conditions are permanent, well-documented, and the basis for both Lincoln's LTD approval and Plaintiff's SSA disability determination.

### II.   THE MEDICAL REVIEW AND THE MAY 4, 2026 DEADLINE

4. Lincoln has been conducting ongoing medical reviews of Plaintiff's disability status at intervals Lincoln has refused to define or explain in writing. Lincoln's own claims specialist, Kristianne Corporan, acknowledged in writing that she receives review dates from the medical team but does not understand why those intervals are selected. (Exhibit M.) Plaintiff has repeatedly requested the written criteria governing review frequency and received no substantive response.

5. Lincoln set a deadline of May 4, 2026, for submission of medical records and documentation in connection with the current review. Failure to meet that deadline creates risk of adverse action — including suspension, reduction, or termination of Plaintiff's LTD benefits.

### III.   LINCOLN'S DISRUPTION OF THE CLINICAL PATHWAY — APRIL 10, 2026

6. On April 7, 2026, Lincoln's outside litigation counsel, Iwana Rademaekers, filed a notice of appearance in this matter. (ECF No. 13.)

7. On April 10, 2026, at 7:09 AM, Lincoln's claims administrator Corporan sent Plaintiff an email attaching Ms. Rademaekers' notice of appearance and redirecting all clinical correspondence to litigation counsel. That email — a federal litigation document transmitted through the claims administration channel — is on the docket as Exhibit CORPORAN1 in Plaintiff's Notice of Development filed April 10, 2026.

8. On April 10, 2026, at 2:57 PM, Corporan sent a second email stating she would "still be following up for medical information." These two emails, sent the same day by the same claims administrator, are directly contradictory. Together, they demonstrate that Lincoln has created a situation in which no lawful clinical pathway exists: the clinical channel has been redirected to litigation counsel, and litigation counsel cannot lawfully receive

protected health information outside of formal discovery mechanisms. No discovery order has been entered in this case.

9.  Plaintiff has never sought to prevent Lincoln from accessing its own records for purposes of claims administration. Plaintiff sought only to ensure that Lincoln's litigation personnel obtain records through the discovery process this Court oversees, as is standard in federal litigation. Lincoln's claims administration personnel and Lincoln's litigation counsel are two distinct functions, and federal regulation requires that they remain independent of each other. Specifically, 29 C.F.R. § 2560.503-1(b)(7) provides that "[i]n the case of a plan providing disability benefits, the plan must ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. Accordingly, decisions regarding hiring, compensation, termination, promotion, or other similar matters with respect to any individual (such as a claims adjudicator or medical or vocational expert) must not be made based upon the likelihood that the individual will support the denial of benefits." The Department of Labor's preamble to the 2016 Final Rule that enacted this provision makes clear that the independence requirement exists precisely because of "the judicially recognized economic incentive for insurance companies to deny otherwise valid claims" and the recognized risk that "the insurer's conflict of interest" will "inappropriately influence a benefit determination." 81 FR 92316, 92319 (Dec. 19, 2016). A claims adjudicator who has received litigation documents through the clinical channel — and whose review process is known to litigation counsel who is simultaneously building a defense strategy in this Court — cannot be independent or impartial within the meaning of the regulation. That is not a novel legal theory. It is the exact conflict of interest the DOL

enacted § 2560.503-1(b)(7) to prevent. This is not a restriction Plaintiff is asking this Court to invent. It is an affirmative obligation federal law already imposes on Lincoln as a plan administrator. As of April 10, 2026, Lincoln is not meeting that obligation. The result is that no independent clinical function exists through which Plaintiff can submit medical records, and no neutral decision maker exists to receive them.

## IV.   LINCOLN'S CLAIMS FILE PRODUCTION IS CONFIRMED INCOMPLETE BY LINCOLN'S OWN COUNSEL

10.  Lincoln produced Plaintiff's claims file on April 12, 2026, through its litigation counsel's office, as part of Lincoln's initial disclosures in this litigation.

11.  On April 13, 2026, Plaintiff wrote to Lincoln's counsel and asked her to confirm whether the production included five specific categories of documents required to constitute a complete claims file under 29 C.F.R. § 2560.503-1(m)(8): (1) all medical reviews conducted on Plaintiff's claim, including reviews completed but not used; (2) all communications about Plaintiff's claim generated by Lincoln or its vendors; (3) any guidance, criteria, or standards Lincoln uses when evaluating claims involving Plaintiff's diagnoses of Autism Spectrum Disorder, Cerebral Palsy, or Post-Traumatic Stress Disorder, regardless of whether applied to this specific claim; (4) any recordings or written notes from communications between Lincoln staff or vendors and Plaintiff or his treating providers; and (5) any vocational materials generated in connection with Plaintiff's claim, even if not used.

12.  On April 14, 2026, Lincoln's litigation counsel responded: "Everything is included, but I'll have to confirm on item 3. I'll get back to you soon." (Exhibit DISCLOSURE-R.) As of the filing of this motion, no follow-up confirmation has been received. Lincoln's counsel

represented to this Court in her initial disclosures that the production was complete. Her contemporaneous written statement to Plaintiff that she could not confirm completeness on a material category is inconsistent with that representation. Plaintiff cannot responsibly analyze, rely upon, or submit to a federal agency a claims file that the producing attorney herself cannot certify as complete.

13. Item 3 — the internal guidance, criteria, and standards Lincoln uses to evaluate claims involving Plaintiff's specific diagnoses — is a document category required by regulation under 29 C.F.R. § 2560.503-1(m)(8)(iv), which defines "relevant" documents to include any statement of policy or guidance concerning the claimant's benefit without regard to whether it was applied to the specific claim. It is also the category Lincoln has refused to produce for more than eight months across more than thirty written requests. Plaintiff is not withholding analysis of the claims file as a litigation tactic. Plaintiff is waiting because he was told by opposing counsel that the file may not be complete — and submitting an incomplete file to the SSA carries documented personal risk of retroactive denial that Plaintiff has already experienced once.

## V.  THE INCOMPLETE CLAIMS FILE CANNOT BE SUBMITTED TO THE SOCIAL SECURITY ADMINISTRATION — SSA HAS CONFIRMED IT CANNOT PROCESS PLAINTIFF'S APPLICATION

14.  Lincoln directed Plaintiff to apply for SSDI benefits, arranged for SSDI representation through Brown & Brown, and acknowledged that the SSDI process required complete medical and administrative records.

15.  Under 20 C.F.R. § 404.1512, a claimant must inform SSA about or submit all evidence known to the claimant that relates to whether the claimant is disabled. The SSA has advised

Plaintiff directly that failing to provide all relevant information is a violation of federal law.

16.   Following Lincoln's production of the claims file, the SSA sent Plaintiff a written communication stating that it "CANNOT PROCESS" Plaintiff's application without a completed SSA-3368 disability report form. (Exhibit SSATXT.) That form requires complete and accurate disclosure of all medical sources, treatments, and reviews — precisely the information contained in Lincoln's claims file that Lincoln's own counsel has confirmed is of unconfirmed completeness.

17.   Plaintiff previously experienced a retroactive SSDI denial. That history is documented and known to Lincoln. Submitting an incomplete or unverified record to SSA exposes Plaintiff to a second retroactive denial or recoupment through no fault of his own. Under 20 C.F.R. § 404.988, SSA retains authority to reopen and revise disability determinations based on new evidence. An award made on a record Lincoln corrupted is permanently vulnerable.

18.   Lincoln simultaneously demands SSDI compliance, controls the records needed for that compliance, has produced a claims file its own counsel cannot certify as complete, and maintains a May 4, 2026 benefit review deadline that creates adverse action risk. Each of these conditions was created by Lincoln. Taken together, they constitute a complete foreclosure of Plaintiff's ability to comply with any of Lincoln's demands through any lawful means.

## LEGAL STANDARD

A preliminary injunction is appropriate where the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm absent the injunction; (3) that the balance of hardships tips in the movant's favor; and (4) that the injunction

will not disserve the public interest. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 590 (5th Cir. 2014).

ERISA § 502(a)(3) authorizes a participant to obtain "appropriate equitable relief" to redress violations of ERISA or the terms of the plan. *Cigna Corp. v. Amara*, 563 U.S. 421 (2011). Injunctive relief maintaining the status quo pending resolution of an ERISA dispute is appropriate equitable relief under this provision. *See also Deckert v. Independence Shares Corp.*, 311 U.S. 282, 288–89 (1940) (equity will not assist a party in enforcing a scheme that is itself unlawful).

## ARGUMENT

### I.  PLAINTIFF IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS.

#### A.  Lincoln's April 10 Conduct Violates ERISA § 510.

ERISA § 510, 29 U.S.C. § 1140, prohibits any person from interfering with the attainment of any right to which a participant may become entitled. Plaintiff's continued LTD benefits depend on completing Lincoln's medical review process. Lincoln's redirection of all clinical correspondence to litigation counsel on April 10, 2026, eliminated the only mechanism through which Plaintiff could lawfully submit medical records for that review. Litigation counsel cannot lawfully receive protected health information outside of formal discovery mechanisms, and no discovery order has been entered. If Lincoln takes adverse action based on Plaintiff's inability to submit records through a pathway Lincoln eliminated, that adverse action is the direct consequence of Lincoln's own interference — a textbook § 510 violation.

#### B.  Lincoln's Production of an Admittedly Incomplete Claims File While Demanding SSDI Compliance Is Independent Fiduciary Breach.

Lincoln is the party that directed Plaintiff to apply for SSDI. Lincoln is the party that controls the claims file. Lincoln is the party that produced that file through litigation counsel. And Lincoln's own litigation counsel, in a written communication dated April 14, 2026, confirmed that she cannot

verify the completeness of the production on a material category — the same category Lincoln has withheld for more than eight months. Under 29 C.F.R. § 2560.503-1(m)(8)(iv), documents constituting a statement of policy or guidance with respect to the plan concerning the claimant's benefit are part of the claims file by regulation, without regard to whether they were applied to the specific claim. A fiduciary that directs a participant to undertake a federal benefits application while simultaneously controlling and withholding the documents required for that application violates the duty of loyalty under ERISA § 404(a)(1). That violation is confirmed by Lincoln's own counsel's April 14, 2026 email.

### C.   Lincoln Is Estopped from Using the May 4 Deadline Against Plaintiff.

A party cannot enforce a deadline against a claimant whose inability to meet that deadline flows entirely from that party's own conduct. Lincoln set the May 4, 2026 deadline. Lincoln then disrupted the clinical submission pathway on April 10, 2026. Lincoln then produced a claims file its own counsel cannot certify as complete, making full SSDI compliance impossible through no fault of Plaintiff's. Lincoln cannot use the consequences of its own conduct as grounds for adverse benefit action. See Deckert, 311 U.S. at 288–89.

### D.   The Status Quo Must Be Preserved Pending Resolution of the Merits.

The purpose of a preliminary injunction is to preserve the status quo while the Court resolves the underlying dispute. The status quo here is defined and simple: Plaintiff currently receives LTD benefits at a fixed monthly rate. Any reduction of that rate changes the status quo and causes the irreparable harm described below. This Court need not determine at this stage which of Lincoln's potential grounds for reduction is or is not ultimately lawful. That is precisely the merits question this litigation will resolve. The injunction holds the line while the Court answers it, and requires Lincoln to seek leave of court before taking any action that would alter Plaintiff's current benefit status.

## II.    PLAINTIFF FACES SUBSTANTIAL IRREPARABLE HARM ABSENT AN INJUNCTION.

The harm Plaintiff faces is imminent, date-certain, and multi-layered. The May 4, 2026 deadline is set by Lincoln itself. Loss of LTD benefits is not a harm remediable through money damages alone. Plaintiff's LTD benefit is the gateway to continued health, life, and dental coverage. Plaintiff has cerebral palsy, autism spectrum disorder, and post-traumatic stress disorder. Loss of health coverage for a claimant with these permanent conditions creates medical risk that no retroactive damages award can undo.

The SSDI harm is separately irreparable. The SSA has notified Plaintiff that it cannot process his application without forms that require a complete and verified claims file — a file Lincoln's own counsel cannot certify as complete. Plaintiff has a documented history of a prior retroactive SSDI denial. Submitting an incomplete record exposes Plaintiff to a second denial or recoupment that would not be remedied by winning this litigation.

These harms compound each other. Lincoln controls the records, set the deadlines, disrupted the submission pathway, and produced an incomplete file. Plaintiff has no mechanism to cure any of these conditions without this Court's intervention.

## III.    THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PLAINTIFF'S FAVOR.

The injunction asks Lincoln to do one thing: continue paying the benefits it is already contractually obligated to pay, and seek leave of court before altering that obligation for any reason, while this Court resolves the underlying dispute. Lincoln loses nothing except the ability to unilaterally reduce or terminate benefits based on a deadline it set, a pathway it destroyed, and a claims file its own counsel cannot confirm is complete. Plaintiff loses everything if benefits are reduced or terminated: income, health coverage, life insurance, and the integrity of a federal SSDI proceeding already in progress. The balance of hardships is not close.

## IV.    THE INJUNCTION SERVES THE PUBLIC INTEREST.

ERISA's enforcement structure depends on district courts being willing to prevent irreparable harm during the pendency of meritorious claims. The DOL's December 2023 Advisory Council Report documented systematic LTD insurer practices of exactly the kind at issue here. An injunction maintaining the status quo vindicates ERISA's core purpose and protects the integrity of a parallel federal proceeding — the SSA disability application Lincoln itself directed — from being compromised by Lincoln's control over incomplete records.

## REQUEST FOR EXPEDITED RULING

Plaintiff respectfully requests that this Court rule on this motion before May 4, 2026. The harm is not a future contingency — it is a date-certain deadline set by Lincoln itself, compounded by Lincoln's own counsel's written admission that the claims file produced in this litigation is of unconfirmed completeness on a material category, and further confirmed by the SSA's notice that it cannot process Plaintiff's disability application without forms that cannot be accurately completed without that file.

Plaintiff also respectfully informs the Court of the following practical reality. Plaintiff does not know where to send his medical records before May 4, 2026. The last communication Plaintiff received from his claims manager indicated that she would follow up with his treating providers directly on the medical side, and that Plaintiff should not contact her directly given the pending litigation. Plaintiff understands and is not respecting that boundary. But that boundary has created a gap that no one has filled. Plaintiff has medical records that Lincoln's review process requires. Plaintiff has no identified, neutral recipient to whom those records can be lawfully submitted. Litigation counsel cannot receive protected health information outside of formal discovery. The

claims manager has indicated direct contact is inappropriate given the litigation. No alternative pathway has been identified or created by Lincoln.

This gap is not accidental. Federal regulation imposes an affirmative obligation on Lincoln to maintain a neutral, independent clinical function. Under 29 C.F.R. § 2560.503-1(b)(7), promulgated by the Department of Labor pursuant to ERISA § 503, the individuals making benefit determinations must operate independently of the plan's financial and litigation interests. That regulation exists because Congress and the DOL recognized that a claims administrator with awareness of pending litigation strategy cannot make genuinely neutral disability determinations — the same principle courts apply routinely in the health insurance context, where a clinical reviewer making benefit decisions with full knowledge of pending litigation would be considered per se unreasonable. Lincoln is required by federal law to maintain a neutral, independent clinical function through which plan participants can submit required medical documentation. As of April 10, 2026, it has not done so. The result is that there is no neutral decision maker to receive Plaintiff's medical records, no lawful clinical pathway through which to submit them, and no guidance from Lincoln about how to resolve that gap before May 4, 2026.

This is not a refusal to comply. This is a person with autism spectrum disorder — for whom ambiguity about expected actions is not merely uncomfortable but functionally disabling — who genuinely does not know what to do, has no one to ask, and is facing a deadline that could cost him his income and his health insurance. Plaintiff has contacted this Court's access coordinator to request Section 504 accommodations related to his disability, specifically the difficulty of inferring procedural and practical expectations without explicit guidance. The preliminary injunction Plaintiff seeks would preserve the status quo while this impossible situation is resolved — not

because Plaintiff is unwilling to comply with Lincoln's review process, but because Lincoln has

not provided any lawful, neutral mechanism through which compliance is possible.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a preliminary injunction:

(1)  Ordering Defendant Lincoln National Life Insurance Company to maintain the status quo by continuing to pay Plaintiff's long-term disability benefits at the current monthly rate pending resolution of this action;

(2)  Prohibiting Lincoln from reducing, suspending, or terminating Plaintiff's LTD benefits for any reason, by any mechanism, without prior leave of this Court; and

(3)  Granting such other and further equitable relief as the Court deems just and proper under ERISA § 502(a)(3).

Respectfully submitted,

/s/ Charles Bruff

Charles Bruff

4835 Medical Dr. #29643

San Antonio, TX 78229

318-452-8978

Plaintiff in Pro Se

Dated: **April 20, 2026**

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, a true and correct copy of the foregoing motion

was served upon counsel for Defendant Lincoln National Life Insurance Company through the

Court's CM/ECF electronic filing system, which will automatically generate electronic notice to

all counsel of record.

**/s/ Charles T Bruff**

Charles T. Bruff

Plaintiff in Pro Se

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i) of the Western District of Texas, Plaintiff certifies that he conferred with counsel for Defendant Lincoln National Life Insurance Company regarding this motion on April 20, 2026. Counsel for Lincoln responded: "Lincoln will oppose this motion, as its continued administration of your claim is subject to the terms of the relevant policy." Accordingly, this motion is presented to the Court as opposed.

**/s/ Charles Bruff**

**Charles Bruff**

4835 Medical Dr. #29643

San Antonio, TX 78229

 318-452-8978

Plaintiff in Pro Se