**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

CHARLES T. BRUFF,

Plaintiff,

v.

USAA HEALTH AND WELFARE BENEFITS PLAN,

USAA EDUCATIONAL ASSISTANCE PLAN,

UNITED STATES AUTOMOBILE ASSOCIATION, AND

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

Defendants.

Case No. 5:26-CV-01720-XR

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION PENDING APPEAL**

**PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 8(a)(1)**

**AND FEDERAL RULE OF CIVIL PROCEDURE 62(d)**

**EXPEDITED RULING REQUESTED BEFORE MAY 4, 2026**

**INTRODUCTION**

Plaintiff Charles T. Bruff respectfully moves this Court, pursuant to Federal Rule of

Appellate Procedure 8(a)(1) and Federal Rule of Civil Procedure 62(d), for an injunction pending

1

appeal of this Court's April 22, 2026 text order denying Plaintiff's Motion for Preliminary Injunction (ECF No. 25). Plaintiff filed a Notice of Appeal on April 23, 2026 (ECF No. 26), which expressly identifies this Court's Rule 52(a)(2) violation and its failure to address Plaintiff's Section 504 accommodation arguments as independent grounds for appeal. Rule 8(a)(1) requires Plaintiff to seek relief from the district court in the first instance before seeking relief from the Court of Appeals.

The relief requested is an order requiring Defendant Lincoln National Life Insurance Company ("Lincoln") to maintain the status quo—specifically, to continue paying Plaintiff's long-term disability ("LTD") benefits at the current rate without reduction, suspension, or termination for any reason without prior leave of this Court—pending resolution of Plaintiff's appeal.

The harm is date-certain and imminent. Lincoln's medical records submission deadline is May 4, 2026. That deadline was set by Lincoln. The clinical pathway for meeting it has been structurally compromised by Lincoln's conduct beginning April 10, 2026, as documented in Exhibits CONFLICT1 (ECF No. 17) and CONFLICT2, filed herewith. The claims file required to complete a parallel federal SSDI submission was certified as incomplete by Lincoln's own counsel on April 14, 2026. Plaintiff respectfully requests that this Court rule on this motion before May 4, 2026.

## PROCEDURAL BACKGROUND

This Court has resolved every substantive motion in this case by text order, without issuing any written order containing findings of fact or conclusions of law. The pattern is not limited to the April 22, 2026 preliminary injunction denial. It is consistent across the entire docket:

ECF No. 2, Motion to Appoint Counsel (filed March 16, 2026): Denied by text order April 13, 2026. Lincoln had appeared on April 7, 2026. Lincoln filed no response. The court denied the

motion without Lincoln ever being required to take a position on the record. The order applies "necessity" as the governing standard—a standard not invoked by any of the three independent legal frameworks Plaintiff presented: (1) 28 U.S.C. § 1915 applied equitably, under which the standard is practical inability to obtain representation; (2) Section 504 of the Rehabilitation Act, under which the standard is meaningful access as defined by Tennessee v. Lane, 541 U.S. 509 (2004); and (3) ERISA § 502(g) fee-shifting, under which the standard is economic viability for counsel under the five-factor Ulmer framework. The court dismissed a statutory argument under a federal civil rights statute—Section 504—in a single sentence that did not acknowledge the statute.

ECF No. 11, First Protective Order (filed March 23, 2026): Denied April 2, 2026, as premature before defendants appeared. That denial was procedurally defensible on its own terms. However, as set out in Section I.E below, the period between this denial and Lincoln's appearance on April 7, 2026 was precisely the period during which Lincoln was actively destroying the independence required under ERISA—conduct that the protective order was designed to prevent.

ECF No. 16, Third Protective Order (filed April 9, 2026): Lincoln filed its opposition on April 15, 2026 (ECF No. 19). The court denied the motion by text order on April 16, 2026—one day after Lincoln responded and thirteen days before Plaintiff's reply deadline expired under Local Rule CV-7(d). Of the fourteen days Plaintiff had to reply, only one had elapsed when the court ruled. The court received Lincoln's arguments and ruled on them before Plaintiff had any opportunity to contest them. The legal standard the court applied—drawn from Gunn v. University Committee to End the War in Viet Nam, 399 U.S. 383 (1970)—has no application to a Rule 26(c) protective order. See Section I.C below.

ECF No. 25, Motion for Preliminary Injunction (filed April 20, 2026): Denied by text order April 22, 2026—within 48 hours of filing. Lincoln filed no response. Plaintiff filed no reply. The

3

court denied a fifteen-page motion invoking three independent statutory and regulatory frameworks—ERISA § 510 (29 U.S.C. § 1140), ERISA § 404(a)(1) (29 U.S.C. § 1104(a)(1)), and equitable estoppel under Deckert v. Independence Shares Corp., 311 U.S. 282 (1940)—with documentary evidence already on the docket, before Lincoln was required to respond and before any briefing cycle began. Under Local Rule CV-7(d), Lincoln's response was not due until May 4, 2026—the same date as Lincoln's medical records deadline.

Across every substantive motion in this case, this Court has not once permitted a complete briefing cycle before ruling against Plaintiff. On two motions—ECF Nos. 2 and 25—the court ruled without Lincoln ever filing a response. On ECF No. 16, the court ruled after Lincoln responded but before Plaintiff could reply, with thirteen of Plaintiff's fourteen reply days still remaining. Lincoln has received favorable rulings on every contested motion without ever being required to fully defend its position on the record.

This pattern is relevant to the motion pending appeal for two independent reasons. First, it establishes that the Rule 52(a)(2) violation in the April 22 order was not an isolated drafting omission—it is consistent with this Court's uniform practice of ruling without a complete record and without findings. Second, it establishes that there is no effective district court remedy available to Plaintiff. The injunction pending appeal is therefore not merely appropriate—it is the only mechanism through which Plaintiff can obtain any relief before May 4, 2026.

## LEGAL STANDARD

An injunction pending appeal requires the movant to demonstrate: (1) a strong likelihood of success on the merits of the appeal; (2) a substantial threat of irreparable harm absent the injunction; (3) that the balance of hardships tips in the movant's favor; and (4) that the injunction

will not disserve the public interest. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Wildmon v. Berwick Universal Pictures, 983 F.2d 21, 23 (5th Cir. 1992).

In this posture, factor one is assessed on two independent axes: (a) likelihood of success on the underlying merits of Plaintiff's ERISA claims, and (b) likelihood of success on appeal of this Court's April 22, 2026 order. Both axes independently satisfy the standard.

ARGUMENT

## I.  PLAINTIFF HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL.

### A.  The April 22 Order Violates Rule 52(a)(2) on Its Face.

Federal Rule of Civil Procedure 52(a)(2) provides that "[i]n granting or refusing an interlocutory injunction, the court must state the findings of fact and conclusions of law that support its action." This requirement is mandatory. It exists so that appellate courts can review the district court's exercise of discretion and so that the parties understand the basis for the ruling.

The April 22, 2026 text order contains no findings of fact and no conclusions of law. It characterizes Plaintiff's motion as "object[ing] to the fact that Lincoln directs Plaintiff to communicate through Lincoln's counsel" and "complain[ing] that Lincoln has not yet provided a complete claim file as part of its initial discovery disclosures." It states that "[i]t is unclear how these allegations bear on the merits of Plaintiff's claims." It cites one case—Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987)—for the proposition that a movant must demonstrate a substantial likelihood of success on the merits. It concludes that Plaintiff "failed to demonstrate" that likelihood. That is the entirety of the order.

Plaintiff's motion was fifteen pages. It presented three independent grounds for relief: (1) Violation of ERISA § 510, 29 U.S.C. § 1140, based on Lincoln's elimination of the clinical submission pathway on April 10, 2026, while maintaining a May 4, 2026 deadline for records that

5

could only be submitted through that pathway; (2) Breach of fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), based on Lincoln's direction of Plaintiff to apply for SSDI while controlling and withholding the claims file Lincoln's own counsel confirmed was incomplete on a material category; and (3) Equitable estoppel under Deckert v. Independence Shares Corp., 311 U.S. 282, 288-89 (1940), based on Lincoln's creation of the conditions it seeks to enforce against Plaintiff.

Each ground was supported by specific factual allegations tied to documentary evidence on the docket—including the April 10, 2026 Corporan emails (Exhibit CONFLICT1, ECF No. 17), the April 14, 2026 Rademaekers email admitting incompleteness of the claims file production (Exhibit DISCLOSURE, ECF No. 18), and the SSA notification that it cannot process Plaintiff's application without a complete and verified claims file (Exhibit SSATXT, ECF No. 25-2). The motion briefed all four Winter factors.

The April 22 order addressed none of these grounds. It did not cite ERISA § 510. It did not cite ERISA § 404(a)(1). It did not cite Deckert. It did not cite 29 C.F.R. § 2560.503-1(b)(7). It did not address irreparable harm, balance of hardships, or public interest. It addressed only one of four required Winter factors and addressed that factor by characterizing Plaintiff's motion as raising concerns it does not actually raise.

The Fifth Circuit has held that failure to make findings required by Rule 52(a) in the preliminary injunction context is reversible error. Canal Authority of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974) ("It is the duty of the district court in every case to make specific findings of fact and conclusions of law in support of the grant or denial of a preliminary

6

injunction."). The absence of any findings here is a per se violation of Rule 52(a)(2) that the Fifth Circuit reviews de novo.

**B.    The April 22 Order Was Issued Without a Complete Briefing Record and Therefore Could Not Have Produced the Findings Rule 52(a)(2) Requires.**

The court denied ECF No. 25 within 48 hours of filing. Lincoln had not responded. Plaintiff had not replied. Under Local Rule CV-7(d), Lincoln's response to ECF No. 25 was not due until May 4, 2026—the same date as Lincoln's own medical records deadline.

Rule 52(a)(2) requires findings of fact. Findings of fact require a factual record. The factual record on a preliminary injunction motion is built from the motion, the response, and the reply. The court foreclosed that record before it could exist. The absence of findings in the April 22 order is therefore not a drafting omission. It is the structural consequence of a ruling made before the record those findings would require had been assembled.

The Fifth Circuit has recognized that while district judges have broad discretion in managing their dockets, that discretion has limits. Sims v. ANR Freight System, Inc., 63 F.3d 1315, 1318 (5th Cir. 1995) ("[I]f the goal of expediency is given higher priority than the pursuit of justice, then the bench and the bar both will have failed in their duty to uphold the Constitution."). Ruling on a fifteen-page preliminary injunction motion before the opposing party has responded subordinates the pursuit of justice to expediency in exactly the manner Sims condemns.

**C.    The April 22 Order Mischaracterizes the Motion.**

The order describes Plaintiff's motion as objecting to Lincoln directing him to communicate through counsel and complaining about an incomplete claims file as part of initial discovery disclosures. Neither characterization appears in Plaintiff's motion.

7

Plaintiff's motion argued that Lincoln's April 10, 2026 redirection of clinical correspondence to litigation counsel eliminated the only lawful pathway for submitting medical records required by a Lincoln-imposed deadline—and that this constitutes interference with Plaintiff's right to continued benefits in violation of ERISA § 510, grounded in 29 C.F.R. § 2560.503-1(b)(7)'s independence requirement. That is not a complaint about communication preferences. It is a regulatory violation claim.

Plaintiff's motion argued that Lincoln's production of an admittedly incomplete claims file while directing Plaintiff to apply for SSDI constitutes a breach of fiduciary duty under ERISA § 404(a)(1), confirmed by Lincoln's own counsel's April 14, 2026 written admission. That is not a complaint about discovery disclosures. It is a fiduciary breach claim grounded in Lincoln's own counsel's written concession.

A district court order that mischaracterizes the arguments before it has not exercised the discretion Rule 52(a)(2) requires it to explain. The Fifth Circuit reviews the district court's characterization of the record for clear error and its application of the Winter standard de novo.

**D.  The April 16 Protective Order Denial Independently Demonstrates the Pattern of Structural Non-Engagement, and Its Legal Error Is Independently Reversible.**

Although the protective order denial is not the primary subject of this motion, it demonstrates that the April 22 order was not an isolated event.

**1.  The Timing Error.**

The court denied ECF No. 16 on April 16—one day after Lincoln filed its opposition on April 15 and one day before Plaintiff filed his reply on April 17. Plaintiff did not realize his motion had been denied when he filed his reply in part because denial was not expected. Under Local Rule CV-7(d), Plaintiff's reply was not due until April 29, 2026. Of the fourteen days Plaintiff had to

reply to Lincoln's opposition, only one had elapsed when the court ruled. Whatever Lincoln argued in ECF No. 19 went into the court's determination without contest.

### 2.  The Legal Error: Wrong Standard.

The text order cites Gunn v. University Committee to End the War in Viet Nam, 399 U.S. 383, 389 (1970), for the proposition that "[a]n injunctive order is an extraordinary writ, enforceable by the power of contempt." This is an error of law in two independent respects.

First, Gunn is a jurisdictional case. The Supreme Court dismissed a direct appeal for want of jurisdiction under 28 U.S.C. § 1253 because the district court had issued neither an injunction nor an order granting or denying one. The passage the court quoted is explanatory dicta about why Rule 65(d) requires injunctions to be specific. Gunn has never been applied as a standard governing whether Rule 26(c) protective orders may issue.

Second, a Rule 26(c) protective order is not an injunction. It requires only good cause. Fed. R. Civ. P. 26(c)(1). The Advisory Committee Notes confirm that Rule 26(c) "confers broad powers on the courts to regulate or prevent discovery" and that "these powers have always been freely exercised." Fed. R. Civ. P. 26(c) advisory committee's note (1970). The court applied the wrong legal standard.

### 3.  Rule 26(c) Is Not Limited to Discovery That Has Already Commenced.

Rule 26(c) contains no limitation to commenced discovery. The Fifth Circuit has confirmed that district courts have inherent power to regulate discovery timing and information access even before formal discovery begins. Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987). The power to protect against information flows that threaten the integrity of the proceeding exists regardless of whether formal discovery has commenced.

**4.  The Conference Requirement Does Not Apply When the Opposing Party Has Just Appeared.**

Plaintiff filed ECF No. 14 on the morning of April 8, 2026—less than 24 hours after Lincoln's appearance on April 7, 2026 (ECF No. 13). Requiring a conference with opposing counsel who appeared the previous afternoon, before filing a motion addressing documented ongoing conduct, imposes an impossibility. Plaintiff's ECF No. 16, filed April 9, included proof of conference (Exhibit CONFER1).

**E.  The Contamination Timeline Demonstrates That the Protective Order Was Necessary Before Any Conference Was Practicable.**

March 23, 2026: Plaintiff files ECF No. 11 seeking separation of Lincoln's claims administration and litigation functions. Denied April 2 as premature.

- April 7, 2026: Lincoln's counsel Rademaekers appears (ECF No. 13).

- April 8, 2026: Plaintiff files ECF No. 14 less than 24 hours after Lincoln's appearance. Denied same day on conference grounds.

- April 9, 2026: Plaintiff files ECF No. 16 with conference certification (Exhibit CONFER1).

- April 10, 2026: Lincoln's claims administrator Kristianne Corporan transmits Rademaekers' notice of appearance through the claims administration channel and redirects all clinical correspondence to litigation counsel (Exhibit CONFLICT1, ECF

No. 17). This is the event the protective order was designed to prevent. It occurred the day after ECF No. 16 was filed and six days before the court denied it.

- April 15, 2026: Lincoln files opposition to ECF No. 16 (ECF No. 19).

- April 16, 2026: Court denies ECF No. 16 by text order, citing Gunn and applying the wrong standard, thirteen days before Plaintiff's reply deadline.

- April 17, 2026: Plaintiff files reply ECF No. 23—one day after the denial, thirteen days before the deadline—which the court will never read.

- April 22, 2026: Plaintiff explicitly requests a neutral clinical contact in writing. Lincoln's litigation counsel Rademaekers receives the clinical thread, forwards it from her litigation counsel email address, and responds to Plaintiff's clinical submission questions. No neutral contact is identified. (Exhibit CONFLICT2, filed herewith.)

The court denied a protective order designed to prevent contamination. Lincoln contaminated the claims process the day after the motion was filed and six days before the court ruled.

## II. PLAINTIFF FACES SUBSTANTIAL IRREPARABLE HARM ABSENT AN INJUNCTION PENDING APPEAL.

The irreparable harm Plaintiff faces is not the termination of benefits that has already occurred as is the standard posture in most LTD ERISA cases. Plaintiff currently receives LTD benefits and Lincoln has not reversed that determination. The irreparable harm is structural and prospective: it is the contamination of the administrative record—and the consequent corruption of any future benefit determination—by claims administration personnel who now possess litigation awareness in direct violation of ERISA's independence requirements and the DOL's 2018 disability claims procedure regulations, 83 Fed. Reg. 47560 (Sept. 19, 2018), codified at 29 C.F.R. § 2560.503-1.

**A.  The Clinical Submission Channel Is Structurally Compromised and Lincoln Has Refused to Restore Its Independence.**

On April 10, 2026, Lincoln's claims administrator Kristianne Corporan transmitted a federal litigation document—the notice of appearance of Lincoln's outside litigation counsel—through the claims administration channel and redirected all clinical correspondence to that counsel (Exhibit CONFLICT1, ECF No. 17).

Lincoln nominally restored a clinical submission address on April 22, 2026, directing Plaintiff to continue sending medical information to Corporan. But that restoration does not satisfy 29 C.F.R. § 2560.503-1(b)(7)'s independence requirement. On the same day Lincoln directed Plaintiff to use that channel, Lincoln's litigation counsel Rademaekers received Corporan's clinical correspondence with Plaintiff, forwarded the entire thread from her litigation counsel email address, and responded directly to Plaintiff directing clinical submission procedures. (Exhibit CONFLICT2, filed herewith.)

The nominal existence of a clinical submission address does not satisfy the independence requirement when the documentary evidence establishes that address is functionally merged with Lincoln's litigation defense operation. Plaintiff therefore faces a choice Lincoln has no authority to impose: submit medical records through a channel with no independence guarantee, or decline to submit and face adverse action for non-compliance with Lincoln's own deadline.

Under 29 C.F.R. § 2560.503-1(b)(7), all disability benefit claims must be adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the benefit determination. Every medical review Lincoln conducts using personnel who possess litigation awareness produces a determination that is not the product of independent clinical judgment. That contaminated determination will be placed into the administrative record. Under ERISA's arbitrary and capricious review framework, the administrative record is the evidentiary universe from which this Court will evaluate any future adverse benefit determination. A record contaminated by litigation-aware review cannot be cleansed after the fact. The contamination is irreversible by its nature.

**B.   Lincoln Has No Colorable Basis for Medical Review at This Time, Which Confirms That the Review Serves Litigation Rather Than Clinical Purposes.**

Lincoln has not reversed its determination that Plaintiff is disabled. Lincoln directed Plaintiff to apply for Social Security Disability Insurance and arranged for SSDI representation through Brown & Brown Absence Services Group. Lincoln has taken no position in this litigation that Plaintiff does not meet the Own Occupation disability standard under the applicable policy.

Lincoln's clinical concession is reinforced by a prior federal disability adjudication already in Lincoln's possession. On February 27, 2026, the Social Security Administration issued Plaintiff a Benefit Verification Letter confirming that the SSA found Plaintiff disabled under its rules as of

October 12, 1993—his date of birth. (Exhibit SSDI1, filed herewith.) Plaintiff provided a benefit verification letter to Lincoln at the time of his STD approval and again at the time of his LTD approval. Lincoln approved both claims with knowledge of this prior federal adjudication.

The SSA disability standard—inability to engage in any substantial gainful activity, 42 U.S.C. § 423(d)(1)(A)—is more demanding than Lincoln's Own Occupation standard, which asks only whether Plaintiff can perform the material duties of a software engineer. The SSA resolved the more demanding question in Plaintiff's favor before this litigation began. Plaintiff received both Supplemental Security Income and Social Security Disability Insurance as a Disabled Adult Child on his father's earnings record under 42 U.S.C. § 402(d). Both programs use the same disability standard. Payments ceased when Plaintiff's employment income at USAA exceeded applicable thresholds. That cessation reflects a payment suspension based on earnings, not a reversal of the underlying disability determination. The federal finding that Plaintiff became disabled on October 12, 1993 remains in effect.

Lincoln cannot simultaneously maintain that Plaintiff meets the SSA's most demanding disability standard—the standard Lincoln invoked by directing the SSDI application and arranging federal benefits representation, and the standard confirmed by the prior federal adjudication in Lincoln's possession—and conduct a medical review premised on the possibility that Plaintiff no longer meets Lincoln's less demanding Own Occupation standard. Lincoln has identified no change in Plaintiff's condition, no new clinical evidence, and no regulatory basis for review that is consistent with a prior federal disability adjudication covering conditions present since birth, including cerebral palsy and autism spectrum disorder. Under these circumstances, the only cognizable purpose of a medical review conducted by personnel with litigation awareness, under a deadline Lincoln set while this litigation was pending, through a clinical channel Lincoln

14

simultaneously compromised, is the generation of administrative record evidence favorable to Lincoln's litigation position. That is not a fiduciary purpose. ERISA § 404(a)(1) prohibits a fiduciary from acting in its own interest at the expense of the plan participant.

### C.  The SSDI Harm Is Independently Irreparable.

Lincoln directed Plaintiff to apply for SSDI and controls the claims file that application requires. Lincoln's own litigation counsel confirmed in writing on April 14, 2026, that the claims file production is incomplete on a material category. The Social Security Administration has notified Plaintiff directly that it cannot process his application without forms that cannot be accurately completed without a certified complete claims file (Exhibit SSATXT, ECF No. 25-2).

Lincoln maintains, through its active direction of Plaintiff's SSDI application and its arrangement of federal benefits representation, that Plaintiff meets the SSA's disability standard. Having taken and acted upon that position—and having been in possession of the prior federal disability adjudication at the time it approved Plaintiff's LTD benefits—Lincoln cannot withhold the claims file that position requires without breaching its fiduciary duty to the plan participant whose federal benefits application Lincoln itself initiated.

Plaintiff has a documented history of a prior retroactive SSDI denial. Submitting an incomplete record exposes Plaintiff to a second retroactive denial or recoupment through no fault of his own. Under 20 C.F.R. § 404.988, the SSA retains authority to reopen and revise disability determinations based on new evidence. An SSDI award made on a record Lincoln corrupted is permanently vulnerable. Winning this litigation would not remedy a second retroactive SSDI denial caused by Lincoln's withholding of its own claims file.

## III.  THE BALANCE OF HARDSHIPS TIPS SHARPLY IN PLAINTIFF'S FAVOR.

15

The injunction pending appeal requires Lincoln to do one thing: continue paying the benefits it is already contractually obligated to pay, at the rate it has been paying since September 18, 2025, without taking unilateral adverse action based on a review conducted by litigation-aware personnel, under a deadline Lincoln set, through a clinical channel Lincoln compromised, using a claims file Lincoln's own counsel cannot certify as complete.

Lincoln faces no cognizable hardship. It is already paying these benefits. The injunction does not require Lincoln to take any affirmative action it is not already taking. It requires only that Lincoln not act on the product of a contaminated review process that violates the regulations Lincoln is obligated to follow as a disability plan administrator.

Plaintiff faces compounding and irreversible loss. The contaminated review process—if permitted to produce an adverse determination during the pendency of this appeal—will embed that determination in the administrative record before the Fifth Circuit has had the opportunity to review whether this Court correctly applied the Winter factors. Once embedded, that record cannot be cleansed. The harm is occurring now, with a date-certain inflection point of May 4, 2026.

The balance of hardships is not close.

## IV. THE INJUNCTION PENDING APPEAL SERVES THE PUBLIC INTEREST.

Two independent public interests apply.

First, ERISA's independence requirements exist to protect the integrity of disability benefit determinations for all plan participants, not just Plaintiff. The DOL promulgated 29 C.F.R. § 2560.503-1(b)(7) because Congress recognized that plan administrators with financial incentives to deny benefits cannot make independent clinical determinations without structural safeguards. Permitting Lincoln to conduct medical reviews using litigation-aware personnel—over Plaintiff's documented objection, during the pendency of an appeal, under a deadline Lincoln set while this

litigation was active—validates precisely the conduct the regulation was designed to prevent. That result disserves every disability claimant whose plan administrator is also a named litigation defendant.

Second, Rule 52(a)(2) exists to make district court rulings on interlocutory injunctions reviewable by courts of appeals. A rule that permits a plan administrator to take adverse action during the pendency of an appeal of a ruling that contains no findings of fact and no conclusions of law renders the mandatory requirement of Rule 52(a)(2) a nullity in the ERISA context. That result is inconsistent with ERISA's remedial purpose, with the Fifth Circuit's holding in Canal Authority that findings are mandatory and not aspirational, and with the basic principle that procedural protections must carry real consequences to carry any meaning.

## V. THIS COURT SHOULD RULE BEFORE MAY 4, 2026.

The harm identified in this motion is not contingent on future events. It is a date-certain deadline set by Lincoln itself, compounded by Lincoln's own compromise of the clinical submission channel beginning April 10, 2026, confirmed by Lincoln's own counsel's written admission on April 14, 2026 that the claims file is incomplete on a material category, and reinforced by a prior federal disability adjudication in Lincoln's possession that Lincoln has never addressed or explained in the context of its current review.

As of the date of this filing, Plaintiff does not know how to submit medical records through a channel that satisfies 29 C.F.R. § 2560.503-1(b)(7)'s independence requirement before May 4, 2026. The clinical channel routes to a function actively managed by Lincoln's litigation defense team, as documented in Exhibit CONFLICT2. No alternative pathway satisfying the independence requirement has been identified or created by Lincoln. This gap was created by Lincoln's own conduct. This Court is the only available mechanism for addressing that gap before May 4, 2026.

17

If this Court does not act before May 4, 2026, Plaintiff will seek relief from the Fifth Circuit pursuant to Federal Rule of Appellate Procedure 8(a)(2).

## VI. POST-FILING DEVELOPMENTS CONFIRMING ONGOING AND EXPANDING IRREPARABLE HARM.

The irreparable harm identified in this motion is not static. Since Plaintiff filed ECF No. 25 on April 20, 2026, two additional developments have occurred that confirm the contamination of the claims process is expanding rather than contracting, and that raise new and unresolved questions about the security of Plaintiff's protected health information.

On April 22, 2026, Lincoln's litigation counsel Rademaekers sent Plaintiff an email at 6:24 PM stating that she had "received an email from an attorney who advised me he would be appearing on behalf of USAA today." She further stated that she intended to serve the initial disclosures — including the same OneDrive links she had previously provided to Plaintiff — on that attorney within seven days unless Plaintiff responded. Those OneDrive links contain Plaintiff's 2021 Short-Term Disability claims file and his current Short-Term and Long-Term Disability claims file — a combined production of over 2,500 pages of unredacted protected health information including psychiatric treatment records, mental health evaluations, clinical notes, and disability documentation. Rademaekers did not identify the attorney by name, by firm, or by bar number. She did not forward the communication she referenced. She conditioned her willingness to withhold the file on Plaintiff's agreement to the Court's standard protective order. The complete email exchange is documented in Exhibit CONFLICT3, filed herewith.

Rademaekers' stated intention to serve those links directly confirms what she proposed to disclose: the same unredacted OneDrive production she had already provided to Plaintiff, transmitted without redaction to an attorney who had not appeared, before a Rule 26(f) conference

had occurred, and before any discovery plan or protective order was in place. The question that framing raises is not merely procedural. Under Local Rule CV-5.2 and Federal Rule of Civil Procedure 5.2, parties are required to protect sensitive personal information in court filings and disclosures. The Western District of Texas has adopted specific redaction requirements for medical and personal health information. Rademaekers' proposed transmission would have provided Plaintiff's complete unredacted medical file to a third party before the Rule 26(f) conference that governs the scope of discovery had occurred, in violation of the redaction and privacy protections this Court's local rules impose. No Rule 26(f) conference has been held. No discovery plan exists. The formal discovery window has not opened under Fed. R. Civ. P. 26(d)(1). She is conditioning her decision not to make that premature and potentially violative disclosure on Plaintiff's agreement to a protective order whose terms she has not provided and whose effect may be to restrict Plaintiff's access to documents he has a statutory right to receive.

As of the date of this filing, no USAA attorney has appeared on the docket. Rademaekers represented on April 22 that the appearance would occur that day. It did not occur that day. It has not occurred as of the filing of this motion. The attorney she referenced has not been identified in any communication to Plaintiff. Plaintiff responded to Rademaekers' email the same evening, raising specific objections, requesting that she identify the attorney and forward his communication, and asking that she refrain from serving the OneDrive links on any unappeared party. Rademaekers has not responded.

Plaintiff has autism, as documented in the accompanying Declaration (Section II). Plaintiff interprets legal obligations and factual representations in concrete and literal terms. Plaintiff does not have a framework for understanding what has occurred here that does not raise serious

19

concerns. Rademaekers represented that an attorney would appear on a specific date. That attorney did not appear. She has not responded to explain why. Rademaekers used that unverified and unconfirmed representation as the basis for a seven-day countdown to transmit Plaintiff's complete unredacted claims file — the same file Lincoln was independently obligated to produce under ERISA § 104(b)(4) before this lawsuit was filed, and that Lincoln's own counsel had certified as potentially incomplete on April 14, 2026 — to an unidentified person. The only condition under which Rademaekers offered to withhold the file was Plaintiff's agreement to a standard protective order. She did not provide a draft of the proposed protective order or any description of its terms. If she is referring to the Western District of Texas Standard Protective Order available on the Court's website, that order creates a broadly-defined category of "Confidential" documents that may retroactively attach litigation confidentiality restrictions to documents Plaintiff holds an independent statutory right to receive under ERISA § 104(b)(4) — a right that exists entirely outside of and predates this litigation. Plaintiff does not know how to interpret this sequence of events other than as an attempt to use his unredacted medical records as leverage to extract a concession on the protective order before the party whose appearance she cited as the basis for the disclosure has even appeared. Plaintiff acknowledges that there may be an innocent explanation for what occurred. Plaintiff cannot identify one.

This development raises two concrete and unresolved practical questions that this Court is the only available authority to address.


First: Rademaekers' email notified Plaintiff of a seven-day window triggered by the anticipated appearance of a USAA attorney. That attorney has not appeared. Plaintiff does not know whether the seven-day window continues to run, has been suspended by the non-appearance,

20

or has been extended. Plaintiff cannot obtain clarification because Rademaekers has not responded to Plaintiff's April 22 reply. Plaintiff is therefore operating under the uncertainty of a countdown clock whose trigger condition has not been satisfied and whose current status has not been communicated.

Second: Plaintiff has no mechanism outside of an order from this Court to prevent Lincoln's litigation counsel from serving Plaintiff's unredacted complete claims file on an unidentified attorney representing a party that has not yet appeared, before a Rule 26(f) conference, before a discovery plan exists, and before any protective order governs the handling of that information. The file was produced through litigation channels rather than Lincoln's clinical department. It has been certified as potentially incomplete by the counsel who proposes to disseminate it. Its transmission to a third party before these threshold procedural steps have occurred would compound the existing contamination of the administrative record with a new and independent privacy violation.

Plaintiff raises one additional point that bears directly on the Court's assessment of this sequence of events. Rademaekers' email stated that "parties are expected to serve such documents to all parties in the lawsuit" and cited Federal Rule of Civil Procedure 26(a)(1)(A) as authority. That citation does not support what she proposed to do. Rule 26(a)(1) requires initial disclosures to be served on "each other party." Rule 5(a)(1) requires service of papers on every party. Rule 5(b) governs service on an attorney of record. An attorney who has not filed a Notice of Appearance is not a party and is not an attorney of record. USAA has not appeared. The attorney Rademaekers referenced has not appeared. There is no Rule 26(a)(1) obligation to serve initial disclosures on counsel who communicated informally with opposing counsel but has not formally

appeared in the action. Rademaekers was not required by the Federal Rules to make this disclosure at this time, to this recipient, under these circumstances.

The practical consequence of that analysis is this: Rademaekers threatened to make a disclosure she was not required to make, to a person who had not appeared, before the discovery window had opened, in the absence of a protective order, and conditioned her willingness to refrain on Plaintiff's agreement to a protective order she did not describe and for which she provided no draft. The Western District of Texas Standard Protective Order, if that is the order she has in mind, creates a broadly-defined category of "Confidential" documents. Applied to the claims file, that designation may conflict directly with Plaintiff's independent statutory right to receive those same documents under ERISA § 104(b)(4) — a right that exists entirely outside of and predates this litigation and that no protective order entered in this case can extinguish. Plaintiff cannot identify a procedural basis for the disclosure she threatened. Plaintiff cannot identify a rule that required her to make it. What Plaintiff can identify is that the threat was conditioned on a concession, the concession concerned documents whose confidentiality status is itself a contested issue in this case, and the attorney whose imminent appearance she cited as the basis for the threatened disclosure has not appeared. Plaintiff does not know how to interpret that sequence as anything other than the use of his unredacted medical records as negotiating leverage. Plaintiff acknowledges that there may be an explanation rooted in professional judgment or litigation strategy that Plaintiff, as a pro se litigant with autism, is not positioned to evaluate. That is precisely why Plaintiff needs this Court to address it.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order:

22

(1)     Enjoining Defendant Lincoln National Life Insurance Company from reducing, suspending, or terminating Plaintiff's LTD benefits for any reason without prior leave of this Court, pending resolution of Plaintiff's appeal of this Court's April 22, 2026 order (ECF No. 26);

(2)     Enjoining Defendant Lincoln National Life Insurance Company from conducting any medical review of Plaintiff's disability status using claims administration personnel who have been exposed to information regarding this litigation, pending resolution of Plaintiff's appeal, on the ground that any such review violates 29 C.F.R. § 2560.503-1(b)(7) and produces administrative record evidence that is irreversibly tainted; and

(3)     Enjoining Defendant Lincoln National Life Insurance Company from taking any adverse action against Plaintiff based on his inability to submit medical records through a clinical submission channel satisfying the independence requirements of 29 C.F.R. § 2560.503-1(b)(7), or based on any failure of the SSDI application process attributable to the incompleteness of Lincoln's claims file production as confirmed by Lincoln's own counsel on April 14, 2026; and

(4)     Enjoining Defendant Lincoln National Life Insurance Company from transmitting, serving, or otherwise disclosing Plaintiff's unredacted medical records, claims file, or any documents produced in this action containing Plaintiff's protected health information to any party, counsel, or third party outside of standard clinical business need, without prior leave of this Court.

In the alternative, if this Court declines to issue the requested relief, Plaintiff respectfully requests that the Court issue a written statement of its reasons for denial satisfying the requirements

of Federal Rule of Civil Procedure 52(a)(2), so that the Fifth Circuit has a reviewable record on

Plaintiff's appeal.

Respectfully submitted,

Charles T. Bruff
4835 Medical Dr. #29643
San Antonio, TX 78229
318-452-8978
cbruff13@outlook.com
Plaintiff in Pro Se

## CERTIFICATE OF CONFERENCE

Plaintiff certifies that on April 22, 2026, Lincoln's litigation counsel Iwana Rademaekers

sent Plaintiff an email raising matters directly related to the claims file and the pending motions in

this case. Plaintiff responded to that email the same evening, raising specific objections and

requesting a response. As of the date of this filing, Rademaekers has not responded to Plaintiff's

April 22 reply. Plaintiff attempted but has not received a response to his conference on this motion

within the time available given the May 4, 2026 deadline. Lincoln's position on the relief requested

in this motion is therefore unknown presumed opposed.

## CERTIFICATE OF SERVICE

Plaintiff certifies that on the date of filing, a copy of this motion was served on all counsel

of record through the Court's CM/ECF system.

24