Charles T. Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
318-452-8978
Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**CHARLES T. BRUFF,**
    Plaintiff,
v.
**USAA HEALTH AND WELFARE BENEFITS PLAN,**
**USAA EDUCATIONAL ASSISTANCE PLAN,**
**UNITED STATES AUTOMOBILE ASSOCIATION,**
**AND LINCOLN NATIONAL LIFE INSURANCE**
**COMPANY,**
    Defendants.

Case No. SA26CA1720

## PLAINTIFF'S NOTICE OF PRODUCTION DEFICIENCY:

## THIRD-PARTY PROTECTED HEALTH INFORMATION

## COMMINGLED IN STD CLAIMS FILE PRODUCTION

Plaintiff Charles T. Bruff, appearing pro se, respectfully submits this Notice of Production Deficiency to inform the Court of a specific and serious defect discovered in Defendant Lincoln National Life Insurance Company's ("Lincoln") April 12, 2026 claims file production. The production contains the protected health information ("PHI") of a third party — a different USAA employee who is not a party to this litigation — commingled within Plaintiff's Short-Term Disability claims file. Plaintiff files this Notice to create a record of the defect, to document Plaintiff's identification and reporting of the issue, and to notify the Court that a corrected production and regulatory response are required.

## I. BACKGROUND

On April 12, 2026, counsel for Lincoln, Iwana Rademaekers of the Law Offices of Iwana Rademaekers, P.C., delivered Lincoln's claims file production to Plaintiff via an OneDrive link. The production was represented to include the complete claims file for LTD Claim No. 17729133 and STD Claim No. 17118669. The production totaled approximately 2,500 pages across both files.

On April 13, 2026, Plaintiff sent defense counsel a written inquiry identifying five specific categories of documents and asking whether the production was complete with respect to each. On April 14, 2026, defense counsel responded that everything was included but that she would need to confirm one category. On April 27, 2026 — after an additional review — defense counsel confirmed in writing: "I have confirmed that the link we sent to you includes everything that Lincoln reviewed to issue its decision regarding your claim for benefits." Plaintiff notified defense counsel that same day that AI tools would be used to analyze the production. Plaintiff waited to begin full analysis pending this confirmation of completeness.

Plaintiff has been processing the production using AI tools to assist with case analysis, a practice Plaintiff disclosed to the Court in a prior AI disclosure filing. During review of the STD 2021 claims file, the AI identified a discrepancy: eight pages bearing Bates numbers Lincoln/Bruff 2021 394 through Lincoln/Bruff 2021 401 do not belong to Plaintiff. This discrepancy was not identified by defense counsel during her initial review of the file, nor during the second review that preceded her April 27 completeness confirmation, nor at any prior point in Lincoln's internal claims administration process. It was identified by AI tools.

## II. THE DEFECT

Pages Lincoln/Bruff 2021 394 through Lincoln/Bruff 2021 401 contain the medical records of a different USAA employee (the "Third-Party Claimant"). Specifically, these eight pages contain:

1. A completed FMLA certification belonging to the Third-Party Claimant, including her date of birth and FMLA claim number;

2. An Attending Physician Statement signed by the Third-Party Claimant's treating physician; and

3. The Third-Party Claimant's personal medical information, employer information, and treating physician identity.

The Third-Party Claimant was a USAA employee based in Virginia. Plaintiff was a USAA employee based in Texas. The Third-Party Claimant's records appear to concern an FMLA leave — a different line of business from the short-term and long-term disability claims at issue in this litigation. Plaintiff has no relationship with the Third-Party Claimant and has never met or communicated with her.

Plaintiff does not know how the Third-Party Claimant's records came to be included in Plaintiff's claims file. Plaintiff does not know whether this occurred at the time the records were originally received by Lincoln, at the time the production was compiled, or at some other point in Lincoln's claims administration process. This should not be possible. The presence of a different claimant's PHI — including records from a different state and a different line of business — within Plaintiff's claims file raises serious questions about Lincoln's claims file management process that Plaintiff cannot answer without further information from Lincoln.

Because these eight pages belong to the Third-Party Claimant, Plaintiff's file contains only 465 pages of Plaintiff's own records in the positions where 473 were represented. The eight pages of Plaintiff's records that should occupy positions 394 through 401 are unaccounted for.

### III. NATURE AND SCOPE OF THE UNAUTHORIZED DISCLOSURE

Plaintiff notified defense counsel of this defect on May 1, 2026 by email to Iwana Rademaekers and Sandy Acker. The full scope of the unauthorized disclosure is not known to Plaintiff. What is known is as follows:

1. Disclosure to Plaintiff. Plaintiff received the Third-Party Claimant's PHI as part of a production that Plaintiff had no reason to believe contained anyone other than Plaintiff's own records. Plaintiff has no authorization — legal, medical, or otherwise — to possess the Third-Party Claimant's private medical information. The Third-Party Claimant is not a party to this litigation. Plaintiff is a stranger to her. The disclosure to Plaintiff was unauthorized.

2. Disclosure to Defense Counsel and Her Firm. Defense counsel and her paralegal, Sandy Acker, handled, Bates-stamped, and produced the claims file containing the Third-Party Claimant's PHI. The Law Offices of Iwana Rademaekers, P.C. represents Lincoln in this litigation — a lawsuit to which the Third-Party Claimant is not a party and in which her records have no relevance. Defense counsel has no litigation authorization to access, handle, or transmit the Third-Party Claimant's private medical records. The firm's handling of those records in the course of producing this file constitutes an unauthorized disclosure to persons with no lawful basis to receive it.

3. Potential Disclosure to USAA's Counsel. USAA has not yet appeared in this litigation. On or about April 24, 2026 — approximately seven days before the filing of this Notice — defense counsel indicated that she intended to share the OneDrive production links with USAA's counsel as-is, without redaction, and stated that USAA's appearance was imminent. Plaintiff asked defense counsel not to share those links. Defense counsel has not responded to that request. Plaintiff does not know whether the links were shared before Plaintiff's request or have been shared since. If the production links were transmitted to USAA's counsel, the Third-Party Claimant's PHI was disclosed to additional parties with no authorization to receive a different employee's private medical records. If that sharing has occurred, those recipients must be notified immediately.

4. Disclosure to AI Processing Tools. Because Plaintiff had no reason to believe Lincoln would produce a third party's medical records inside Plaintiff's own claims file, AI tools processed the entire production — including the Third-Party Claimant's PHI — before the discrepancy was identified. Plaintiff disclosed the use of AI tools to the Court prior to receiving this production. The disclosure of the Third-Party Claimant's PHI to an AI system occurred without her knowledge or consent and as a direct result of Lincoln's commingling error.

5. Social Security Administration. Plaintiff has been holding both productions pending confirmation of completeness, intending to transmit them to the Social Security Administration in connection with Plaintiff's pending SSDI application. Plaintiff cannot transmit either production until the PHI issue is resolved. Plaintiff's SSDI application is being delayed as a direct result.

# IV. SYSTEMIC CONCERN — SCOPE UNKNOWN TO PLAINTIFF

Plaintiff acknowledges that speculation is generally disfavored in federal filings. Plaintiff raises the following concern not as a factual assertion but as a serious question that the Court should be aware of and that Lincoln should be required to address.

The error described in this Notice passed through at least four points of human review without being identified: Lincoln's internal personnel who compiled or maintained the file; the Lincoln employees who prepared the production; defense counsel's paralegal who Bates-stamped every page; and defense counsel herself, who certified the production and filed Initial Disclosures identifying specific Bates numbers to this Court. The error was identified not by any of those individuals, but by AI tools at the very end of the chain — after the file had already been produced and transmitted.

Plaintiff does not know whether Lincoln produces claims files through an automated process, a manual process, or some combination of both. Plaintiff does not know whether the file produced in this case was retrieved from a fixed stored document or compiled at the time of the production request. Plaintiff cannot determine from the production itself how this error originated or whether it is isolated to Plaintiff's file.

Lincoln serves hundreds of thousands of disability claimants. If the process by which Lincoln produced Plaintiff's claims file is the same process Lincoln uses for all other claimants — and Plaintiff has no basis to believe otherwise — then the failure that produced this error may not be limited to Plaintiff's file. Other claimants' files may contain third-party PHI. Other claimants' PHI may appear in files belonging to other people. Neither those claimants nor the individuals whose records were commingled would have the ability to know. A person whose records were misplaced into another claimant's file would have no mechanism to discover that fact. Even if such an error were identified by a court or a third party in the course of litigation, there is no guarantee that the individual whose records were disclosed would ever be notified or learn what happened to their private medical information.

Plaintiff also raises a concern personal to this litigation. Lincoln has an active pending review of Plaintiff's disability claim and has demanded that Plaintiff produce significant medical information in connection with that review. A preliminary injunction motion regarding that review is currently

pending before this Court. Plaintiff is now aware of two separate incidents in which Lincoln's handling of protected health information has failed: Lincoln's case manager previously transmitted Plaintiff's medical records to an email address at a clinic Plaintiff had never visited and had no association with — an address Plaintiff cannot account for, particularly because Lincoln had previously communicated with Plaintiff's actual treating counselor through proper clinical channels — and the commingling of a third-party claimant's PHI into Plaintiff's own claims file. Plaintiff is being asked to continue providing sensitive medical information to an entity that has demonstrated, on more than one occasion, that it cannot reliably safeguard the private health information in its possession.

Plaintiff is a pro se litigant. This problem involves the privacy rights of a person who is not a party to this case, who did not consent to any of this, and who almost certainly does not know it happened. This is beyond what Plaintiff can address alone. Plaintiff respectfully submits that the Court should require Lincoln to explain, in writing, how its claims file production process works, what safeguards exist to prevent commingling of claimant records, and whether Lincoln has any basis to represent that this error is isolated to Plaintiff's file. Plaintiff acknowledges that requesting this type of process disclosure at this stage of litigation and through a notice filing is unusual. Plaintiff does not know the proper procedural vehicle for a privacy violation of this nature that does not directly involve Plaintiff's own information. Plaintiff files this Notice to ensure the Court is aware and to preserve the record.

## V. RELIEF REQUESTED

Plaintiff respectfully requests that the Court take notice of the foregoing and order the following:

1. Lincoln shall provide written confirmation within seven (7) days that Lincoln is aware of the commingling error and the unauthorized disclosure of the Third-Party Claimant's PHI.

2. Lincoln shall notify the Third-Party Claimant that her PHI was disclosed to Plaintiff and, if applicable, to USAA's counsel, as required under the Health Insurance Portability and Accountability Act (HIPAA), 45 C.F.R. § 164.404, and the Texas Health & Safety Code § 181.101 et seq.

3. Lincoln shall produce a corrected STD 2021 claims file through normal clinical channels, from which the Third-Party Claimant's PHI has been removed and in which the eight pages correctly belonging to Plaintiff's file are restored, or in which the absence of those pages is explained.

4. Lincoln shall confirm in writing whether the OneDrive production links were shared with USAA's counsel and, if so, what steps have been taken to address the resulting disclosure.

5. Lincoln shall confirm in writing whether Plaintiff's PHI appears in the Third-Party Claimant's claims file or any other Lincoln claimant's file.

Plaintiff has reported this matter to the Texas Department of Insurance, the Virginia Department of Insurance, and the Employee Benefits Security Administration (EBSA).

Respectfully submitted,

/s/ Charles T. Bruff
Charles T. Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
318-452-8978
Plaintiff in Pro Se

Dated: May 1, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, a true and correct copy of the foregoing Notice was served upon counsel for Defendant Lincoln National Life Insurance Company through the Court's CM/ECF electronic filing system, which will automatically generate electronic notice to all counsel of record.

/s/ Charles T. Bruff
Charles T. Bruff
Plaintiff in Pro Se