Charles T. Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
318-452-8978
Plaintiff in Pro Se

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**CHARLES T. BRUFF,**
    Plaintiff,
v.

**USAA HEALTH AND WELFARE BENEFITS PLAN,**
**USAA EDUCATIONAL ASSISTANCE PLAN,**
**UNITED STATES AUTOMOBILE ASSOCIATION,**
**AND LINCOLN NATIONAL LIFE INSURANCE**
**COMPANY,**
    Defendants.

Case No. SA26CA1720

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR**
**PRELIMINARY INJUNCTION PENDING APPEAL**

### I. INTRODUCTION

Plaintiff Charles T. Bruff, appearing pro se, submits this Reply in support of his Motion for Preliminary Injunction Pending Appeal. Lincoln opposed this injunction without arguing Plaintiff is not disabled, without arguing the plan terms support termination, and without addressing the plan structure it misidentified. Lincoln's Response (Document 30) mischaracterizes the theory of irreparable harm, misstates the record on the clinical deadline, and invokes a fiduciary-duty-to-other-participants argument that does not apply to a fully insured plan. The factual and legal landscape has also changed materially since the Court's April 22, 2026 text order: Lincoln has produced the administrative record, Plaintiff has identified serious defects in that production — including the unauthorized disclosure of a third party's protected health information commingled into the STD claims file, and an LTD claims file that begins at Bates page Lincoln/Bruff 0053 with pages 0001 through 0052 entirely absent — and new evidence further establishes that the review process Lincoln is defending is neither orderly nor independently conducted. Both defects were present on the face of the production. Defense counsel certified that production as complete in Initial Disclosures and again in a written communication to Plaintiff on April 27, 2026. The motion should be granted.

### II. MULTIPLE ADVERSE BENEFIT DETERMINATIONS HAVE OCCURRED

Lincoln's Response asserts that no adverse benefit determination has been issued. This is incorrect under 29 C.F.R. § 2560.503-1(m)(4), which defines adverse benefit determination to include any

denial, reduction, or termination of a benefit, or failure to provide a benefit, in whole or in part. Three separate adverse determinations are documented in the administrative record Lincoln produced.

First, the Mental Illness and Non-Verifiable Symptoms Limitation, applied at LTD approval on September 18, 2025, capped Plaintiff's benefits at 24 months — a reduction requiring § 503-compliant written notice identifying which prong applied, which diagnosis triggered it, and Plaintiff's right to appeal. Lincoln issued no such notice. See Exhibit J; Exhibit L; Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989). The DOL's 2016 Final Rule, effective April 1, 2018, reinforces this obligation with binding specificity: when an adverse benefit determination is based on an exclusion or limitation — such as the NVS Limitation — the notice must include 'the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse benefit determination,' and that information 'may not be withheld on grounds of confidentiality or that such information is proprietary.' 81 Fed. Reg. 92316 (Dec. 19, 2016). Lincoln applied the Limitation without identifying which prong applied, which diagnosis triggered it, or which internal criteria governed the classification. Lincoln has since refused to produce those criteria, claiming they are confidential. The 2016 rule makes that position indefensible.

Second, Lincoln closed Plaintiff's vocational rehabilitation referral on January 27, 2026 and redirected him to a state payer-of-last-resort program without issuing any written denial notice or citing any plan provision — a failure to provide a plan benefit under § 2560.503-1(m)(4). See Exhibit E; Exhibit F.

Third, Lincoln refused to evaluate Plaintiff's structured part-time graduate education as qualifying rehabilitation, denying without any § 503-compliant determination a 10 percent monthly benefit increase to which Plaintiff may be entitled.

Each determination required written § 503-compliant notice. None was provided. The absence of notice does not mean the determinations did not occur — it means they occurred in violation of ERISA. This directly contradicts Lincoln's claim that there is nothing for Plaintiff to challenge on the merits.

### III. THE MERITS PICTURE HAS CHANGED SINCE APRIL 22

The Court's April 22, 2026 text order denied the original preliminary injunction because it was 'unclear how [Plaintiff's] allegations bear on the merits.' That ambiguity no longer exists. Lincoln has since produced the administrative record. That record reveals, on its face: (1) a claims

coversheet showing 'Apprv Thru Date: 09/17/2027' — Lincoln's own system reflecting approval through September 17, 2027; (2) 90-day reviews conducted during that approved period without any contractual authority disclosed in the production; (3) eight pages of a different USAA employee's protected health information commingled into Plaintiff's STD claims file and produced without authorization; and (4) an LTD claims file that begins at Bates page Lincoln/Bruff 0053 — meaning pages 0001 through 0052 are absent from the production without explanation. This is not a numbering convention: the STD claims file produced in the same production begins at Bates page Lincoln/Bruff 2021 0001, confirming that Lincoln's Bates numbering starts at page 1 when a complete file is produced. The LTD file begins at page 53. Pages 1 through 52 are missing. Plaintiff does not know what is on them. Neither defect — the commingled third-party records nor the 52 missing LTD pages — required forensic analysis to identify. Both were visible on the face of the production. Defense counsel certified that production as complete to this Court in Initial Disclosures and in a written communication on April 27, 2026. These are not ambiguous allegations. They are documented facts in the administrative record Lincoln itself produced.

Lincoln's Response does not address any of these facts. It relies entirely on the April 22 text order as though nothing has happened since. The merits picture is materially different than it was on April 22, and the Court is entitled to consider the record as it now stands.

## IV. IRREPARABLE HARM

### A. The Full and Fair Review Argument — Not Addressed by Lincoln

Lincoln's Response does not address Plaintiff's primary theory of irreparable harm: that ongoing medical reviews conducted by claims administration personnel with litigation awareness cannot constitute a full and fair review under ERISA. This argument is grounded in the text of the regulation Lincoln is obligated to follow.

The DOL's 2016 Final Rule amending 29 C.F.R. § 2560.503-1, effective April 1, 2018, significantly strengthened the independence and impartiality requirements for disability claims. 81 Fed. Reg. 92316 (Dec. 19, 2016). The rule was promulgated expressly in response to conflicts of interest in disability claims administration and the disproportionate volume of disability benefits litigation. Its independence and impartiality requirements, codified at § 2560.503-1(b)(7), require that all disability claims and appeals be adjudicated in a manner designed to ensure independence and impartiality. Decisions about hiring, compensation, termination, and promotion of claims

adjudicators and medical experts must not be made based upon the likelihood that the individual will support the denial of benefits.

The 2016 rule also requires that any adverse benefit determination contain a complete discussion of why the plan denied the claim — including, specifically, the basis for disagreeing with any disability determination made by the Social Security Administration. 81 Fed. Reg. 92316. Lincoln directed Plaintiff to apply for SSDI. Lincoln funded that application. The SSA has determined Plaintiff is disabled. If Lincoln's review produces an adverse determination, Lincoln is required by federal regulation to explain why its determination disagrees with SSA's — a position of irreconcilable contradiction for the entity that simultaneously directed and funded the SSDI application.

The consequences of non-compliance are severe. Under the 2016 rule's deemed exhaustion provision, if a plan fails to adhere to the claims processing requirements, the claimant is deemed to have exhausted administrative remedies and may immediately pursue relief in federal court. More critically, if the plan fails to follow its own procedures, fiduciary discretion is forfeited — meaning any adverse determination is reviewed de novo rather than under the deferential abuse-of-discretion standard. Lincoln's litigation posture has already contaminated the independence of its claims reviewers. A review conducted by personnel who are aware of this lawsuit, working in coordination with litigation defense counsel, and employed by the entity paying for Lincoln's defense cannot satisfy § 2560.503-1(b)(7)'s independence requirement — regardless of how Lincoln characterizes the separation of its claims and litigation functions. Once contamination occurs, it cannot be undone. That is irreparable harm. Lincoln did not respond to this argument.

## B. Lincoln's Own Exhibits Refute Its SSA Argument

Defense counsel attached Form SSA-3368-BK as Exhibit A to argue that Plaintiff can complete his SSDI application without Lincoln's claims file. Page 3 of that form states: 'Anyone who makes or causes to be made a false statement or representation of material fact for use in determining a payment under the Social Security Act, or knowingly conceals or fails to disclose an event with an intent to affect an initial or continued right to payment, commits a crime punishable under Federal law by fine, imprisonment, or both.' The underlying regulations are broader than the form. Under 20 C.F.R. § 404.1512, a claimant has an affirmative duty to inform SSA about all evidence known to them relating to disability. Under 20 C.F.R. § 404.1740, Brown & Brown — retained and funded by Lincoln — has an independent duty to provide SSA all relevant information. Under 20 C.F.R.

§ 404.459, knowingly concealing a material fact is a federal offense. Plaintiff cited § 404.459 verbatim to Lincoln's SSA specialist Faith Cole on February 12, 2026. Lincoln has been on notice since before the application was filed. Section 9 of the form requires Plaintiff to identify any insurance company that has paid benefits in connection with his claim — which Lincoln has. Plaintiff cannot identify Lincoln as a source of medical information without disclosing that Lincoln's production contains a third party's protected health information that has not been corrected. If Lincoln's argument were accepted, Plaintiff would face federal criminal liability for disclosure violations that Lincoln's own conduct created. That is not what the law permits.

Lincoln argues it is 'not the originator' of Plaintiff's medical records and therefore its claims file is irrelevant to the SSDI application. This misframes what the file contains. Lincoln is correct that treating physicians originate clinical records — SSA can obtain those directly from providers. But Lincoln's claims file contains records that Lincoln itself originated and that SSA cannot obtain from anyone else: Lincoln's clinical determination that Plaintiff met the criteria for SSDI expedited reinstatement; Lincoln's internal medical review conclusions from more than ten disability reviews; Lincoln's vocational assessments and work-capacity determinations; Lincoln's written application of the NVS Limitation to Plaintiff's conditions; and Lincoln's own findings about whether Plaintiff's conditions are verifiable, treatable, and disabling under Lincoln's standards. These are not records Lincoln received from doctors. These are records Lincoln created — original clinical determinations made by Lincoln's own clinical personnel. They are material to SSA's determination precisely because Lincoln has simultaneously represented to SSA through Brown & Brown that Plaintiff is disabled while conducting internal reviews that may reflect a different assessment. Plaintiff cannot knowingly withhold Lincoln's own clinical determinations from a federal agency to which Lincoln directed him to apply. The 'not the originator' argument does not reach the documents that matter.

Lincoln's withholding posture is also unexplained and self-defeating on its face. Lincoln routinely directs LTD claimants to apply for SSDI. Lincoln financially benefits when those applications succeed — the SSDI award generates an offset that reduces Lincoln's payment obligation. If Lincoln's default practice were to cooperate fully with SSA, providing everything in its possession that might be relevant to the claimant's federal disability application, SSA's burden would be reduced, the process would be faster, and Lincoln's offset would arrive sooner. The withholding posture Lincoln has adopted here — refusing to release the file, refusing to provide a letter

explaining why, making Plaintiff notify SSA that Lincoln will not cooperate — actively makes a process Lincoln benefits from more difficult. Lincoln has offered no explanation for why this is its default posture. The most plausible explanation is that the file contains something Lincoln does not want SSA or this Court to see — or that withholding serves the litigation strategy rather than any legitimate fiduciary purpose. Under MetLife v. Glenn, 554 U.S. 105 (2008), that inference is precisely what courts are required to draw when an administrator's conduct is inconsistent with its stated fiduciary role.

Lincoln's own Exhibit B confirms this independently. Plaintiff's March 19, 2026 email at Lincoln/Bruff 0200-0201 states that when Plaintiff filed for expedited reinstatement he had to note in the application that he was unable to provide his claims file because Lincoln would not release it. Lincoln attached this to show the SSA process was simple. It instead proves Plaintiff disclosed the file's unavailability to SSA — exactly what the materiality obligation required. Exhibit B also establishes at Lincoln/Bruff 0194-0195 that Corporan responded to Plaintiff's 33-item document request by stating that for review frequency criteria, vocational rehabilitation standards, limitation criteria, and proof standards, 'there are no guidelines or additional information to provide.' Lincoln attached proof that its own case manager told Plaintiff the guidelines do not exist. Defense counsel cannot now argue they were properly withheld. Lincoln's own exhibits refute its SSA argument and confirm the guidelines justifying this review have never been disclosed.

### C. Lincoln's SSDI Concession Forecloses the Harm Argument

Lincoln argues it will be irreparably harmed if required to continue paying benefits it believes should be denied. That argument is foreclosed by Lincoln's own conduct. Lincoln directed Plaintiff to apply for SSDI under 42 U.S.C. § 1310 — expedited reinstatement — a program that requires a federal finding that the claimant is unable to engage in substantial gainful activity, the most demanding disability standard in American law. Lincoln arranged and funded representation by Brown & Brown Absence Services Group to advance that application to the Social Security Administration.

The Social Security Administration has determined that Plaintiff is disabled — a determination that has been in place since birth. See Exhibit SSALETTER. Plaintiff does not receive SSDI cash benefits only because he earned above the substantial gainful activity threshold during his employment at USAA — an earnings-based disqualification, not a clinical reversal. The SSA still considers Plaintiff disabled. Lincoln knows this. Lincoln directed this application. Lincoln cannot

simultaneously represent to the Social Security Administration that Plaintiff meets the most demanding disability standard in federal law and argue to this Court that it will be harmed by continuing to pay benefits under the less demanding own-occupation standard. Those positions cannot be reconciled.

If Lincoln genuinely believes Plaintiff will not remain disabled through the pendency of this litigation — the only coherent basis on which to oppose this injunction — then Lincoln should withdraw its direction to apply for SSDI. It has not done so. The injunction preserves a status quo that Lincoln's own clinical concession has already established.

**D. The Deadline Was Not What Lincoln Represents — New Evidence**

Lincoln's Response notes that Plaintiff faced a May 7, 2026 deadline and simply failed to request an extension. The record contradicts this. Plaintiff received a letter dated March 24, 2026 stating that documentation must be provided by May 7, 2026 — 45 days from that date. See Exhibit Mar24Packet. But that same day, Lincoln sent letters to Plaintiff's treating physicians stating that the same information must be provided by April 7, 2026 — 14 days from March 24, not 45. On March 31, 2026, Lincoln sent an additional follow-up fax to Dr. Laavanya Raju at UT Health San Antonio stating a deadline of April 14, 2026 — a third date, different from both prior deadlines, for the same review. See Exhibit MAR31PACKET. Lincoln sent Plaintiff one deadline, sent his physicians a deadline 30 days earlier with the same adverse action warning, and then sent a follow-up with yet a third deadline to at least one provider. These are not minor inconsistencies. They represent three different deadlines for the same review, communicated to different parties without any explanation of which deadline would govern Lincoln's decision to take adverse action.

Plaintiff identified this discrepancy in real time. On April 1, 2026, Plaintiff messaged Dr. Raju through MyChart to alert her to the request, noting that Lincoln had sent it to UT's Release of Information department — which responds to requests rather than initiating them — meaning Dr. Raju would not receive it until days after the fax arrived, with a deadline of April 7. Plaintiff told Dr. Raju he intended to push back on the timeline. See Exhibit MyChart. On April 5, Dr. Raju responded that she was out of the clinic until midweek and asked Plaintiff to find out if Lincoln would grant an extension. On April 6, Plaintiff told Dr. Raju that he believed an extension would be available given that Lincoln had given him a May 7 deadline — different from the April 7 deadline Dr. Raju had received — and that he would contact Lincoln to get the extension approved. Plaintiff was actively attempting to navigate the extension process, in good faith, through his

treating physician, within days of receiving the request. What happened next is documented: on April 10, 2026, Lincoln directed Plaintiff to communicate all matters relating to his claim through litigation counsel. The same clinical department Plaintiff needed to contact about the extension was now accessible only through an adversarial attorney. The extension Plaintiff intended to pursue became procedurally unavailable at the moment Lincoln made counsel the exclusive channel for all communications.

The deadline confusion was compounded by a more fundamental problem with the review itself. Lincoln applied the Mental Illness and Non-Verifiable Symptoms Limitation at the time of LTD approval — silently, without notice — on the basis that Plaintiff's disability is attributable to mental illness. Yet the March 24, 2026 review packets were sent not only to Plaintiff's mental health providers but also to his neurologist and his primary care physician — providers who treat his cerebral palsy, a physical condition. Plaintiff's neurologist and primary care physician were confused about why Lincoln was requesting records from them at all, given that Lincoln had represented to Plaintiff that his claim was limited to mental illness. Their confusion was well-founded. If Lincoln's own determination is that Plaintiff's disability is attributable to mental illness, Lincoln has no disclosed clinical basis for requesting records from the physicians who treat his physical conditions. Either the Limitation was incorrectly applied — in which case Plaintiff's benefits should not be capped at 24 months — or Lincoln is conducting a review under a different and broader disability standard than the one it applied at approval, without disclosing that standard to Plaintiff. Lincoln cannot apply a mental illness limitation at approval and then conduct a review that sweeps in physical disability records without explaining why. This is precisely the kind of undisclosed standard that the 2016 Final Rule requires Lincoln to identify and disclose. It has not done so.

More fundamentally, this review should not be occurring at all without justification. Plaintiff filed for SSDI expedited reinstatement on March 9, 2026 — at Lincoln's direction. Lincoln initiated a medical review on March 20 — eleven days later. Lincoln has never explained what clinical information a review could produce that is independent of or superior to the federal disability determination Lincoln itself sought and funded. Corporan's only explanation was that review timing 'depends on the claim circumstances.' No criteria. No clinical basis. Plaintiff is not asking for more time to comply with a legitimate process. Plaintiff is asking why the process exists at all, by whom it is conducted, and under what standard.

By representing in its Response that extensions are 'commonly granted,' Lincoln's counsel has made that representation to this Court. Plaintiff accepts it as an offer and formally requests an extension pending resolution of this motion. Plaintiff is taking Lincoln at its word, in a forum where that word is on the record.

**E. The PHI Disclosure — New Evidence of Irreparable Harm**
Since the Court's April 22 order, Plaintiff has discovered that Lincoln's production contains the protected health information of a different USAA employee — a Virginia-based employee whose FMLA certification, Attending Physician Statement, date of birth, and FMLA claim number were commingled into Plaintiff's STD claims file and produced without authorization. Plaintiff has filed a separate motion for corrective action. It is relevant here because the administrative record Lincoln produced cannot be assumed to be accurate, complete, or bounded to Plaintiff's own information. That uncertainty is itself irreparable harm.

## V. BALANCE OF HARMS

Lincoln argues it will be harmed if required to continue paying benefits that should be denied. But Lincoln has not argued anywhere in this litigation that Plaintiff does not meet the disability standard. Lincoln approved his claim through September 2027 Exhibit Coversheet. Lincoln directed him to apply for SSDI under the most demanding federal disability standard and funded that application. Lincoln has produced no clinical evidence that his condition has changed. Under Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (2008), a conflict of interest exists — and must be weighed — when the same entity both evaluates and pays claims. The Fifth Circuit applies Glenn through a sliding scale. Here the conflict is not structural — it is documented. Lincoln funded Brown & Brown's representation to SSA because an SSDI award generates an offset reducing Lincoln's obligation. Lincoln then initiated a medical review eleven days later. The Glenn conflict infects not just the ultimate determination but every upstream decision that makes one possible — the decision to review, the frequency, and the timing. Lincoln has never disclosed the criteria governing when reviews occur. Under 29 C.F.R. § 2560.503-1(m)(8), those internal guidelines are required to be disclosed. Defense counsel had the opportunity in this Response to justify the 90-day review schedule. She chose continued withholding. If the schedule were defensible, Lincoln would have said so. The only coherent explanation for reviewing a claimant Lincoln has simultaneously told a federal agency is disabled — under a stricter standard — is to build an adverse record while the SSDI offset accrues. Lincoln's harm argument should be viewed with exactly the skepticism Glenn requires.

Plaintiff's harm, by contrast, is concrete and irreversible. His disability benefits are his primary source of income. He has cerebral palsy, autism spectrum disorder, and post-traumatic stress disorder — permanent conditions forming the basis of both Lincoln's LTD approval and the SSA's disability determination. Any reduction or termination pending this litigation cannot be undone after the fact. The balance of harms strongly favors Plaintiff.

### VI. PUBLIC INTEREST — THE FULLY INSURED PLAN DISTINCTION

Lincoln invokes ERISA's fiduciary duty to all plan participants to argue the injunction disserves the public interest. This misapplies the trust framework to a plan structure exempt from it. Congress exempted fully insured plans from ERISA's trust requirement. 29 U.S.C. § 1103(b)(1). The USAA LTD plan is fully insured — Lincoln pays from its own general account under a group insurance contract, not from a pooled participant trust. The Fifth Circuit addressed this distinction in Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339 (5th Cir. 2003); the Seventh Circuit applied it specifically to fully insured plans in Forys v. United Food & Commercial Workers Union, 829 F.2d 603 (7th Cir. 1987); and the DOL confirms that general account insurers are subject to less stringent ERISA trust requirements. 29 C.F.R. § 2550.401c-1. There is no pooled participant trust to protect. Lincoln is protecting its own general account. That is a commercial interest, not a public one.

The actual public interest favors Plaintiff. ERISA exists to protect plan participants from arbitrary and procedurally deficient benefit determinations. An injunction that preserves the status quo while the Court examines Lincoln's full and fair review compliance — and while Lincoln remedies a production containing a third party's protected health information — serves ERISA's core purpose.

### VII. PROCEDURAL OBJECTIONS

Lincoln's Response notes that Plaintiff's motion exceeded the 10-page limit under Local Rule CR-7(C)(2). Plaintiff is a pro se litigant and is entitled to have his pleadings held to less stringent standards than those drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972). Plaintiff was simultaneously managing a Fifth Circuit appeal filing and a cascading series of production defects — including the discovery of third-party PHI in the administrative record — while preparing the motion. The additional length was necessitated by the complexity of the legal and factual issues presented, not by any intent to burden the Court. Plaintiff notes that Lincoln's own Response runs to eleven pages. Plaintiff respectfully requests that the Court consider the motion on its merits.

Plaintiff also respectfully notes that this Reply was drafted under significant time pressure. Lincoln's Response was filed on May 2, 2026 — the same day Plaintiff discovered the third-party PHI issue and filed a separate motion for corrective action. Given the approaching deadline and the possibility that the Court might rule before Plaintiff had an opportunity to respond, Plaintiff drafted this Reply as quickly as circumstances permitted. Plaintiff asks the Court to extend the same liberal construction afforded pro se litigants to any imperfections in form, and to consider the substance of the arguments presented.

Lincoln also argues that Federal Rule of Appellate Procedure 8(a)(1) does not apply because the motion was filed in the district court rather than the court of appeals. Plaintiff agrees that FRAP 8 governs motions filed in the appellate court — but the motion also expressly invokes Federal Rule of Civil Procedure 62(d), which independently authorizes the district court to grant an injunction pending appeal. Rule 62(d) requires no showing of impracticability and no affidavit submission. The motion is properly before this Court under Rule 62(d) regardless of FRAP 8. To the extent FRAP 8 requirements apply, they are satisfied: the original preliminary injunction was denied by this Court on April 22, 2026, which is precisely the showing FRAP 8(a)(1)(A)(ii) requires.

### VIII. CONCLUSION

The Court denied the original preliminary injunction because it was unclear how Plaintiff's allegations bore on the merits. That clarity now exists. The administrative record Lincoln produced reveals approval through September 2027, 90-day reviews without contractual authority, and a third party's protected health information commingled in Plaintiff's own file. The SSA has confirmed Plaintiff's disability under the most demanding federal standard. Lincoln directed that application and funded it. The review process Lincoln is defending cannot constitute a full and fair review under ERISA because it is being conducted with litigation awareness by the same entity defending this lawsuit. The harm to Plaintiff if benefits are reduced or terminated is immediate, concrete, and irreversible. The harm to Lincoln from maintaining a status quo it created is speculative and self-imposed. The public interest favors ERISA enforcement, not the protection of an insurer's general account.

Plaintiff respectfully requests that the Court grant the Motion for Preliminary Injunction Pending Appeal.

In the alternative, Plaintiff requests that the Court order Lincoln to justify the current medical review — explaining what clinical information it seeks to gather that has not already been

established by the SSDI candidacy determination Lincoln made and funded eleven days before initiating the review, and identifying the genuinely independent clinical reviewers who will conduct it with no knowledge of or involvement in this litigation.

In the further alternative, Plaintiff formally accepts Lincoln's counsel's representation to this Court that deadline extensions are commonly available, and requests such an extension pending resolution of this motion. Neither the May 4 nor the May 7 deadline has passed as of this filing. If the injunction issues, the deadline is moot. If it does not, Plaintiff has now made the request that Lincoln claims was always available — in writing, on the record, before the deadline — and Lincoln may not take adverse action based on a deadline its own counsel has represented is routinely extended.

Respectfully submitted,
/s/ Charles T. Bruff
Charles T. Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
318-452-8978
Plaintiff in Pro Se

Dated: May 3, 2026


## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2026, a true and correct copy of the foregoing Reply was served upon counsel for Defendant Lincoln National Life Insurance Company through the Court's CM/ECF electronic filing system, which will automatically generate electronic notice to all counsel of record.


/s/ Charles T. Bruff
Charles T. Bruff
Plaintiff in Pro Se