**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

CHARLES TERRENCE BRUFF,
Plaintiff,
v.
USAA HEALTH AND WELFARE BENEFITS PLAN,
USAA EDUCATIONAL ASSISTANCE PLAN,
UNITED STATES AUTOMOBILE ASSOCIATION,
AND LINCOLN NATIONAL LIFE INSURANCE COMPANY,
Defendants.

Case No. 5:26-CV-01720-XR

**PLAINTIFF'S MOTION TO STAY DISTRICT COURT PROCEEDINGS
PENDING APPEAL**
Appeal No. 26-50345 (5th Cir.)

## I.  INTRODUCTION AND RESPONSE TO OPPOSITION

Plaintiff Charles Terrence Bruff moves to stay district court proceedings pending resolution of Appeal No. 26-50345. This motion serves two functions. First, it asks this Court to stop a documented pattern of procedural non-engagement from compounding while the Fifth Circuit addresses whether that pattern was lawful. Second, if this Court denies relief, Plaintiff will seek a stay from the Fifth Circuit under Federal Rule of Appellate Procedure 8(a)(2), which requires that the motion first be presented to the district court. This motion satisfies that requirement and presents every argument Plaintiff intends to raise on the appellate stay application. This Court retains the cleaner and faster path to remedy. The following exhibits are filed with this motion and incorporated by reference: Exhibit S-504 (Section 504 historical development and structural process gap); Exhibit DEF (administrative record production deficiency analysis); and Exhibit LC (chronological documentation of Lincoln's counsel's litigation conduct).

This motion is effectively unopposed. Plaintiff satisfied the conferral requirement of W.D. Tex. Local Rule CV-7(g) by emailing counsel for all Defendants on May 21, 2026. USAA did not respond. Lincoln's counsel stated during conferral that Lincoln would oppose, but the grounds she articulated do not constitute colorable opposition to the specific relief requested. Opposing a stay requires identifying why the four factors governing a stay under Nken v. Holder, 556 U.S. 418 (2009), weigh against one. Lincoln did not do that. What Lincoln's counsel communicated were two predictions: that the appeal will not succeed, and that Lincoln's motion to dismiss will be dispositive. Predictions about the outcome of separate proceedings are not opposition to a motion to stay those proceedings. Plaintiff files this motion as effectively unopposed and asks the court to grant it on that basis. Plaintiff addresses Lincoln's conferral statements below for completeness.

Lincoln's counsel stated that the rulings on appeal "are either not appealable or will not be reversed under applicable legal precedent." That is a prediction about the outcome of the appeal, not a reason to deny a stay pending that appeal. It does not address irreparable harm. It does not address the balance of hardships. It does not address the public interest. It identifies no specific legal basis for opposing the stay itself.

Lincoln's counsel also stated that Lincoln's motion to dismiss is likely dispositive. That prediction is internally contradicted by Lincoln's own Footnote 4, which offers Plaintiff leave to amend. An offer of leave to amend acknowledges that the claims are potentially viable. A motion that simultaneously argues for dismissal with prejudice and offers the plaintiff an opportunity to replead is not a dispositive motion. More fundamentally, even if the motion to dismiss were likely to succeed, that would be a reason for the court to rule on it — not a reason to deny a stay while the Fifth Circuit addresses a separate set of legal errors already on appeal.

## II. STANDARD

A stay pending appeal requires: (1) likelihood of success on the merits; (2) irreparable harm absent a stay; (3) no substantial harm to other parties; and (4) consistency with the public

2

interest. Nken v. Holder, 556 U.S. 418, 426 (2009). The first two factors are most critical. Id. at 434. All four favor a stay here.

### III.  LIKELIHOOD OF SUCCESS ON THE MERITS

Three independent grounds establish likelihood of success, each sufficient alone.

#### A.  *No Findings. Nothing to Affirm.*

The April 22 order contains no findings of fact and no conclusions of law. Rule 52(a)(2) makes findings mandatory. Canal Authority of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974). The order's only statement — that it is "unclear how Plaintiff's allegations bear on the merits" — is not a finding. It is a description of non-engagement. The Fifth Circuit cannot defer to reasoning that does not appear in the record. Vacatur and remand is the only legally available outcome. Rule 52(a)(2) compliance is reviewed de novo, and the April 22 order fails on its face.

#### B.  *Wrong Regulatory Framework Across Five Filings.*

The governing framework — the DOL 2016 Final Rule, 81 Fed. Reg. 92316; Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5th Cir. 2018) (en banc); and Tex. Ins. Code § 1701.062 — was placed before this Court and Lincoln in five successive filings: ECF Nos. 25, 27, 30 (Lincoln's own opposition), 31, and Exhibit REG. None produced acknowledgment. Lincoln's MTD cites Cusson v. Liberty Life Assurance Co., 592 F.3d 215 (1st Cir. 2010) — pre-2016, First Circuit, inapplicable in Texas since April 1, 2018. Lincoln participated in the DOL rulemaking. Continued use of superseded law is not inadvertence. The Fifth Circuit reviews legal questions de novo.

#### C.  *Default Mootness Has No Precedent.*

On May 19, this Court mooted Plaintiff's Rule 55(a) default application because Lincoln filed a motion to dismiss. No published federal circuit decision supports that procedure. Rule 55 provides two outcomes: entry under Rule 55(a) and set-aside under Rule 55(c) for good cause. Mootness is not a third option. CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992); Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000). Lincoln's service defense is also forfeited under Rule 12(h)(1) after six weeks of merits litigation without raising it.

3

### IV.  THE APPOINTMENT DENIAL WAS A CAUSE, NOT BACKGROUND

On April 13, this Court denied Plaintiff's appointment motion by text order — no Ulmer analysis, no § 1915 analysis, no Section 504 analysis, no engagement with the ladder of alternatives offered. That denial is on appeal as independent reversible error. Its relevance here is causal: it removed the mechanism that would have interrupted the pattern before it became a pattern.

Plaintiff was not asking the Court to fund an attorney. He was asking to be connected with someone who could help — through the pro bono panel, a referral, or any available mechanism at no cost to the Court. ERISA § 502(g) provides fee-shifting: a successful plaintiff's attorney is paid by the defendant. Congress designed the statute so that meritorious ERISA claimants could obtain counsel without the court or the claimant bearing the cost. The appointment motion explained this. The denial engaged with none of it.

Counsel would have flagged the April 22 text order within twenty-four hours. Counsel would have demanded reproduction of the contaminated record rather than receiving an instruction to delete pages from a certified filing. Counsel would have identified the § 502(c) anchor claim's absence from the MTD before briefing opened. The April 13 denial removed each of these interventions simultaneously. See Exhibit S-504 (filed herewith).

### V.  DUE PROCESS UNDER TENNESSEE v. LANE: PHYSICAL AND COMMUNICATIVE BARRIERS

Tennessee v. Lane, 541 U.S. 509, 531-32 (2004): "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." Plaintiff encountered documented physical and communicative barriers at this courthouse, each independently denying meaningful access.

#### A. Physical Barriers.

On Plaintiff's second courthouse visit, he entered through the accessible entrance, which was functioning. After filing, he attempted to exit and found the accessible button disabled — the building had closed at 5:00 p.m. while he was inside. Security told him the button was off and he would need to push the door manually. Security also noted the building was new. Plaintiff

subsequently confirmed the building was constructed in 2021 — after the full ADA and Architectural Barriers Act requirements took effect. The building's recent construction is why the barrier is less excusable, not more. No effort was made to ensure disabled persons had cleared the building before disabling the accessible egress.

Plaintiff pushed the door open. The barrier was not physically insurmountable that day. But accessible infrastructure is not an amenity for persons with disabilities — it is the mechanism through which the right of physical access is exercised. Plaintiff navigates the physical world through the legal framework that accessibility laws provide. Finding that the federal courthouse — the institution that enforces those laws for everyone else — had disabled that mechanism while he was lawfully inside carried constitutional as well as emotional weight. Tennessee v. Lane recognized that access to courts carries dignity as well as function.

No accessible seating exists at clerk counter level. Plaintiff, who has Cerebral Palsy, dragged chairs from elsewhere in the office to sit level with staff. When he raised the seating barrier, he was directed to a lower window in another room — designated for wheelchair users, without asking what he needed. That is categorical assignment, not accommodation.

**B. Communicative Barriers.**

Plaintiff contacted the communication access coordinator at least twice by phone, disclosing his disabilities and reporting that the pattern of text order denials left him with no way to communicate with the Court about what was going wrong. Nothing was offered each time — no modified process, no customized hearing format, no interactive engagement. The coordinator's answer — file a motion — accurately described the system's limits: it arranges sign language interpreters for in-person hearings and nothing else. Identifying the barrier is the trigger for the interactive process. The institution must respond with options. None were offered.

Plaintiff contacted the courtroom deputy multiple times with the same report and filed a motion explaining that the AI-assisted tools he relies on to navigate this litigation cannot function without findings to work from — that the absence of Rule 52(a)(2) findings severs the only feedback loop available to a disabled pro se litigant who cannot walk into chambers, cannot

call the clerk, and relies on documented written reasoning to understand what is happening. The motion was denied without engagement.

The Judicial Conference's 1995 policy covers "communications disabilities." Autism Spectrum Disorder is defined by the DSM-5 as "persistent deficits in social communication and social interaction." The ADA Amendments Act of 2008 lists "communicating" as a major life activity. 42 U.S.C. § 12102(2)(A). Autism is a communications disability by clinical definition and federal law. The policy that covered Plaintiff's disability provided nothing. See Exhibit S-504 (filed herewith).

### C. The Hearing Asymmetry and Ex Parte Trap.

Plaintiff could not request a hearing because of the documented structural disadvantage disabled pro se litigants face in live adversarial settings. See Miller & Pecoraro, 45 Law & Soc. Inquiry 567 (2020) (pro se status associated with less favorable outcomes and documented stigma); Soffer, Cornell J.L. & Pub. Pol'y (2023) (pro se plaintiffs win 3% of final judgments); DOJ Office for Access to Justice, Advancing Equal Access for Americans with Disabilities (July 26, 2023) (disabled litigants face compounded credibility barriers). For Plaintiff, whose ASD specifically impairs real-time social communication under adversarial conditions, oral argument would have been the form of access without the substance. The accommodation that would have made a hearing viable — advance structure, written exchange, modified format — was never offered.

Counsel can call chambers. A pro se plaintiff who calls a law clerk risks an immediate ex parte accusation that would not attach to the same call made by counsel. Every informal channel available to represented parties was formally closed. Every formal channel — motion practice — required navigating the accommodation barrier without the accommodation. There was no way out.

Together, these barriers — disabled accessible egress in a 2021 courthouse, no interactive accommodation process, no viable hearing path, no informal channel without ex parte risk —

constitute what Tennessee v. Lane identifies as the constitutional floor that cannot be breached: a courthouse not meaningfully accessible to the disabled litigant appearing before it.

## VI.  IRREPARABLE HARM
### A.  *Cascade Harm from the Invalid Default Foundation.*

If the Fifth Circuit reverses the default mootness order, every Lincoln filing since May 19 and every ruling entered on those filings will rest on an invalid foundation. That accumulation cannot be efficiently unwound and is not compensable in damages.  Furthermore, had the court forced Lincoln to show a meritorious defense under the Rule 55C standard, it would revealed information that would have been useful to the plaintiff, and would have furthered the overall litigation. By mooting Lincoln's default without requiring that they meet the Rule 55C standard, Lincoln was spared the burden of having to articulate a defense to each claim. Instead, the burden was improperly shifted onto the plaintiff, as the court claimed that simply mooting Lincoln's default doesn't prejudice the plaintiff. Finally, Lincoln's rush to file an MTD following default may have contributed to structural problems with the motion to dismiss mentioned below.

### B.  *MTD Cannot Be Fairly Briefed.*

Lincoln's MTD does not identify which claims its arguments apply to. Plaintiff has eight claims. Without claim mapping, Plaintiff must respond to every possible combination — a burden Rule 12(b)(6) does not impose and that Lincoln's own construction of legal arguments makes unnecessary, since building those arguments required understanding the claims.

Lincoln's Footnote 6 argues no exhibits are attached to the complaint. A court order directly contradicts this. ECF No. 4, filed March 16, described approximately thirty exhibits and explained that CM/ECF access was pending. This Court granted ECF No. 4 on March 31. Plaintiff filed thirty-two exhibits on April 6. Lincoln appeared April 7 — on a docket already containing the authorization order and thirty-two exhibits.

Lincoln's MTD does not address the § 1132(c) anchor claim — failure to produce plan documents within thirty days of a written request. That claim requires no exhaustion and no adverse determination. It is an open and shut claim on the documentary record. A motion that ignores the anchor claim cannot dispose of this case.

### C. *ECF No. 32 Is a Prerequisite to MTD Briefing.*

ECF No. 32 — Plaintiff's motion for leave to file contaminated administrative record pages under seal — was filed May 4. Lincoln did not oppose. ECF No. 38 confirmed non-opposition May 19. The fourteen-day response period under W.D. Tex. Local Rule CV-7(d)(2) expired May 18. The motion has been ripe for ruling for seventeen days and remains unruled.

ECF No. 32 goes to the integrity of the record Lincoln's MTD relies on. That record contains another individual's protected health information at Lincoln/Bruff 394. Plaintiff reported this to Lincoln's counsel before the MTD was filed. Counsel's response was to instruct Plaintiff to delete the contaminated pages from his copy rather than reproduce the file or disclose the issue to the Court. Plaintiff cannot alter produced documents in litigation. Lincoln then filed its MTD relying on the same contaminated record without disclosure. The Court's copy and any corrected copy Plaintiff would work from would not match.

The deficiency in Lincoln's certified production extends beyond the contamination and the Bates 53 gap. Plaintiff conducted an exhaustive page-by-page analysis of all 2,428 Bates-stamped pages produced by Lincoln — a process requiring weeks of work using AI-assisted document analysis tools. That analysis is documented in Exhibit DEF. The findings: 42.8% of the combined production is filler, non-substantive, or duplicate content. The STD file contains 27 blank physician forms sent to treating providers and zero completed physician forms returned. The LTD file contains 49 blank physician forms and one confirmed completed form. Lincoln approved both claims — meaning it possessed sufficient clinical evidence to do so — yet the structured forms designed to capture that clinical evidence are absent from the production. Lincoln is an experienced institutional insurance administrator. Bates numbering requires manual page-by-page review before a stamp is applied. Lincoln knew, or should have known, that the LTD production began at Bates page 53. Rademaekers acknowledged on April 14, 2026 that Category 3 of the required production might be missing and said she would check with Lincoln. No follow-up was ever provided. She certified the record as complete thirteen days later. Fed. R. Civ. P. 26(g) requires reasonable inquiry before certification. A certification made while

acknowledging the record might be incomplete — on a production that visibly begins at Bates 53, contains another individual's protected health information, and is statistically documented as 42.8% non-substantive — does not satisfy that standard. See Exhibit DEF.

### D.  Text-Order Dismissal Would Complete the Tennessee v. Lane Cycle.

Every contested ruling in this case has been resolved by text order without findings, consistently before briefing closed. A text-order dismissal with prejudice would not merely replicate that pattern. It would complete the constitutional cycle Tennessee v. Lane, 541 U.S. 509 (2004), identified as the harm Congress acted to prevent. Lane found Congress had documented that disabled persons were "excluded from courthouses and court proceedings by reason of their disabilities," such that the barriers they needed courts to address prevented them from reaching those courts. The constitutional harm is the closed circle: inaccessibility forecloses the remedy for inaccessibility. That circle is present here in communicative form. Accommodation failures produced a pattern of non-engagement — prejudice against Plaintiff's filings, whether intentional or not. The absence of accommodation made it impossible to obtain a hearing to address that prejudice. A dismissal with prejudice would close the circle: a disabled litigant excluded from the merits, by reason of disability, with no opportunity to be heard — the result Tennessee v. Lane forbids.

### E.  Lincoln's Withholding of Basic Claim Status Information Creates Ongoing and Unquantifiable Irreparable Harm.

Plaintiff does not know, in any formal or legally reliable sense, how long his long-term disability benefits are currently approved for. Lincoln has produced formal written correspondence on letterhead about this claim on exactly two occasions: the initial approval letter in September 2025, and a vocational rehabilitation referral letter. Lincoln has never produced a written notice that a review has opened, a written notice that a review has concluded, or a written determination of how long the claim is approved for following any review. It has not produced the medical records or physician review results it received and relied upon. It has not produced a denial letter for the vocational rehabilitation denial — despite having produced VR correspondence on letterhead. Lincoln can produce letters about this claim. It chooses which

communications to formalize and which to withhold. That is not a systems failure. It is the deliberate opacity the DOL's 2016 Final Rule was promulgated to address. Plaintiff's claim undergoes review approximately every ninety days — a frequency Lincoln has not defined or justified. There is no formal transition between review periods: benefits simply continue or do not, without written notice either way. Plaintiff's case manager communicates by email, informally, when asked directly. Lincoln's claimant portal displays an approval through date alongside a disclaimer stating that date should not be relied upon. The only confirmation that Plaintiff's benefits are currently approved came from Lincoln's litigation counsel's representation to this Court that benefits "are currently approved" — a present-tense statement made in a litigation filing that carries no commitment about future payment, no information about whether a review is currently open or has concluded, and no guarantee of any benefit status beyond the moment it was written. It is not a formal benefit determination. It is not a notice. It cannot be relied upon as assurance that benefits will be paid on May 24, 2026, or on June 1, 2026, or on any date thereafter. Every other insurer with whom Plaintiff has a relationship — including other USAA-administered plans — provides formal, actionable claim status information as a matter of course. Lincoln alone withholds it. This is not industry standard. It is why Plaintiff sued.

Plaintiff sought clarity from Lincoln repeatedly and specifically because his autism requires it — ambiguity about matters this consequential is not merely uncomfortable; it is functionally disabling. Lincoln's response was not to provide clarity. The more Plaintiff asked, the less Lincoln provided. That dynamic is the inverse of the good faith fiduciary conduct ERISA § 404(a)(1) requires and is consistent with the systemic conduct the DOL documented in its 2023 report. The harm is ongoing and unquantifiable because Lincoln has engineered it to be: Plaintiff cannot evaluate the risk to his benefits because he has been given no reliable information about their status.

If this Court denies the stay and Lincoln terminates benefits during this period — through a process Plaintiff cannot monitor, on a timeline Plaintiff cannot know, without the notices

ERISA requires — there is no mechanism to restore them quickly. Long-term disability benefits are Plaintiff's sole source of income. As of the date of this filing, Plaintiff does not know whether he will have health insurance on June 1, 2026 — his health coverage is tied to his benefit status, and Lincoln has not communicated formally about that status since September 2025. Plaintiff requested an extension from Lincoln's counsel in connection with the preliminary injunction pending appeal. Counsel did not respond, despite having offered the possibility of an extension in a prior communication. The stay motion and ECF No. 27 together seek one thing: a period of defined stability during which the Fifth Circuit can evaluate whether Lincoln's conduct is lawful. Lincoln's refusal to provide that certainty voluntarily is why this Court's intervention is necessary.

### F.  Lincoln's Counsel's Litigation Conduct Constitutes an Independent Source of Irreparable Harm.

Lincoln's counsel's litigation conduct constitutes an independent source of irreparable harm that a stay would address. Three instances are summarized here and documented in Exhibit LC. First, Rademaekers transmitted Plaintiff's complete medical records via unredacted OneDrive links without the minimum necessary review required by HIPAA, 45 C.F.R. § 164.502(b), and the Texas Medical Records Privacy Act, Tex. Health & Safety Code Ch. 181, then stated she would send those same links to USAA's counsel within seven days — using the threat of unredacted disclosure as leverage to obtain a protective order agreement that would have imposed confidentiality on documents Lincoln had a fiduciary duty to produce under ERISA § 104(b)(4). Second, Rademaekers certified the LTD administrative record as complete when the production visibly begins at Bates page 53 with 52 pages absent, certified the STD administrative record as complete when it contains another individual's protected health information, acknowledged on April 14 that the production might be incomplete without ever following up, and after Plaintiff reported the contamination instructed him to delete the contaminated pages from his copy rather than reproduce the file, withdraw the certification, or disclose the issue to the Court. Lincoln then filed its motion to dismiss relying on the same

uncorrected, uncured record without disclosure. Third, Rademaekers offered Plaintiff an extension in connection with ECF No. 27 and did not honor that offer after Plaintiff accepted it. ECF No. 27 has been fully briefed since May 3, 2026 and remains unruled.

The conduct documented in Exhibit LC is not peripheral. It is ongoing and will continue if proceedings are not stayed. The OneDrive transmission without minimum necessary review, the false certifications, the delete instruction, and the failure to honor the extension offer each caused or threatened concrete irreparable harm to Plaintiff's legal position, procedural rights, and medical privacy. They are documented in writing. See Exhibit LC.

## VII.  BALANCE OF HARDSHIPS

Lincoln's only hardship is complying with its existing legal obligations on a correct and complete record. That is compliance, not hardship.

Plaintiff's hardship absent a stay: proceeding on a contaminated record, responding to a dispositive motion that does not identify its targets, without counsel or adequate accommodation, while the Fifth Circuit has not yet addressed whether the pattern that produced this situation was lawful — with permanent foreclosure of the merits as the risk.

## VIII.  PUBLIC INTEREST

ERISA was enacted to provide "ready access to the Federal courts." 29 U.S.C. § 1001(b). The public interest in ensuring that access is real, not theoretical, is substantial and immediate in this case.

The DOL's 2016 Final Rule eliminated discretionary review clauses and mandated de novo judicial review for disability claims specifically because the pre-2016 framework had generated a body of federal precedent that systematically favored LTD insurers — built on cases where claimants lacked the information needed to contest denials. The DOL's 2023 Advisory Council report documented that this pattern persists: disability claims account for 64.5% of ERISA benefits litigation, and LTD insurers remain the only ERISA fiduciaries systematically withholding internal decision-making criteria from claimants. Advisory Council on Employee Welfare and Pension Benefit Plans, Long-Term Disability Benefits and Mental Health Disparity

12

at 1-3 (Dec. 2023). The specific public interest concern this case presents: if federal courts do not enforce the 2016 rule when litigants raise it, the rule becomes a practical nullity. ERISA attorneys are trained to rely on the administrative record and the existing body of case law. If that case law was built under the pre-2016 discretionary review framework and courts do not correct it when the governing framework is placed before them — as happened here across five successive filings without acknowledgment — then continuing to cite superseded authority is not carelessness. It is a rational response to a pattern of non-enforcement. The public interest is served by ending that pattern.

ERISA limits enforcement to federal court and provides a narrow set of remedies. Filing fees, service costs, and the practical barriers to § 1915 waiver — which requires a complex application that delays proceedings further — mean that meritorious claimants bear significant upfront costs to access the enforcement mechanism Congress created. Plaintiff has incurred in excess of $1,200 in filing and service costs in this action alone. The LTD industry generates more ERISA litigation than any other plan administrator category and imposes these costs on the population with the strongest legitimate grievances against it. ERISA's fee-shifting framework under § 502(g) addresses this on the back end when plaintiffs prevail. It does not address it on the front end. The public interest is served by ensuring that the back end — fee-shifting on a fully litigated and properly briefed record — is available to plaintiffs who reach it.

The Section 504 and accommodation questions this appeal presents are questions of first impression for precisely the reasons Tennessee v. Lane identified: the people most harmed by the lack of accommodation are the least able to navigate the system that would address it. The public interest in having those questions answered — fifty-two years after Section 504's enactment, twenty-one years after Lane — is not served by allowing this case to be disposed of by text order before the Fifth Circuit has the opportunity to address them. If this Court denies relief, Plaintiff will seek a stay under Federal Rule of Appellate Procedure 8(a)(2).

## IX. CONCLUSION

Plaintiff requests a stay of all district court proceedings pending Appeal No. 26-50345, with two exceptions: this Court should rule on ECF No. 32 (unopposed, ripe seventeen days) and ECF No. 27 (PI pending appeal, fully briefed). Both are already developed. Ruling on them advances the record rather than compounding the pattern.

If this Court declines a full stay, Plaintiff requests at minimum: (1) rule on ECF No. 32 before any MTD briefing schedule is set; (2) direct Lincoln to reproduce the administrative record without contamination and re-serve its initial disclosures; and (3) direct Lincoln to identify which specific claims each MTD argument addresses.

If this Court denies all relief, Plaintiff will seek a stay from the Fifth Circuit under FRAP 8(a)(2). This motion satisfies the district court presentation requirement that rule imposes. This Court retains the cleaner and faster path to remedy.

Respectfully submitted,
Charles Terrence Bruff
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff in Pro Se

### CERTIFICATE OF CONFERENCE

Pursuant to W.D. Tex. Local Rule CV-7(g), Plaintiff certifies that he conferred with counsel for all Defendants by email on May 21, 2026. Defendant Lincoln National Life Insurance Company, through counsel Iwana Rademaekers, indicated opposition on the grounds described in Section I of this motion. Defendant USAA did not respond to the conferral email as of the date of filing. Plaintiff does not construe USAA's non-response as opposition. USAA has separately requested an extension of proceedings through June 22, 2026, which is functionally consistent with the stay requested here and confirms that USAA would not be prejudiced by a stay.

15

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion and all attached exhibits was electronically filed with the clerk for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a Notice of Electronic Filing to all parties involved.

Charles Terrence Bruff