**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

CHARLES TERRENCE BRUFF, Plaintiff
v.
USAA HEALTH AND WELFARE BENEFITS PLAN, et al., Defendants
Case No. 5:26-CV-01720-XR

# EXHIBIT LC
## CHRONOLOGICAL DOCUMENTATION OF LINCOLN'S COUNSEL'S LITIGATION CONDUCT

*Filed in Support of Plaintiff's Motion to Stay District Court Proceedings Pending Appeal and Plaintiff's Appellate Brief, No. 26-50345 (5th Cir.)*

## PREFATORY NOTE

This exhibit documents the litigation conduct of Iwana Rademaekers, Esq., counsel for Defendant The Lincoln National Life Insurance Company, in chronological order. Each entry identifies the date, the conduct, and its legal significance. All items are documented through emails, docket filings, or counsel's own statements. This exhibit is submitted in support of Argument IV of Plaintiff's appellate brief (attorney fees under ERISA § 502(g)) and in support of Section VI.F of Plaintiff's Motion to Stay District Court Proceedings Pending Appeal.

> ⚠ Plaintiff has Autism Spectrum Disorder, Cerebral Palsy, and PTSD, all documented in Lincoln's own certified administrative record. Lincoln's counsel has had access to that documentation throughout this litigation. Where conduct targeted or exploited Plaintiff's pro se status or disability, that dimension is noted.

### ENTRY 1 — April 13–27, 2026

**Five-Category DOL Request Tracks Post-2018 Standard; Rademaekers Responds Using Superseded Framework; Certification Applies Same Superseded Standard; MTD Cites Only Out-of-Circuit Pre-2018 Authority**

| Dates: | April 13, 2026 (Plaintiff's five-category email); April 14, 2026 (Rademaekers' response); April 27, 2026 (completeness certification); May 19, 2026 (MTD filed) |
|---|---|
| Source: | Email chain, April 12–27, 2026 (Subject: Lincoln/Bruff — Defendant The Lincoln National Life Insurance Company's Initial Disclosures); filed herewith; ECF No. 35 (MTD, May 19, 2026) |

On April 13, 2026, Plaintiff sent Rademaekers five questions about the completeness of the production, in plain language without citing any regulation. The questions track the five

categories of "relevant" documents required under 29 C.F.R. § 2560.503-1(m)(8) as revised by the DOL's 2016 Final Rule, effective April 1, 2018. Question 3 — guidance criteria or standards for ASD, CP, or PTSD claims "regardless of whether those materials were applied to my specific claim" — tracks the operative post-2018 language of § 2560.503-1(m)(8)(iv) directly.

Rademaker's responded April 14 using the pre-2018 "reviewed to issue its decision" standard without being asked to. She confirmed categories 1, 2, 4, and 5 under that narrower framing and hedged on category 3. She never confirmed category 3 was present.

On April 27, Plaintiff's follow-up explicitly named "DOL policy as amended in 2018." Rademaker's responded the same day with the same pre-2018 formulation. That language defines the production by what was reviewed to make the determination — not by what was generated in connection with the claim, which is what the 2018 standard requires.

The MTD filed May 19, 2026 cites Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215 (1st Cir. 2010) as its sole substantive merits authority — a pre-2016 First Circuit case decided under a discretionary review standard that has not governed Texas disability claims since April 1, 2018. Every other citation in the MTD addresses only the Rule 12(b)(6) pleading standard. Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5th Cir. 2018) (en banc) — which eliminated discretionary review for Texas disability claims — is not cited, acknowledged, or distinguished.

> **Plaintiff, April 13, 1:04 PM:** *"Can you let me know if the production includes all of these things? 1. Any medical reviews conducted on my claim including reviews that were completed but not used. 2. Any communications about my claim generated by anyone at Lincoln or its vendors during the claims process. 3. Any guidance criteria or standards Lincoln uses when evaluating claims involving Autism Spectrum Disorder Cerebral Palsy or Post-Traumatic Stress Disorder regardless of whether those materials were applied to my specific claim. 4. Any recordings or written notes from phone calls or other communications between Lincoln staff or vendors and me or my treating providers. 5. Any vocational materials generated in connection with my claim even if they were not used."*
>
> **Rademaekers, April 14, 8:49 PM:** *"Everything is included, but I'll have to confirm on item 3. I'll get back to you soon."*
>
> **Rademaekers, April 27, 1:57 PM (certification):** *"I have confirmed that the link we sent to you includes everything that Lincoln reviewed to issue its decision regarding your claim for benefits."*

***Plaintiff, April 27, 11:29 PM:*** *"I asked about the five categories of documents required to be in a claims file under DOL policy as amended in 2018. You told me one of the categories might be missing. You did not actually confirm that that category was there in your response. How am I supposed to interpret that?"*

⚠ LEGAL SIGNIFICANCE — THREE INDEPENDENT PROBLEMS: (1) SUPERSEDED STANDARD: Both the April 14 response and the April 27 certification use the pre-2018 "reviewed to issue its decision" formulation. The 2016 Final Rule, effective April 1, 2018, requires production of documents "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon." 29 C.F.R. § 2560.503-1(m)(8)(ii). Rademaekers applied the old standard on April 14, then applied it again on April 27 after Plaintiff had explicitly named the 2018 amendment. (2) UNRESOLVED CATEGORY 3: Rademaekers acknowledged on April 14 that category 3 might be missing. Her April 27 certification does not confirm it was present. The certified record Lincoln relies on for its MTD may be missing an entire required category. (3) ADVERSE AUTHORITY: Texas Disciplinary Rule 3.03(a)(4) requires disclosure of authority in the controlling jurisdiction directly adverse to the client's position. Ariana M. v. Humana Health Plan of Texas, Inc., 884 F.3d 246 (5th Cir. 2018) (en banc) is controlling Fifth Circuit authority that eliminated discretionary review for Texas disability claims and is directly adverse to any argument premised on Cusson. Plaintiff placed the 2018 DOL standard before Rademaekers on April 13 and again on April 27. The MTD cites Cusson without acknowledging Ariana M.

## ENTRY 2 — April 10 and April 22, 2026
## Clinical Claims Channel Contaminated in Both Directions While Protective Order Motion Was Pending

| | |
|---|---|
| **Dates:** | April 10, 2026 (Event 1); April 22, 2026 (Event 2) |
| **Parties:** | Kristianne Corporan (Lincoln claims administrator); Iwana Rademaekers (Lincoln litigation counsel); Plaintiff |
| **Source:** | ECF No. 17 (Exhibit CONFLICT1 — April 10, 2026, Corporan email with notice of appearance); ECF No. 27 at 12 (Exhibit CONFLICT2 — April 22, 2026, Rademaekers response to forwarded clinical thread); RADEMAIL_004 (April 22, 2026, 5:41 PM, filed herewith) |

Plaintiff's third motion for protective order (ECF No. 16) was pending when both events occurred. The motion sought structural separation of Lincoln's claims administration function from its litigation function, specifically to prevent claims personnel from acquiring litigation awareness that could contaminate future benefit determinations. Rademaekers had conferred with Plaintiff on that motion the morning of April 9, 2026. She understood what it sought.

Event 1 — April 10, 2026: Rademaekers' notice of appearance — a federal litigation document — was transmitted to Kristianne Corporan, Plaintiff's Lincoln claims administrator, through the claims administration channel, presumably by Rademaekers herself, who had filed it three days earlier and was the only person with both the document and a reason to send it to

Lincoln's claims administration. Corporan then sent Plaintiff an email attaching the notice of appearance and redirecting all clinical correspondence to litigation counsel. This is the event the motion was filed to prevent. It occurred the morning after conferral and six days before the court denied the motion. The court denied ECF No. 16 on April 16, 2026, after the contamination had already occurred.

Event 2 — April 22, 2026: Corporan received a weekly document summary email from Plaintiff that she did not know how to respond to. She forwarded it directly to Rademaekers. Rademaekers then responded to both Corporan and Plaintiff together on the same email chain, inserting herself into an ongoing clinical correspondence thread and directing clinical submission procedures.

The two events together establish a two-way channel: litigation documents flowing from the litigation function into claims administration, and clinical communications flowing from claims administration to litigation counsel. Neither direction was initiated by Plaintiff. Both directions were operating while ECF No. 16 was pending.

> ***Rademaekers, April 22, 5:41 PM (RADEMAIL_004, responding to forwarded clinical thread):*** *"Hello again, Mr. Bruff. To delay responses, please email your inquiries directly to me… I had previously advised you to send any clinical documentation directly to the Lincoln contact instead of to me, and that this would also apply to Lincoln's requests for such documentation directly from your health care providers."*

⚠ LEGAL SIGNIFICANCE: (1) 29 C.F.R. § 2560.503-1(b)(7) imposes a continuous, affirmative obligation on disability benefit plans to ensure that claims adjudication is conducted in a manner designed to ensure the independence and impartiality of the persons involved. That obligation does not require a court order to apply. Once Corporan had received a litigation document and redirected clinical correspondence to litigation counsel, and once Rademaekers had received and responded to forwarded clinical communications, neither could perform their respective functions without that awareness coloring the outcome. (2) TIMING: The protective order motion was pending. Rademaekers had actual knowledge of its contents through conferral on April 9. The contamination began the following morning. The court denied the motion six days later — after the structural harm the motion sought to prevent had already been accomplished. (3) To place the structural problem in context: if a Cigna health insurance nurse case manager, while managing a member's ongoing treatment, received an email she didn't know how to handle and forwarded it to the Cigna litigation attorney handling that member's lawsuit — and that attorney then responded to both the case manager and the member on the same email chain — the impropriety would be immediately apparent to anyone familiar with how claims administration is supposed to work. The § 2560.503-1(b)(7) independence requirement exists because ERISA disability administration presents exactly the same risk. Lincoln did not maintain that separation.

## ENTRY 3 — April 22, 2026, 6:24 p.m.

## Transmission of Unredacted Medical Records via OneDrive Without Minimum Necessary Review; Use of Imminent Third-Party Disclosure as Leverage

| Date: | April 22, 2026, 6:24 PM CST |
|---|---|
| From: | Iwana Rademaekers <iwana@rademaekerslaw.com> |
| To: | Charles Terrence Bruff <tbruff15@gmail.com> |
| Subject: | Lincoln/Bruff |
| Source: | Email, April 22, 2026, 6:24 PM CST (filed herewith) |

Rademaekers transmitted Plaintiff's complete STD and LTD claims files — approximately 2,500 pages of unredacted medical records — via OneDrive links without minimum necessary review. She then stated she would send the same links to USAA's counsel within seven days unless Plaintiff agreed to a standard protective order, framing it as the solution to the privacy concern she had created. No USAA attorney filed a notice of appearance within the seven-day window Rademaekers imposed as her deadline.

> *Rademaekers, April 22, 6:24 PM: "I received an email from an attorney who advised me he would be appearing on behalf of USAA today. I did want to let you know that under the Rules, I will need to send him a copy of the initial Disclosures with a link to the same documents that I sent to you… if you are concerned about this, I reiterate my suggestion that we request that the Court enter its standard protective order in the matter… If I do not receive a response from you within seven days, I will proceed with the service of the Initial Disclosures and the link to the documents."*

⚠ LEGAL SIGNIFICANCE — FOUR INDEPENDENT PROBLEMS: (1) HIPAA MINIMUM NECESSARY (45 C.F.R. § 164.502(b)): Rademaekers admitted she does not review what Lincoln produces before transmitting it. 2,500 pages without relevance review does not satisfy the standard. (2) TEX. HEALTH & SAFETY CODE CH. 181: Texas requirements may independently apply to transmission through law firm cloud infrastructure. (3) PROTECTIVE ORDER COERCION: The threat of imminent unredacted disclosure to a third party was conditioned on Plaintiff's agreement to a protective order that would have restricted access to documents Lincoln had a standalone fiduciary duty to produce under ERISA § 104(b)(4) before litigation began. Plaintiff declined. (4) RULE 26(a) CONTRADICTION: Lincoln certified 2,500 pages as documents it may use to support its claims and defenses. Its motion to dismiss does not cite a single Bates-numbered page.

## ENTRY 4 — April 22, 2026, 10:00 p.m.

## Plaintiff's Written Objection: Rule 26(f) Timing, § 104(b)(4) Rights, Rule 26(a) Scope, Local Rule CV-5.2

| Date: | April 22, 2026, 10:00 PM CST |
|---|---|
| From: | Charles Terrence Bruff <tbruff15@gmail.com> |
| To: | Iwana Rademaekers <iwana@rademaekerslaw.com> |

| Subject: | Re: Lincoln/Bruff |
|---|---|
| Source: | Email, April 22, 2026, 10:00 PM CST (filed herewith) |

Plaintiff raised four objections the same evening: (1) no Rule 26(f) conference had occurred and formal discovery remained closed; (2) the files contained § 104(b)(4) fiduciary production material; (3) Rule 26(a) does not require disclosure of the entire claims file; and (4) Local Rule CV-5.2 and Rule 5.2 prohibit unredacted disclosure before a discovery plan exists. Plaintiff requested that Rademaekers serve only the PDF disclosure document without the document links. Rademaekers did not dispute any objection substantively.

> **Plaintiff, April 22, 10:00 PM (Rule 26(f)):** *"The formal discovery window is still closed under Fed. R. Civ. P. 26(d)(1) and WDTX Local Rule CV-16 because we haven't had a Rule 26(f) conference yet."*
>
> **Plaintiff, April 22, 10:00 PM (§ 104(b)(4)):** *"The OneDrive links you sent contain the file Lincoln has a standalone fiduciary duty to produce under ERISA § 104(b)(4). If Lincoln had handled this as a fiduciary production rather than through litigation counsel, we wouldn't be having this overlap issue with Rule 26(a)."*
>
> **Plaintiff, April 22, 10:00 PM (Rule 26(a) / CV-5.2):** *"Blasting unredacted info to other counsel before we even have a discovery plan is an unnecessary privacy risk and goes against the Court's guidance on minimizing the disclosure of private info."*
>
> **Plaintiff, April 22, 10:00 PM (relief requested):** *"Please do not serve the links… you are more than welcome to serve your PDF disclosure document — which contains your witness list and a description of documents by category or Bates number — without including the links to the actual sensitive files."*

> **i** NOTE: Every objection was legally correct. Rademaekers did not dispute any of them.

## ENTRY 5 — Date of Initial Disclosures
**False Certification of LTD Administrative Record as Complete — 52 Missing Pages Visible on Face of Production**

| Document: | Lincoln's certified administrative record — LTD file |
|---|---|
| Bates Range: | Lincoln/Bruff 0053 through end of LTD file (pages 0001–0052 absent) |
| Source: | Lincoln's certified production (LTD file); Rademaekers completeness certification, April 27, 2026, 1:57 PM, RE: Lincoln/Bruff – Defendant The Lincoln National Life Insurance Company's Initial Disclosures |

Lincoln's certified LTD file begins at Bates number Lincoln/Bruff 0053. Pages 0001 through 0052 are absent — visible on the face of the document without reading any content. Bates numbering is applied manually; every page was physically reviewed before a stamp was

applied. Rademaekers certified the record as complete on April 27, 2026, without having confirmed on April 14 that Category 3 was present.

On May 1, 2026, Rademaekers stated that she always produces claim files as received from Lincoln without review. If she had looked at the first page of the LTD file, she would have seen it began at Bates 53. She simultaneously described a standard practice in which both sides review the file before it is formally filed with the court — implying the April 27 certification preceded that review. But she filed ECF No. 30 opposing Plaintiff's motion for preliminary injunction pending appeal and treated the unreviewed production as the operative record before that process occurred. The "we'll review it together before filing" explanation is contradicted by her own litigation conduct.

> ***Rademaekers, April 27, 1:57 PM (completeness certification):*** *"I have confirmed that the link we sent to you includes everything that Lincoln reviewed to issue its decision regarding your claim for benefits."*
>
> ***Rademaekers, May 1, 4:18 PM (no-review admission):*** *"I always produce claim files as I receive them from my client. Before the administrative record is filed with the Court, both sides will review the file to determine if it is complete or if there are any issues such as the one you have identified so it can be addressed before the record is filed."*

⚠ LEGAL SIGNIFICANCE: A Rule 26(g) certification of completeness when the production visibly begins at page 53 of a Bates-numbered sequence is false on the face of the document. Because Bates numbering is manual, the absence of pages 0001–0052 reflects a deliberate omission by a reviewer with actual awareness of those pages. Rademaekers' own May 1 statement that she never reviews productions before transmitting them means the Rule 26(g) certification was made without any review of the file she was certifying. The reasonable inquiry that Rule 26(g) requires was, by her own admission, never conducted. Lincoln's motion to dismiss relies on this certified record. ECF No. 32 (motion to file contaminated pages under seal) has been pending unopposed.

## ENTRY 6 — Date of Initial Disclosures
## False Certification of STD Administrative Record as Complete — Another Individual's PHI Present in File

| | |
|---|---|
| **Document:** | Lincoln's certified administrative record — STD 2021 file |
| **Location:** | Lincoln/Bruff 2021 394–401 (eight pages) |
| **Source:** | Lincoln's certified production (STD 2021 file); Rademaekers email, May 1, 2026, 4:18 PM, Re: Serious Problem with April 12 Production — Third-Party Medical Records in My Claims File (filed herewith) |

Lincoln's certified STD 2021 file contains eight pages of another USAA employee's FMLA documentation at Lincoln/Bruff 2021 394–401. The affected individual's name, date of

birth, Leave ID, treating physician, and clinical information appear across the pages. ECF No. 32 describes the contents page by page: a completed FMLA certification, an attending physician statement signed by Dr. Irina Zorenko, a Lincoln fax cover sheet, and a two-page FMLA Intermittent Leave End Notification letter. A reviewer reading page 394 for ten seconds would see that the claimant named is not Charles Terrence Bruff.

Rademaekers certified this file as complete and accurate. She has stated she does not review productions before transmitting them. Bates numbering is manual; every page was physically reviewed. Plaintiff notified Rademaekers on May 1, 2026, before Lincoln filed its motion to dismiss.

> **Rademaekers, May 1, 4:18 PM (admission):** *"Those documents were erroneously placed in your STD claim file and will be removed… With the volume of records Lincoln handles, despite careful handling, mistakes can be made although they are rare. I will advise Lincoln that these records from another employee were in your STD claim file, and Lincoln will handle the matter in accordance with its procedures."*

⚠ LEGAL SIGNIFICANCE: (1) HIPAA BREACH: The presence of another individual's PHI in a certified production is an unauthorized disclosure under 45 C.F.R. § 164.502. (2) FALSE CERTIFICATION: The Rule 26(g) certification that the STD record was complete and accurate is false on its face. (3) Because Bates stamps are applied manually, the contamination reflects a deliberate act by a reviewer with actual page-by-page awareness. The inadvertent-disclosure defense is foreclosed by the manual numbering process. (4) On May 4, 2026, the Court denied ECF No. 28 (Motion for Corrective Action) on standing grounds, characterizing the contamination as "alleged." That word appears in the order because Rademaekers had not disclosed to the Court what she had already admitted in writing three days earlier. The Court was allowed to draw an adverse inference against Plaintiff on a fact that defense counsel had already conceded in her own email. Rademaekers read the May 4 order. She did not correct it.

## ENTRY 7 — May 1–May 19, 2026
### Instruction to Delete Contaminated Pages; Non-Disclosure Through MTD Filing; Silence After Court Characterized Contamination as "Alleged"

| | |
|---|---|
| **Date:** | May 1, 2026 (delete instruction); May 4, 2026 (Court's "alleged" order); May 19, 2026 (MTD filed) |
| **Source:** | Rademaekers email, May 1, 2026, 4:18 PM, Re: Serious Problem with April 12 Production — Third-Party Medical Records in My Claims File (filed herewith); ECF No. 28 denial text order, May 4, 2026; ECF No. 32 (filed May 4, 2026, pending unopposed); ECF No. 35 (MTD, May 19, 2026) |

After Plaintiff reported the contamination, Rademaekers instructed him to delete the pages from his copy of the record. She did not offer to reproduce the correct file. She did not withdraw the Rule 26(g) certification. She did not notify the Court.

On May 4, the Court denied Plaintiff's Motion for Corrective Action (ECF No. 28), characterizing the contamination as "allegedly" disclosed. That characterization was the direct result of Rademaekers' non-disclosure: the Court was ruling without knowledge that defense counsel had already admitted the contamination in writing three days earlier.

Plaintiff filed ECF No. 32 (Motion for Leave to File Under Seal) the same day, identifying each of the eight pages by Bates number and content. Rademaekers was served. She filed no response, no notice of errata, and no voluntary disclosure to the Court clarifying that the "alleged" contamination was already admitted in her own May 1 email.

Eighteen days later, on May 19, Rademaekers filed the motion to dismiss relying on the same certified record. ECF No. 32 remains pending and unopposed.

> ***Rademaekers, May 1, 4:18 PM (delete instruction):*** *"Those documents were erroneously placed in your STD claim file and will be removed. You should delete those from your system."*
>
> ***Plaintiff, May 1 (conferral notice):*** *"I am filing a motion asking the court to order Lincoln to take corrective action regarding this disclosure… I will reflect in my Certificate of Conference that you responded to my email but did not agree to the specific relief I requested, and that the motion is therefore opposed."*

> ⚠ LEGAL SIGNIFICANCE — FOUR INDEPENDENT PROBLEMS: (1) SPOLIATION: Instructing an opposing party in active federal litigation to delete pages from a produced and certified document creates a chain of custody problem. (2) RECORD MISMATCH: If followed, Plaintiff's copy would not match the Court's copy. (3) CANDOR TO THE TRIBUNAL (Tex. Disciplinary R. Prof'l Conduct 3.3): Rademaekers saw the Court use the word "alleged" in its May 4 order. She read ECF No. 32 describing the contaminated pages in detail. She already knew, from her own May 1 email, that the contamination was real. She said nothing. The MTD filed May 19 relies on the same certified record without disclosure. (4) NON-OPPOSITION TO ECF NO. 32: The motion to file under seal has been pending without response, leaving the Court without the ability to verify documents that bear on the reliability of the entire certified record.

## ENTRY 8 — May 19, 2026
## Motion to Dismiss: Footnote 6 Mischaracterizes Plaintiff's Exhibit Record; Lincoln Refiles Plaintiff's Own Exhibit as New Evidence

| | |
|---|---|
| **Date:** | May 19, 2026 |
| **Document:** | ECF No. 35 — Lincoln's Motion to Dismiss, Footnote 6 and Exhibit A |
| **Source:** | ECF No. 35 (May 19, 2026); ECF No. 4 (March 16, 2026 — Motion for Leave to File Exhibits Electronically); ECF Order granting ECF No. 4 (March 31, 2026); ECF No. 6 (April 6, 2026 — Notice of Filing of Exhibits) |

Footnote 6 of Lincoln's motion to dismiss argues that none of the exhibits referenced in the complaint are attached to it. On March 16, 2026 — the same day the complaint was filed — Plaintiff filed ECF No. 4, a motion for leave to file exhibits electronically. ECF No. 4 explains on its face that the complaint is accompanied by approximately thirty exhibits in PDF format, identified and described in the exhibit index attached to the complaint, and that those exhibits could not be filed electronically at the time of the initial filing because CM/ECF access had not yet been granted. The court granted ECF No. 4 on March 31, 2026. Plaintiff filed thirty-two exhibits on April 6, 2026, pursuant to that order. Lincoln appeared on April 7, 2026 — one day after the complete exhibit record was on the docket, one week after the court order granting leave.

Lincoln's Exhibit A to the motion to dismiss is the LTD policy — the same document Plaintiff had already filed as Exhibit LTDPOL. The motion argues Plaintiff's exhibits are missing; its own Exhibit A is one of them. The motion to dismiss does not cite a single Bates-numbered page from the 2,500-page production Lincoln certified as its Rule 26(a) disclosures.

> ⚠ LEGAL SIGNIFICANCE: Footnote 6 either reflects that Lincoln's counsel did not read ECF No. 4 or the March 31 court order, or it uses the physical limitation that prevented a pro se plaintiff with documented disabilities from carrying 415 pages to a courthouse to mischaracterize the completeness of his pleading. Lincoln's Exhibit A — filed in a motion arguing Plaintiff's exhibits are absent — is a document Plaintiff had already placed in the record. The motion to dismiss does not engage with a single exhibit Plaintiff filed.

## ENTRY 9 — May 19, 2026, ~6:00 a.m.
### Opposition to Default Application: Service Defense Forfeited; Factual Predicate Contradicted by Docket; Argument Self-Defeating

| | |
|---|---|
| **Document:** | ECF No. 36 — Lincoln's Response to Plaintiff's Application for Entry of Default |
| **Filed:** | May 19, 2026, ~6:00 AM — four hours after ECF No. 34 (1:54 AM); simultaneously with ECF No. 35 |
| **Source:** | ECF No. 36 (May 19, 2026); ECF No. 24 (April 18, 2026); ECF No. 39 (May 19, 2026) |

ECF No. 36 is three paragraphs. Its entire argument: no signed waiver on the docket, therefore no service, therefore no default. No argument on the timeline. No acknowledgment of the missed deadline. No good cause under Rule 55(c). No citation to any authority.

**ECF No. 36, ¶ 1:** *"Plaintiff asserts in his Application that he sent a request for waiver of service of summons to Lincoln National on or about March 19, 2026. However, no waiver of service for Lincoln that was signed by Lincoln is filed in the Court's docket, and Lincoln denies that it signed and returned any waiver of service."*

**ECF No. 36, ¶ 2:** *"As there is no signed waiver of service in the Court's docket nor any other evidence on the docket that Lincoln has been properly served with process in this action, Lincoln is not in default. Accordingly, there is no basis upon which the Clerk may enter default."*

**ECF No. 36, ¶ 3:** *"Lincoln has filed a Motion to Dismiss Plaintiff's Complaint (Document 35) and is accordingly, not in default."*

> ⚠ LEGAL AND FACTUAL SIGNIFICANCE — FOUR INDEPENDENT PROBLEMS: (1) FACTUAL PREDICATE CONTRADICTED BY THE DOCKET: Paragraph 2 states there is "no other evidence on the docket" that Lincoln was properly served. ECF No. 24 — "Plaintiff's Notice of Waiver of Service Requests, Return Receipts, and Waiver Non-Return" — was filed April 18, 2026, thirty-one days before ECF No. 36. It attaches three PS Form 3811 green return receipts as Exhibits A-1, A-2, and A-3. Exhibit A-3 is the Lincoln return receipt, signed by Chandler Crow through Viva Tejas Logistics on March 26, 2026, at Corporation Service Company — Lincoln's own registered agent. ECF No. 24 was served on Rademaekers by email on April 18, 2026; her name and email appear in its certificate of service. She did not argue that ECF No. 24 was insufficient or that the return receipt was defective. She argued there was no evidence at all. This is consistent with a pattern of filings that do not appear to have been preceded by a review of the docket. (2) RULE 12(h)(1) FORFEITURE: A defense of insufficient service of process is waived if not raised in the first pre-answer motion or responsive pleading. Lincoln's first filing was a substantive merits opposition (ECF No. 15, April 15, 2026). The defense was never raised in six weeks of litigation. ECF No. 36 does not cite Rule 12(h)(1) or address forfeiture. National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 313 (1964). (3) RULE 4(d) MISCHARACTERIZATION: Rule 4(d)(2) imposes costs on a defendant that fails to return a signed waiver. It does not suspend the answer deadline. Under Rademaekers' theory, any defendant could permanently avoid an answer deadline by not returning a waiver while voluntarily appearing and litigating on the merits. (4) INTERNAL CONTRADICTION: ECF No. 36 argues Lincoln was not properly before the court. ECF No. 35, filed simultaneously, seeks dismissal on the merits — which presupposes Lincoln is properly before the court. ECF No. 36 does not acknowledge the contradiction.

## ENTRY 10 — May 21, 2026
## Failure to Honor Extension Offer After Plaintiff Accepted

| Date: | May 21, 2026 |
|---|---|
| Source: | ECF No. 30 (Lincoln's Response to Motion for PI Pending Appeal, May 2, 2026) — extension offer; ECF No. 31 (Plaintiff's Reply) — acceptance; absence of subsequent response from Rademaekers |

Lincoln's response to Plaintiff's motion for preliminary injunction pending appeal (ECF No. 30, May 2, 2026) offered Plaintiff an extension. Plaintiff accepted the offer in his reply brief (ECF No. 31). Rademaekers did not honor the offer and did not respond to it. ECF No. 27 (PI pending appeal) has been fully briefed since May 3, 2026, and remains unruled.

> **i** NOTE: The offer is in ECF No. 30; the acceptance is in ECF No. 31. No email in the correspondence record documents this exchange. The non-response is established by the absence of any subsequent communication honoring or withdrawing the offer.

## iSUMMARY OF DOCUMENTED CONDUCT

| # | Date | Conduct | Legal Framework |
|---|------|---------|-----------------|
| 1 | Apr. 14, 2026 | Response to five-category DOL request applies superseded standard; Category 3 acknowledged missing; no follow-up | Fed. R. Civ. P. 26(g); 29 C.F.R. § 2560.503-1(m)(8) |
| 2 | Apr. 10 & Apr. 22, 2026 | Clinical claims channel contaminated in both directions while protective order motion was pending; § 2560.503-1(b)(7) violated | 29 C.F.R. § 2560.503-1(b)(7); ECF No. 16 (pending) |
| 3 | Apr. 22, 2026 6:24 p.m. | Transmitted 2,500+ pages unredacted; used imminent disclosure as protective order leverage | HIPAA 45 C.F.R. § 164.502(b); Tex. Health & Safety Code Ch. 181; ERISA § 104(b)(4); Rule 26(a) |
| 4 | Apr. 22, 2026 10:00 p.m. | Plaintiff objected on Rule 26(f), § 104(b)(4), Rule 26(a), and Local Rule CV-5.2 grounds — all correct; no substantive response | Fed. R. Civ. P. 26(d)(1); Local Rules CV-16, CV-5.2; ERISA § 104(b)(4) |
| 5 | Date of initial disclosures | Certified LTD record as complete; production begins at Bates 0053 with 52 pages absent; Bates stamps are manual | Fed. R. Civ. P. 26(g); Rule 26(a) |
| 6 | Date of initial disclosures | Certified STD record as complete; eight pages of another employee's PHI present (Lincoln/Bruff 2021 394–401); Bates stamps are manual | HIPAA; Tex. Health & Safety Code Ch. 181; Fed. R. Civ. P. 26(g) |
| 7 | May 1–May 19, 2026 | Instructed Plaintiff to delete contaminated pages; saw Court call contamination "alleged"; read ECF No. 32 describing pages in detail; filed MTD on same certified record; said nothing | Tex. Disciplinary R. Prof'l Conduct 3.3; Fed. R. Civ. P. 26(g); spoliation |
| 8 | May 19, 2026 | MTD Footnote 6 mischaracterizes Plaintiff's exhibit record: exhibits existed in PDF format identified in exhibit index; CM/ECF access not yet granted was the only obstacle; court granted leave March 31; Lincoln appeared April 7 | Fed. R. Civ. P. 11; ECF No. 4; March 31, 2026 Court Order |
| 9 | May 19, 2026 ~6:00 a.m. | Default opposition raises service defense forfeited by six weeks of merits litigation; no timeline argument; self-defeating under Rule 12(h)(1) and Rule 4(d) | Fed. R. Civ. P. 12(h)(1); Rule 4(d)(2); Rule 55(c); National Equipment Rental, 375 U.S. 311 |
| 10 | May 21, 2026 | No response to extension offer Plaintiff accepted from ECF No. 30 | Pattern of selective non-response |

## LEGAL FRAMEWORK FOR BAD FAITH FEES DETERMINATION

| **ERISA § 502(g)(1)** | Attorney fees may be awarded to either party. The Fifth Circuit considers bad faith, ability to satisfy a judgment, deterrence, and relative merits. False certifications, non-disclosure of contamination to the court, application of a superseded legal standard after repeated written notice, use of medical records as leverage, contamination of the claims channel while a protective order motion was pending, and mischaracterization of the exhibit record in a court filing are all relevant to bad faith and deterrence. |
|---|---|

| HIPAA, 45 C.F.R. § 164.502(b) | Covered entities and business associates must limit PHI use and disclosure to the minimum necessary. Transmission of 2,500+ pages without minimum necessary review, and inclusion of another individual's PHI in a certified production, implicate this standard. |
|---|---|
| Tex. Health & Safety Code Ch. 181 | Texas imposes requirements that in some respects exceed HIPAA. Transmission of Plaintiff's medical records through law firm cloud infrastructure without minimum necessary analysis may independently implicate this framework. |
| Fed. R. Civ. P. 26(g) | Every disclosure must be certified as complete and correct after reasonable inquiry. Certifying a production that visibly begins at page 53, or that contains another individual's PHI, violates this standard. So does certifying completeness without having confirmed whether Category 3 was present. |
| Tex. Disciplinary R. Prof'l Conduct 3.3 | Candor to the tribunal. Rademaekers saw the Court describe the contamination as "alleged," read a filed motion identifying the contaminated pages by Bates number and content, and had already admitted the contamination in writing. She filed the MTD on the same certified record without disclosure. |
| Fed. R. Civ. P. 12(h)(1) | A defense of insufficient service of process is waived if not raised in the first pre-answer Rule 12 motion or in the responsive pleading. Lincoln's first filing was a substantive merits opposition. The service defense was never raised until ECF No. 36, filed six weeks into litigation and after the default had arisen. ECF No. 36 does not cite Rule 12(h)(1) or address forfeiture. |
| Fed. R. Civ. P. 4(d)(2) | A defendant that fails to return a signed waiver of service without good cause must bear the costs of formal service. The rule does not provide that declining to sign a waiver suspends the answer deadline indefinitely. Under Rademaekers' theory, any defendant could defeat an answer deadline by simply not returning a waiver form while voluntarily appearing and litigating on the merits. |
| Fed. R. Civ. P. 11; Court Order March 31, 2026 | Representations to the court must be warranted by existing law and the record. Footnote 6 asserts Plaintiff's exhibits are missing. ECF No. 4, filed simultaneously with the complaint, states the exhibits existed in PDF format, were identified in the exhibit index attached to the complaint, and could not be filed electronically only because CM/ECF access had not yet been granted. The court granted leave on March 31. Plaintiff filed thirty-two exhibits on April 6. Lincoln appeared April 7. |

## CONCLUSION

This exhibit is not a personal attack on Ms. Rademaekers' character. It is a record of specific, documented conduct that Plaintiff does not know how to categorize and does not feel equipped, without counsel, to fully assess. Plaintiff is documenting it because he believes the Court and the Fifth Circuit are entitled to see it in one place, and because he genuinely does not know what to do with it.

Several of the items documented here — the false certification of a production that begins at Bates 53, the certification of a file that contains another person's medical records, the instruction to delete those pages, the silence after the Court called the contamination "alleged"

— are not mistakes Plaintiff would expect from experienced ERISA counsel. They may have explanations he is not aware of. He is not in a position to know.

What Plaintiff can say is this: across every contested motion in this case, the district court has ruled without a complete briefing cycle, without findings, and without citation to authority. Every ruling has gone against Plaintiff. Lincoln won on its preliminary injunction opposition without filing a response. That record may have created an environment in which the consequences of the conduct documented here felt limited. Plaintiff is not asserting that this is what happened. He is noting it because it is part of the context in which this conduct occurred.

Plaintiff is a pro se litigant with Autism Spectrum Disorder, Cerebral Palsy, and PTSD. Those conditions are documented in Lincoln's own certified administrative record — the same record that is at the center of the conduct described in this exhibit. He is not filing this exhibit to win a procedural point. He is filing it because the conduct is documented, the record can speak for itself, and someone with more resources and authority than he has should be able to see it clearly.

Respectfully submitted,

**Charles Terrence Bruff**
4835 Medical Dr. #29643
San Antonio, Texas 78229
(318) 452-8978
cbruff13@outlook.com
Plaintiff-Appellant, Pro Se